# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ABBVIE INC., et al.,

    Defendants.

Case Number: 2:14-CV-5151-HB

Public Version

**Memorandum in Support of Plaintiff Federal Trade Commission's
Motion to Compel AbbVie Defendants to Produce Documents Improperly
Withheld on Privilege Grounds from their Pennsylvania Privilege Logs**

**Table of Contents**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

   I. AbbVie improperly withheld business documents. ....................................................... 4

     A.   AbbVie improperly redacted an ordinary course business communication about product pricing. ......................................................................................................... 5

     B.   AbbVie improperly withheld ██████████████████████████. ............. 6

     C.   AbbVie improperly redacted regulatory-related emails. .................................................. 9

     D.   AbbVie improperly withheld and redacted generic entry or "loss of exclusivity" planning documents. ................................................................................................... 12

        1.   AbbVie improperly withheld business forecasting scenario documents. ................... 14

        2.   AbbVie improperly redacted business planning notes and emails. ........................... 16

     E.   AbbVie improperly withheld or redacted Solvay acquisition due diligence documents. ................................................................................................................. 18

   II. AbbVie improperly withheld patent prosecution documents. ............................................ 20

     A.   AbbVie improperly withheld ██████████████████████████. ........ 21

     B.   AbbVie improperly redacted AndroGel patent exclusivity information. ...................... 23

   CONCLUSION .................................................................................................................... 24

## Table of Authorities

**Cases**

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2012 WL 426275 (M.D. Pa. Feb. 9, 2012) ............ 10

*Fisher v. United States*, 425 U.S. 391 (1976) ................................................................. 3

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) ............................. 15

*Hickman v. Taylor*, 329 U.S. 495 (1947) ...................................................................... 21

*High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024
(D. Kan. Jan. 25, 2012) .......................................................................................... 21

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124 (3d Cir. 2000) ................... 6, 15

*In re Avandia Mktg., Sales Practices & Prods. Liab.*, No. 07-md-01871, 2009 WL 4807253
(E.D. Pa. Oct. 2, 3009) ........................................................................................... 10

*In re Bristol-Myers Squibb Sec. Litig.*, No. 00-CIV-1990, 2003 U.S. Dist. LEXIS 26985
(D.N.J. June 25, 2003) ...................................................................................... 9, 10, 11

*In re Domestic Drywall Antitrust Regulation*, No. 13-MD-2437, 2014 WL 5090032
(E.D. Pa. Oct. 9, 2014) ......................................................................................... 4, 5

*In re Gabapentin Patent Litig.*, 214 F.R.D. 178 (D.N.J. 2003) ......................................... 21

*In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979) .......................................... 3

*In re Grand Jury Matter*, 147 F.R.D. 82 (E.D. Pa. 1992) ............................................... 10

*In re Grand Jury Proceedings*, 604 F.2d 798 (3d Cir. 1979) ............................................ 3

*In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984) ........................................ 11

*In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112 (E.D. Pa. 2011) ...................... 3, 7

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (2000) ............................................. 3, 15, 21

*Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06CV543, 2008 WL 2949399
(S.D. Ohio July 30, 2008) ......................................................................................... 22

*King Drug Co. of Florence v. Cephalon, Inc.*, No. 06-CIV-1797, 2011 U.S. Dist. LEXIS 71806
(E.D. Pa. Jul. 5, 2011) ..................................................................................... 7, 8, 17

*Kramer v. Raymond Corp.*, 90-CIV-5026, 1992 WL 122856 (E.D. Pa. May 29, 1992) ........ 4, 7, 8

*La. Mun. Police Employees Ret. Sys. v. Sealed Air Corp*, 253 F.R.D. 300 (D.N.J. 2008) .......... 20

*Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14-CV-3618, 2016 WL 307310
(N.D. Ill. Jan. 26, 2016) ........................................................................................ 22

*Natta v. Zletz*, 418 F.2d 633 (7th Cir. 1969) .............................................................. 22

*Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289 (D.D.C. 2000) ....................................... 17

*Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491 (D.N.H. 1996) .............................. 5, 8

*Paris v. R.P. Scherer Corp.*, No. 02-CIV-1044, 2006 U.S. Dist. LEXIS 47413
(D.N.J. July 13, 2006) ............................................................................................... 3

*Phillips Elecs. N. Am. Corp. v. Universal Elects., Inc.*, 892 F. Supp. 108 (D. Del. 1995) ........... 22

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ............ 2

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467 (E.D. Pa. 2005) ..................... 3, 8, 21

*Synopsys, Inc. v. Ricoh Co.*, No. 03-CIV-2289, 2006 U.S. Dist. LEXIS 64270
(N.D. Cal. Aug. 28, 2006) ..................................................................................... 8, 17

*United States v. Rockwell Int'l*, 897 F.2d 1255 (3d Cir. 1990) ..................................................... 3

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ......................................................................... 3

*Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414 (3d Cir. 1991) ................. 3, 10, 17

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................... 3

**INTRODUCTION**

The Federal Trade Commission respectfully requests an order compelling defendants AbbVie Inc., Abbott Laboratories, and Unimed Pharmaceuticals, LLC (collectively, "AbbVie") to produce certain relevant documents withheld or redacted on the basis of unfounded claims of attorney-client privilege or work product protection. Through a set of privilege logs produced in this case between February and June 2016, AbbVie has withheld over 2,500 relevant and responsive documents from its production.[1] Following a series of letters from the FTC identifying extensive deficiencies in these logs, AbbVie ultimately released almost a thousand improperly withheld documents (in full or lesser redacted form) and provided revised privilege log entries for hundreds of documents.[2] The FTC here seeks production of 37 documents that AbbVie continues to withhold and for which AbbVie has failed to carry its burden to justify the asserted privilege.

The contested documents include: (1) an email concerning product pricing; (2) documents related to ███████████████████████████████████████; (3) regulatory-related emails; (4) "loss of exclusivity" planning documents; (5) documents related to AbbVie's acquisition of Solvay; and (6) documents related to the prosecution of the '894 patent. The privilege log entries for these disputed documents are set forth in Exhibits 1(A)-(F). Many of these documents appear to be precisely the same types of business, due diligence, and marketing materials that this Court found were not privileged in its December 2015 opinion. (*See* Dkt. No. 145.)

---

[1] The privilege logs at issue were produced by AbbVie on February 29, March 14, March 21, March 31, April 1, April 8, April 29, May 13, and June 10, 2016 (collectively, the "Pennsylvania Logs"). AbbVie produced supplemental logs providing more information on certain challenged entries on April 15, May 6, May 17, and May 31, 2016. *See* Certification Pursuant to L. R. Civ. P. 26.1(f).

[2] The FTC sent letters to AbbVie's counsel on March 21, April 27, April 29, May 17, and May 23, 2016 and an email on June 10, 2016, identifying deficiencies in the Pennsylvania Logs. *See* Certification Pursuant to L. R. Civ. P. 26.1(f).

As with the FTC's September 4, 2015 privilege motion, these challenged documents relate to central issues in this case: whether AbbVie possesses monopoly power in a relevant market including AndroGel; the appropriate amount of equitable relief; the proper scope of injunctive relief; and whether Defendants' filing of alleged meritless patent infringement lawsuits against potential rivals Teva Pharmaceuticals, Inc. and Perrigo Co.—filings they knew would trigger a regulatory provision automatically blocking approval of the generics' product for up to thirty months—improperly used "the government *process*—as opposed to the outcome of that process—as an anticompetitive weapon."[3] Certain contested documents bear on AbbVie's knowledge at the time it filed suit for infringement of the AndroGel patent in 2011 that the original claims were narrowed during patent prosecution to a single penetration enhancer not used in Teva's or Perrigo's respective testosterone gel products and that, for this very reason, Besins and Solvay (AbbVie's predecessor) had decided not to sue Perrigo just two years earlier.[4]

For the reasons detailed below, the FTC respectfully requests that this Court issue an order compelling the production of the disputed documents listed in Exhibits 1(A)-(F) in their entirety. To facilitate the assessment of AbbVie's privilege and work-product protection claims, the FTC asks that the Court conduct an *in camera* review of the challenged documents.

## ARGUMENT

The materials contested in this motion are all documents for which AbbVie has improperly asserted work-product protection and attorney-client privilege. As this Court previously explained in its December 2015 opinion in this case, "because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly" and "is strictly confined

---

[3] *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993).

[4] Dkt. No. 12 at ¶ 66.

within the narrowest possible limits consistent with the logic of its principle."[5] The attorney-client privilege "protects *only* those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege."[6] The elements of the attorney-client privilege are well established and require: "'(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'"[7] While the privilege protects both information that the client furnishes to the attorney for advice, and the attorney's advice,[8] it applies only to the communication itself and not the underlying facts.[9]

Likewise, the work-product doctrine applies only where, "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"[10] To qualify, "the documents must have been prepared (1) at a time when litigation was reasonably predictable or foreseeable, and (2) primarily for the purpose of the litigation."[11]

The party seeking protection under either the attorney client privilege or the work-product doctrine bears the burden of proving the necessary elements.[12] Despite having the benefit

---

[5] Dkt. No. 145 at 4 (quoting *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d Cir. 1991), *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D 467, 472 (E.D. Pa. 2005), *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)); s*ee also In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 117 (E.D. Pa. 2011).

[6] *Fisher v. United States*, 425 U.S. 391, 403 (1976) (emphasis added).

[7] *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007 (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)); *see also* Dkt. 145 at 4.

[8] *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

[9] *Id.* at 395.

[10] *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)); *see also* Fed. R. Civ. P. 26(b)(3).

[11] *Paris v. R.P. Scherer Corp.*, No. 02-CIV-1044, 2006 U.S. Dist. LEXIS 47413, at *5-6 (D.N.J. July 13, 2006)

[12] Dkt. No. 145 at 3; *see also Processed Egg Prods.*, 278 F.R.D. at 117.

of this Court's detailed December 2015 privilege opinion, AbbVie has failed to carry its burden with regard to the 37 withheld or redacted documents identified in Exhibit 1(A)-(F).

## I.   AbbVie improperly withheld business documents.

AbbVie refuses to produce 30 business communications and documents that do not appear to be privileged. As this Court previously explained, for the attorney-client privilege to apply, "the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'"[13] In its December 2015 opinion, this Court specifically identified certain types of business and marketing materials as unlikely to be privileged: "[a] company's 'decision on how to market or advertise a product, or what conditions of sale should apply' is not privileged" because it primarily relates to business policy.[14] Similarly, "Solvay's strategies to extend a product's life cycle and exclusivity are commercial, not legal, in nature."[15] In this most recent round of privilege logs, AbbVie appears to have ignored this Court's guidance by withholding numerous documents that fall squarely within these proscriptions.

The FTC has identified five categories of withheld or redacted documents that appear to be primarily commercial in nature: (1) a communication concerning product pricing; (2) documents related to ██████████████████████████████████ (3) documents related to regulatory strategy; (4) documents related to anticipated generic AndroGel entry and loss of exclusivity; and (5) due diligence documents from Abbott's acquisition of Solvay. These apparent ordinary-course business documents are not privileged and AbbVie should be compelled to produce them.

---

[13] Dkt. No. 145 at 9 (quoting *Kramer v. Raymond Corp.*, 90-CIV-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992)).

[14] *Id.* (quoting *In re Domestic Drywall Antitrust Regulation*, No. 13-MD-2437, 2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014)).

[15] *Id.* at 39.

**A. AbbVie improperly redacted an ordinary course business communication about product pricing.**

AbbVie has improperly redacted a document that appears to be a standard business communication related to AbbVie's "decision on how to market or advertise a product, or what conditions of sale should apply," and thus is not privileged.[16] The disputed document is an email chain with the title ████████████████████████████████████████████ ████████████ ██████████████████████████████████████████ ██████████████████████████████████

AbbVie claims that the email is █████████████████████████ ████████████████████████████████████████████████████ █████████████████████[18] but the available information suggests that the withheld material is primarily commercial in nature and created in the ordinary course of business. ████████ ████████████████████████████████████████████████████ ███████████████████████████████████████[19]

Second, there is no lawyer included anywhere in the chain as either author or recipient. "[D]ocuments prepared by non-attorneys and addressed to non-attorneys . . . are generally not privileged since they are not communications made 'primarily for legal advice.'"[20] Neither is there anything in the context of the rest of the email chain indicating the "primary purpose" of the communication was to obtain legal advice. AbbVie fails to demonstrate how a businessperson sending pricing information to other businesspeople could be privileged.

---

[16] *Id.* at 9 (quoting *Domestic Drywall*, 2014 WL 5090032, at *4).

[17] Ex. 1(A), Entry 2230.

[18] *Id.*

[19] *See* Ex. 2, Redacted Entry 2230.

[20] *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996).

AbbVie also claims work product protection for this document, but information on ▮▮▮▮▮▮▮▮▮▮ likely "would have been created irrespective of whether any litigation was pending."[21] Work product prepared in the ordinary course of business is not immune from discovery.[22] Consequently, AbbVie should be compelled to produce the redacted portion of this email chain.

### B.  AbbVie improperly withheld ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

AbbVie has completely withheld ten documents related to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[23] The contested documents include nine PowerPoint presentations, which were created by businesspeople or have no identified author, and one email between a large number of businesspeople, which included two lawyers as "cc" recipients.

The FTC alleges that Defendants' anticompetitive conduct in this case bought AbbVie time to transition the market from AndroGel 1% to AndroGel 1.62% prior to generic 1% entry. Because generic 1% products would not be automatically substitutable for brand-name AndroGel 1.62% prescriptions, this strategy substantially eroded the market for a generic version of AndroGel 1%, greatly diminishing the consumer benefit from generic entry.[24] ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ may be relevant to the appropriate calculation of AbbVie's ill-gotten gains and to whether AbbVie's licensing of a generic version of AndroGel 1.62% is an appropriate antitrust remedy to partially restore competitive conditions.

---

[21] Dkt. No. 145 at 40.

[22] *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

[23] *See* Ex. 1(B), Entries 1309, 1442, 1445, 1452, 1482, 1485, 1487, 1494, 1513, and 1732.

[24]  Dkt. No. 12 at ¶ 151.

AbbVie withheld all ten documents on attorney-client privilege grounds. But attorney-client privilege only protects communications between a client and an attorney relating to legal advice; the privilege does not protect business advice.[25] Indeed, even if some part of a communication "could implicate legal matters," to be privileged its primary purpose must be "to gain or provide legal assistance."[26]

Here, the available information indicates that the nine withheld PowerPoint presentations are primarily business and financial analyses of tactics and scenarios to maximize the value of a product facing generic entry, which the attorney-client privilege does not protect. First, the withheld presentations bear titles like ██████████████████████████████ ████████████████████████████████████████████████████ ████████████[27] These names plainly suggest that the contested documents were created for business planning purposes to evaluate the financial or business implications of ███████████ ███████████████[28] As this Court previously observed, "Solvay's strategies to extend a product's life cycle and exclusivity are commercial, not legal, in nature."[29]

Moreover, several of the document titles contain references to ███████████ and ███████████ and one is simply entitled ███████████████ indicating that they were prepared ████████████████████████████████████████

---

[25] *Processed Egg Prods.*, 278 F.R.D. at 117,120; *Kramer*, 1992 WL 122856, at *1 (finding that "the corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice" (internal quotation marks and citation omitted)).

[26] *King Drug Co. of Florence v. Cephalon, Inc.*, No. 06-CIV-1797, 2011 U.S. Dist. LEXIS 71806, at *32 (E.D. Pa. Jul. 5, 2011). Moreover, even if some portion of these business presentations legitimately reflects or memorializes legal advice, the appropriate course is to apply targeted redactions, rather than withholding the document entirely as AbbVie has done here.

[27] Ex. 1(B), Entries 1309, 1445, 1452, and 1732.

[28] *See* Ex. 1(B).

[29] Dkt. No. 145 at 39.

 and ███████████████████████ and belie AbbVie's assertion in the

log entries that these documents were ███████████████████[30]

Second, the identified authors, senders, and recipients of the challenged documents are

marketing or finance personnel, which also strongly suggests, consistent with their titles, that

these are business planning documents. Specifically, ████████████████████████

███████████████████[31] ███████████████████████████

███████████████[32] For two of the presentations, no attorney appears as a

sender or recipient of the document in AbbVie's log entry.[33] Courts are particularly wary of

claims of privilege over communications where no attorney is present all.[34]

And even though a lawyer is identified as one of several recipients of the other seven

presentations, AbbVie must "clearly demonstrate that the communication in question was made

for the express purpose of securing legal not business advice."[35] The attorney-client privilege

"does not shield documents merely because there were transferred to or routed through an

attorney."[36] Moreover, the mere fact that a lawyer provides input into an otherwise business-

related document does not automatically render the document legal advice.[37] Indeed, "[b]ecause

---

[30] Ex. 1(B), Entries 1482, 1485, 1487, and 1494.

[31] *See* Ex. 1(B), Entries 1452, 1482, 1487, 1494, and 1513.

[32] ███████████████████████████████████████████

[33] *See* Ex. 1(B), Entries 1732, 1494.

[34] *Pacamor Bearings*, 918 F. Supp. at 511 ("[D]ocuments prepared by non-attorneys and addressed to non-attorneys . . . are generally not privileged since they are not communications made 'primarily for legal advice.'").

[35] Dkt. No. 145 at 9 (quoting *Kramer*, 1992 WL 122856, at *1).

[36] Dkt. No. 145 at 6 (quoting *SmithKline Beecham Corp.*, 232 F.R.D. at 478).

[37] *See, e.g.*, *Cephalon*, 2011 U.S. Dist. LEXIS 71806, at *34 ("The fact that it was 'based on verbal feedback' from a lawyer cannot transform a business communication into a privileged one."); *Synopsys, Inc. v. Ricoh Co.*, No. 03-CIV-2289, 2006 U.S. Dist. LEXIS 64270, at *8 (N.D. Cal. Aug. 28, 2006) ("Documents such as a contract (and exchange of offers and counteroffers), patent application, demand letter, etc. are typically drawn 'pursuant to advice of counsel.' But they are not therefor privileged. Only the communications between client and attorney (or perhaps documents memorializing or describing such communications) themselves are privileged.").

legal advice in the corporate community is often intertwined," courts look to whether the communication is "predominantly legal" in nature.[38] AbbVie bears the burden of establishing that the withheld documents are predominately legal in nature, and it has failed to meet its burden here.

AbbVie likewise has asserted attorney-client privilege and completely withheld an email sent from █████████████████ both marketing personnel, and copying eight other employees, only two of whom are lawyers. AbbVie's log states that the communication relates to ██████████████████[39] The title ████████████ suggests that the document has ████████████ and is business—rather than legal—in nature. The law is clear that the attorney-client privilege only protects communications seeking advice that is "predominantly legal" in nature.[40]

In short, given the financial and commercial context of these documents and the business nature of ██████████████████████ the available information indicates that the withheld presentations and email are not privileged. Consequently, AbbVie should be compelled to produce these relevant documents regarding ███████████████ ███████████████

**C. AbbVie improperly redacted regulatory-related emails.**

AbbVie improperly redacted three email chains regarding the ████████████ ██████ claiming ████████████████████████████[41] These emails, by and between businesspeople, appear to address the implications of FDA

---

[38] *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-CIV-1990, 2003 U.S. Dist. LEXIS 26985, at *15-16 (D.N.J. June 25, 2003) (internal quotation marks omitted).

[39] *See* Ex. 1(B), Entry 1442.

[40] *Bristol-Myers Squibb*, 2003 U.S. Dist. LEXIS 26985, at *15-16.

[41] Ex. 1(C), Entries 600, 2488, and 2489.

regulatory decisions as they relate to the company's products and potential business and communications strategies. AbbVie has not met its burden to prove that the redactions on these documents protect legal advice from ██████ rather than business advice.

"Because legal advice in the corporate community is often intertwined with and difficult to distinguish from business advice, the inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as *predominantly legal*."[42] Similarly, "involvement of in-house counsel alone is not enough for the attorney-client privilege to be applicable" and "[c]ourts have not been willing to presume that the services [in-house counsel] provided were of a legal, as opposed to a business, nature."[43] Indeed, this Court's December 14, 2015 decision addressed this specific issue in the context of an email sent from Jim Hynd, an AbbVie Vice President, to Mr. Siatis regarding regulatory strategy. After review, the Court ordered the email produced, holding that the attorney-client privilege "does not apply if the client seeks regulatory advice for a business purpose."[44] The Court elaborated: "[a]s a participant in a highly-regulated industry, a pharmaceutical company must consider regulatory matters in making nearly all of its business decisions. We note that the attorney-client privilege 'is construed narrowly.'"[45]

Here, the FTC challenges another email exchange between ███████████████[46]



In an

---

[42] *Bristol-Myers Squibb*, 2003 U.S. Dist. LEXIS 26985, at *15-16.

[43] *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2012 WL 426275, at *6 (M.D. Pa. Feb. 9, 2012) (quoting 1 Rice, Attorney-Client Privilege § 3:14, at 55-56 & n. 32).

[44] Dkt. No. 145 at 25 (citing *In re Avandia Mktg., Sales Practices & Prods. Liab.*, No. 07-md-01871, 2009 WL 4807253, at *6 (E.D. Pa. Oct. 2, 3009); *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992)).

[45] *Id. at* 26 (citing *Westinghouse*, 951 F.2d at 1423).

[46] *See* Ex. 1(C), Entry 600.

unredacted message sent later in the chain, ████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████[47] ███████████████████

██████████████████████████████████████ ████████████████

████████ It thus appears to be "predominately business related and guided by marketing and

public relations considerations," and "would not be privileged."[48] Moreover, the unredacted

portion of this email demonstrates ██████████████████████████████████████

███████████████████████████████████████████████

█████████ which also renders the communication not privileged.[49]

The FTC also challenges the redaction of two email chains ███████████████

██████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████[50] AbbVie's privilege log describes these

documents as ████████████████████████████████████████████

████████████████████████████████████████████

█████████████[51] But the context of these emails indicates a purely business purpose. The

subject of one email is ██████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████ The descriptions and unredacted portions of these email chains make



---

[47] *See* Ex. 3, Redacted Entry 600.

[48] *Bristol-Myers Squibb*, 2003 U.S. Dist. LEXIS 26985, at *16.

[49] *See e.g.*, *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984) (finding that "courts have consistently refused to apply the privilege to information that the client intends his attorney to impart to others ..., or which the client intends shall be published or made known to others.") (internal quotation omitted)

[50] Ex. 1(C), Entries 2488 and 2489.

[51] *Id.*

clear that ███████ was providing information about the regulatory strategy ██████████

█████ and intellectual property issues for purposes of developing assumptions and identifying

risk factors to be accounted for in AbbVie's long range planning and forecasting for AndroGel

sales.[52] Although the subjects referenced in the redacted communications, ████████████

████████████████████ could be concerned with legal matters, they appear here to be

discussed only to the extent they have business implications and therefore are not subject to the

attorney-client privilege.[53] As this Court has previously held, documents referencing legal issues

"only to the extent that they have specific business implications" are not properly withheld as

privileged.[54]

**D.  AbbVie improperly withheld and redacted generic entry or "loss of exclusivity"
planning documents.**

AbbVie has wrongly withheld three business presentations and improperly redacted five

emails and other documents that appear to concern the date on which AbbVie expected entry of

generic AndroGel, often referred to in the documents as "loss of exclusivity" or "LOE."[55] This

issue is highly relevant to the FTC's claims and remedies in this case, for at least three reasons.

First, it goes to AbbVie's incentive and motivation to file sham litigation to delay generic entry,

████████████████████████████

Second, changes in AbbVie's expectations of generic entry are probative of AbbVie's

own assessment of the weakness of the positions it took in the underlying patent litigation. As

just one example, Teva filed its summary judgment motion (based on prosecution history

estoppel) on August 1, 2011. Shortly thereafter, ████████████████████████████

---

[52] *See* Exhibits 4 and 5, Redacted Entries 2488 and 2489.

[53] Dkt. 145 at 16, 31.

[54] *See id.* at 33.

[55] Ex. 1(D), Entries 98, 656, 1178, 1259, 1260, 1261, 1739, and 2103.

██████████████████████████   The internal business discussions around the

███████████████████████████████████████████████████████████████

██████████████████████—are probative of AbbVie's knowledge that its patent

infringement lawsuit was a sham.

Third, forecasted generic entry dates are relevant to remedy because they bear on the

reasonable approximation of when generic entry would have occurred absent Defendants'

unlawful conduct and thus may inform calculation of the appropriate amount of equitable

monetary relief.

In its December 14, 2015 opinion, this Court previously ordered AbbVie to produce

several business documents concerning estimates of generic entry. In so ruling, the Court noted

that while "a business strategy is always infused with some legal concerns, particularly where the

business strategy focuses on the likelihood of competitor actions," if the focus of a

communication is for business rather than legal concerns, it is not protected by privilege.[56]

Indeed, this Court found that:

> where Abbott mentioned a likely market entry date for generic competitors and the
> expected duration of patent exclusivity, this was to prepare a strategy for marketing and
> promoting Solvay's products. Even though in-house counsel may have been consulted to
> help determine the market entry date for those competitors, this does not mean that any
> document using that date must be privileged.[57]

This Court further concluded that "Solvay's strategies to extend a product's life cycle and

exclusivity are commercial, not legal, in nature."[58] Here, the eight contested documents appear to

contain similar non-privileged information relating to generic entry estimates and product life

cycle planning.

---

[56] Dkt. No. 145 at 19-20.

[57] *Id.* at 32.

[58] *Id.* at 39.

### 1.   AbbVie improperly withheld business forecasting scenario documents.

AbbVie has improperly withheld three presentations, two titled ████████████ ████████████ and one titled █████████████████████████ based on attorney client privilege and work product.[59] A cover email attaching two of the three contested documents was sent ████████████████████████████████



AbbVie's privilege log asserts that these attachments were ███████████████

Instead, the cover email demonstrates that these materials were prepared for top business executives to discuss business strategies ████████████████████████ ████████████████ Notably, there are numerous copies of similar business documents referring to ██████████████ in AbbVie's production, which constitute business forecasts based on different generic entry assumptions. These documents suggest that the

---

[59] Ex. 1(D), Entries 1259, 1260, and 1261.

[60] *See* Ex. 6, Cover Email. Entry 1261 appears to be the same or duplicate document as Entry 1259, which was attached to the referenced cover email.

[61] *Id.*

[62] *See* Ex. 1(D), Entries 1259 and 1260.

withheld documents—bearing the same or similar names—likely were created for business planning purposes as well. Given the available information, it appears the contested presentations are primarily business forecasts for commercial, not legal, purposes.

Even if the slides were prepared to discuss the impact from developments in the Teva AndroGel 1% patent infringement litigation, "no privilege applies when business colleagues discuss pending litigation and the likelihood of settlement so as to plan a business strategy because such a discussion is not for the purpose of providing or obtaining legal advice."[63] Accordingly, these documents are not protected by attorney client privilege.

Finally, AbbVie's claim of work-product protection for these contested materials falls short as well. The work product doctrine requires that a document "must have been prepared primarily for the purpose of litigation."[64] In contrast, "[w]ork product prepared in the ordinary course of business is not immune from discovery,"[65] and "[w]here a document would have been created in substantially similar form regardless of the litigation, work product protection is not available."[66]

Unlike the spreadsheets that this Court previously found to be work product, which AbbVie claimed were created "for the specific and sole purpose of analyzing the relevant data and transmitting the results of the analyses to Mr. Siatis,"[67] the forecasts here at issue were created for AbbVie's highest-level business executives to discuss various AndroGel scenarios

---

[63] Dkt. No. 145 at 18 (citing *In re Teleglobe*, 493 F.3d at 359).

[64] Dkt. No. 145 at 11.

[65] *Holmes*, 213 F.3d at 138.

[66] *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (citation and quotation marks omitted).

[67] Dkt. No. 128-2, at 2.

and the optimal business response plan.[68] Such forecasting and strategic planning in response to changed market circumstances is a decidedly business-related function and would occur regardless of any litigation. Work product protection therefore does not apply. Accordingly, these documents should be produced.[69]

### 2. AbbVie improperly redacted business planning notes and emails.

AbbVie also redacted three sets of meeting notes and one email relating to loss of exclusivity or generic entry estimates for AndroGel, claiming attorney-client privilege.[70] The redactions in each of these documents appear improper.

First, the unredacted sections of the ██████████ notes indicate that the purpose of the underlying meetings was commercial in nature: to obtain guidance from management-level employees, like ████████████████ on certain important assumptions and inputs used to formulate the AndroGel long range plan and sales forecasts.[71] Such discussions and exercises are clearly business concerns. In entries 656 and 2103, the redactions at issue appear under the heading ████████████████████████████████████

██████████████████████████████[72] In entry 1739, the redactions appear under the heading ██████████████████████████████████

██████████████████████████████[73] But even if in-

---

[68] AbbVie now claims that entries 1259-1261 are the presentations created based on the underlying spreadsheets at issue in the FTC's September 2015 motion to compel. However, the cover email discussed above provides context refuting that assertion and suggesting that these presentations were used for a business purpose and should not be afforded the same protection as the spreadsheets.

[69] 

[70] *See* Ex. 1(D), Entries 656, 1178, 1739, and 2103.

[71] *See, e.g.,* Ex. 1(D), Entry 1739.

[72] *See* Exhibits 7 and 8, Redacted Entries 656 and 2103.

[73] *See* Ex. 9, Redacted Entry 1739.

house counsel ███████████ was consulted to help determine the likely market entry date for generic competitors or the expected duration of patent exclusivity, "this was to prepare a strategy for marketing and promoting Solvay's products."[74] The context of these notes demonstrates that the "LOE" discussions or assumptions are referenced only to the extent they have specific business planning or forecasting implications and therefore reflect business, not legal, concerns.[75] Merely including attorney input into a business decision or assumption does not render the communication privileged.[76] Accordingly, AbbVie should be ordered to produce unredacted versions of these business meeting notes.

Second, the FTC challenges AbbVie's redaction of a ████████ email chain involving businesspeople responsible for forecasting and strategic analysis that ████████████████ ███████████████████████████████████████████████████[77] Although in-house counsel is consulted ████████████████████████ the unredacted passages of the email chain suggest that this input is provided in order to incorporate into a broader business strategy.[78] Attaching attorney-client protection to every such reference to market entry dates or patent protection in business communications "would be inconsistent with the mandate of our Court of Appeals that the attorney-client privilege be narrowly construed."[79]

---

[74] Dkt. No. 145 at 32; *see also Cephalon*, 2011 U.S. Dist. LEXIS 71806, at *32-*34 (holding that generic entry estimates are not protected by privilege even if "based on verbal feedback from a lawyer" because generic market entry is "a matter of economic [not legal] concern").

[75] Dkt. No. 145 at 33.

[76] *See, e.g., Cephalon*, 2011 U.S. Dist. LEXIS 71806, at *34; *Synopsys*, 2006 U.S. Dist. LEXIS 64270, at *8; *Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289, 296 (D.D.C. 2000) (upholding magistrate judge's finding that attorney client privilege did not apply to meeting minutes when "the primary function [of the meeting] was to make a business decision, not to obtain legal advice.").

[77] Ex. 1(D), Entry 1178.

[78] *See* Ex. 1(D); Ex. 10, Redacted Entry 1178 at 3-4.

[79] Dkt. No. 145 at 31-32 (citing *Westinghouse*, 951 F.2d at 1423).

In short, the available information indicates that the contested presentations, notes, and emails are not privileged and AbbVie should be compelled to produce these relevant documents concerning the loss of exclusivity or generic entry date assumptions for AndroGel 1% and 1.62%.

### E.  AbbVie improperly withheld or redacted Solvay acquisition due diligence documents.

AbbVie has improperly withheld or redacted eight documents related to due diligence conducted in conjunction with its 2010 acquisition of Solvay, the company that co-owned the AndroGel patent with Besins.[80] In its December 14, 2015 opinion, this Court found that a number of due diligence presentations related to the Solvay acquisition (code named "Project Chocolate" or "Project Phoenix") were not privileged. Despite this guidance, AbbVie once again refuses to produce similar due diligence emails and presentations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ based on the same privilege claims.

Here, the context of all of the challenged materials is a business transaction: AbbVie's acquisition of Solvay. It is clear from the available information, cover emails, and unredacted portions of the documents, that AbbVie's primary interest was assessing the commercial value of Solvay's assets, including the AndroGel franchise, as well as preparing for the commercial integration of the two companies.[81] These documents reflect financial and business information obtained for those purposes, and although in house-lawyers may have received the documents or provided some input, the authors of all of the presentations, forecasts, and spreadsheets are businesspeople, not attorneys. As previously explained by this Court in its December 2015

---

[80] Ex. 1(E), Entries 921, 946, 947, 1071, 2412, 2448, 2455, and 2506.

[81] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

decision, "[t]he due diligence documents analyzed business concerns that could have arisen in acquiring Solvay's products. These business concerns included annual sales, product marketing and promotion, market competition, potential research issues, and development strategies."[82] Based on their titles, descriptions, and dates, it appears that the currently withheld or redacted documents deal with similar issues—particularly the potential market competition that could result from generic entry of AndroGel.[83] Just because some of these entries may refer to the legal department that does not necessarily mean that they are protected by privilege.[84]

By way of example, AbbVie has withheld in its entirety a PowerPoint presentation named ███████████████████████████████ and prepared by ███████████ a non-attorney ███ ███████████████████████[85] The cover email associated with this document was sent ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████[86] It states ██████████████████████████████████ ██████████████████████████████████████████████████████ █████████████████[87]

Based on the text of the email, the date it was sent, and the title of the attachment, it appears that this document is an updated forecast for AndroGel created ███████████████

---

[82] Dkt. No. 145 at 31.

[83] ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████

[84] For example, in its December 2015 decision, this Court ordered a document to be produced which redacted the sentence "[i]n concert with legal, review all contracts as they relate to R&D, pharmacovigilance, and regulatory activities and determine consequences of discontinuing programs." *See* Ex. 15, Unredacted Document from Prior Privilege Challenge, at 3. Like entries 921 and 1071, this document was created in the context of due diligence for the Solvay acquisition.

[85] Ex 1(E), Entry 2455.

[86] *See* Ex. 11, Cover Email for Entry 2455.

[87] *Id.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[88]

Thus, this forecast appears to have been created ████████████████████████

████████████████████████████████████████████████████████

████████ to preserve AndroGel sales going forward and to reassess the profitability and

valuation of the AndroGel franchise in light of the threat of imminent generic AndroGel 1%

entry. Such information would help inform AbbVie's ultimate decision whether to include

AndroGel as part of the deal, a decidedly business, not legal, concern.

Finally, while AbbVie's privilege log entries recite boilerplate descriptions with only

slight variations and assert that each of the Solvay Acquisition documents was ████████████

████████████████████████████████████████████████████████

████████████████[89] As with the due diligence presentations this Court reviewed last year,

AbbVie has failed to meet its burden of demonstrating that these documents are privileged.

"[E]ven if the court were to find that these due diligence [documents] mention legal matters,

these [documents] were created for business purposes. To the extent that these due diligence

documents reference legal issues, this was done to provide context for a business acquisition

decision, not to obtain or provide legal advice."[90]

## II.  AbbVie improperly withheld patent prosecution documents.

AbbVie has improperly withheld or redacted seven documents related to the prosecution of

the '894 patent.[91] The challenged documents fall into two categories: (1) ████████████████

---

[88] Dkt. No. 12 at ¶ 66.

[89] *See* Ex. 1(E), Entries 921, 1071, 2412, 2448, 2455, and 2506.

[90] Dkt. No. 145 at 30 (citing *La. Mun. Police Employees Ret. Sys. v. Sealed Air Corp*, 253 F.R.D. 300, 306 (D.N.J. 2008)).

[91] Ex. 1(F), Entries 538, 539, 711, 724, 726, 727, and 839.

██████████████████████████████████████████████████████████ and (2)

technical and strategy reports related to the patent prosecution. These documents are relevant to

this case because they shed light on AbbVie's knowledge and perception of the patent's scope at

the time it was prosecuted. As already found by this Court, not all documents regarding patent

prosecutions are protected by the attorney-client privilege and AbbVie cannot "refuse to disclose

facts simply because that information came from a lawyer."[92]

### A.  AbbVie improperly withheld ████████████████████████████

AbbVie has entirely withheld several documents that appear to be ███████████

███████████████████████████ that were never communicated to the client.

As this Court has observed, the attorney client privilege protects "(1) a communication

(2) made between privileged persons (3) in confidence (4) for the purpose of providing legal

assistance for the client."[93] In contrast, the Supreme Court has long held that attorney-client

privilege does not attach to "the memoranda, briefs, communications and other writings prepared

by counsel *for his own use* in prosecuting his client's case; and it is equally unrelated to writings

which reflect an attorney's mental impressions, conclusions, opinions or legal theories."[94] Thus,

notes containing mental impressions about a patent prosecution —a "non-adversarial, *ex parte*

proceeding distinct from litigation"— that were not communicated to a client are not protected

by attorney-client privilege.[95]

---

[92] Dkt. No. 145 at 13-14.

[93] Dkt. No. 145 at 4 (quoting *In re Teleglobe*, 493 F.3d at 359).

[94] *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (emphasis added); *see also SmithKline Beecham Corp.*, 232 F.R.D. at 481, 483 (citing *Hickman*, 329 U.S. at 508) (ordering two documents produced because they merely "reflect the mental impressions of counsel" and "such personal reflections are not privileged"; holding that attorney-client privilege did not extend to another document that reflects "attorney thought processes").

[95] *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184-87 (D.N.J. 2003) (finding neither work product or attorney-client privilege applied to handwritten notes by the patent attorneys because the "attorney's notes and personal musings do not constitute 'communications,' are not privileged, and must be produced."); *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024, at *15-*16 (D. Kan. Jan. 25, 2012) (" [I]f the attorney's notes or memoranda to file are not communicated to the client, and are not memorializing a confidential

AbbVie claims that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ [96] As Supreme Court precedent makes clear, however, that statement is only true to the extent that the notes reveal or memorialize an actual confidential client communication that occurred.[97] Indeed, the cases cited by AbbVie stand for exactly this proposition: an attorney's personal notes are privileged only when they would reveal a confidential client communication.[98]

The FTC does not dispute that, to the extent ████████████████ legitimately memorialize confidential communications with his clients, they may be privileged. But, based on their descriptions, it appears highly unlikely that these documents *only* memorialize client confidences. And notably even if the notes memorialize a conversation with the client, the attorney-client privilege would not protect a client communication in which "the attorney merely conveys facts acquired from persons or sources other than a client."[99]

For example, the document for entry 711 is titled ██████████████████████ and described as ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

communication with the client, they do not fall within the scope of the attorney-client privilege."); *Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06CV543, 2008 WL 2949399, at *4 (S.D. Ohio July 30, 2008) ("Some of the documents, described in the Updated Privilege Log as '[n]otes reflecting legal questions' or '[a]ttorney notes,' do not constitute or memorialize communication either by or to the client and are thus not within the attorney-client privilege.").

[96] *See* Ex. 16, AbbVie May 6 letter, at 5.

[97] *Hickman*, 329 U.S. at 508.

[98] *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14-CV-3618, 2016 WL 307310, at *3-4 (N.D. Ill. Jan. 26, 2016) (noting that a document that is not a communication can still be privileged if it "necessarily reflects the communications between a client and his attorney"); *Natta v. Zletz*, 418 F.2d 633, 637 n.3 (7th Cir. 1969) (when an "attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure"); *Phillips Elecs. N. Am. Corp. v. Universal Elects., Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995) (noting that attorney notes and drafts may be privileged where they "incorporate facts the client disclosed to counsel in confidence").

[99] Dkt. No. 145 at 13.

███████████████████████████████████████████████████████[100] AbbVie

provides nearly identical entries for documents 724, 726, 727, and 839.[101] The mere fact that

information was used to ████████████████████████████ does not mean that the

information itself is necessarily privileged. Since these notes were not themselves

communicated, they are only privileged to the extent that they reveal the content of a confidential

communication with the client. Even if some discrete component of the notes may reflect legal

advice conveyed, that component can be redacted with the rest of the notes being produced.

### B. AbbVie improperly redacted AndroGel patent exclusivity information.

AbbVie has redacted two versions of a report titled ████████████████████

████████████████████[102] AbbVie's privilege log describes this report as

███████████████████████████████████████████████

████████████████████[103] The contested materials appear to be global business strategy

and planning documents that analyze sales, forecasts, market conditions, and regulatory and

exclusivity issues across different geographic markets.[104] ████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████

Based on the overall context of the reports, as well as the specific content near the

redactions, it appears that the redacted information was not primarily for the purpose of

---

[100] *See* Ex. 1(F).

[101] *See* Ex. 1(F).

[102] *See* Ex. 1(F), Entries 538 and 539.

[103] *See* Ex. 1(F).

[104] *See* Exhibits 17 and 18, Redacted Entries 538 and 539.

providing legal advice. For example, 

██████████████████████████████████████████████████

████████████████████████████████████████

████████████████████ The next sentence is redacted. The following sentence states:

██████████████████████████████████████████████

████████████ [105] The context indicates that the redacted materials relates to the ability to keep

potential AndroGel competitors off the market—an issue that this Court has recognized as a

business, not legal, concern.[106]

Similarly, ████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████  ████████████████████████████████████████████████

████████████ Thus, the context of the position statement and the unredacted portions of these

business strategy and planning documents suggest that the redacted material contains

information primarily for business purposes.

As such, AbbVie has not met its burden of proving that these redactions are privileged,

and AbbVie should be compelled to produce unredacted versions of both documents.

## CONCLUSION

AbbVie failed to carry its burden of proving it is entitled to shield from discovery the 37

relevant documents challenged in this motion. For the foregoing reasons, the FTC respectfully

---

[105] *See* Ex. 17, Redacted Entry 538.

[106] Dkt. No. 145 at 39.

[107] *See* Ex. 17, Redacted Entry 538.

asks the Court to order AbbVie to produce the documents identified in Exhibits 1(A)-(F) in their entirety. To facilitate the assessment of AbbVie's privilege and work-product protection claims, the FTC asks that the Court conduct an *in camera* review of the disputed documents

Dated: June 30, 2016                                 Respectfully submitted,

                                                     */s/ Patricia M. McDermott*
                                                     Patricia M. McDermott
                                                     Federal Trade Commission
                                                     600 Pennsylvania Avenue, N.W.
                                                     Washington, D.C. 20580
                                                     (202) 326-2569
                                                     pmcdermott@ftc.gov

                                                     *Counsel for Plaintiff*
                                                     *Federal Trade Commission*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Case Number: 2:14-CV-5151-HB** |
| **ABBVIE INC., et al.,** | |
| **Defendants.** | |

### Declaration in Support of Plaintiff Federal Trade Commission's
### Motion to Compel AbbVie Defendants to Produce Documents Improperly
### Withheld on Privilege Grounds from their Pennsylvania Privilege Logs

I, Patricia M. McDermott, declare as follows:

1. I am an attorney licensed to practice in the District of Columbia representing the Federal Trade Commission ("FTC") in the above-captioned matter. I made my appearance in this case pursuant to Local Rule 83.5(e).

2. I submit this declaration in support of the FTC's Motion to Compel AbbVie Defendants to Produce Documents Improperly Withheld on Privilege Grounds from their Pennsylvania Privilege Logs.

3. Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the Privilege Log entries challenged by the FTC in this motion. Exhibit 1 is a compilation of the most current version of each of the challenged log entries produced by the AbbVie Defendants.

4. Attached hereto as Exhibit 2 is a true and accurate copy of the document for privilege log entry 2230, produced in this litigation as Bates No. AGEL-PA-006-0487546.

5.  Attached hereto as Exhibit 3 is a true and accurate copy of the document for privilege log entry 600, produced in this litigation as Bates No. AGEL-PA-006-0320603.

6.  Attached hereto as Exhibit 4 is a true and accurate copy of the document for privilege log entry 2488, produced in this litigation as Bates No. AGEL-PA-006-0543050.

7.  Attached hereto as Exhibit 5 is a true and accurate copy of the document for privilege log entry 2489, produced in this litigation as Bates No. AGEL-PA-006-0543052.

8.  Attached hereto as Exhibit 6 is a true and accurate copy of the document produced in this litigation as Bates No. AGEL-PA-006-0532125.

9.  Attached hereto as Exhibit 7 is a true and accurate copy of the document for privilege log entry 656, produced in this litigation as Bates No. AGEL-PA-006-0545046.

10. Attached hereto as Exhibit 8 is a true and accurate copy of the document for privilege log entry 2103, produced in this litigation as Bates No. AGEL-PA-006-0552802.

11. Attached hereto as Exhibit 9 is a true and accurate copy of the document for privilege log entry 1739, produced in this litigation as Bates No. AGEL-PA-006-0554367.

12. Attached hereto as Exhibit 10 is a true and accurate copy of the document for privilege log entry 1178, produced in this litigation as Bates No. AGEL-PA-006-0551827.

13. Attached hereto as Exhibit 11 is a true and accurate copy of the document produced in this litigation as Bates No. AGEL-PA-006-0557417.

14. Attached hereto as Exhibit 12 is a true and accurate copy of the document for privilege log entry 921, produced in this litigation as Bates No. AGEL-PA-006-0475914.

15. Attached hereto as Exhibit 13 is a true and accurate copy of the document for privilege log entry 2412, produced in this litigation as Bates No. AGEL-PA-006-0542453.

16. Attached hereto as Exhibit 14 is a true and accurate copy of the document for privilege log entry 2448, produced in this litigation as Bates No. AGEL-PA-006-0557407.

17. Attached hereto as Exhibit 15 is a true and accurate copy of the document produced in this litigation as Bates No. AGEL-PA-006-0001724.

18. Attached hereto as Exhibit 16 is a true and accurate copy of a letter from Adam Lawton, Esq. to Patricia McDermott, Esq., dated May 6, 2016.

19. Attached hereto as Exhibit 17 is a true and accurate copy of the document for privilege log entry 538, produced in this litigation as Bates No. AGEL-PA-006-0544562.

20. Attached hereto as Exhibit 18 is a true and accurate copy of the document for privilege log entry 539, produced in this litigation as Bates Nos. AGEL-PA-006-0544594.

I declare under penalty of perjury that the foregoing is true and correct

Dated: June 30, 2016

Patricia M. McDermott

# Exhibits 1-18

# Filed Under Seal