# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

        **v.**

**ABBVIE INC., et al.,**

        **Defendants.**

**Case Number: 2:14-CV-5151-HB**

**Public Version**

**Reply Memorandum in Support of Plaintiff Federal Trade Commission's Motion to Compel the AbbVie Defendants to Produce Board of Directors Documents Discussing the Marketing or Sale of AndroGel**

**Table of Contents**

I.      AbbVie sidesteps the clear relevance of the board materials by improperly
        narrowing the scope of the document request and issues in the case ..............................................1

II.     The board materials are not duplicative of custodial files ..............................................................3

III.    AbbVie cannot use confidentiality to justify withholding unique, relevant
        documents ........................................................................................................................................6

Conclusion ..........................................................................................................................................8

## Table of Authorities

**Cases**

*Beauchem v. Rockford Prods. Corp.,*
No. 01 C 50134, 2002 WL 1870050 (N.D. Ill. Aug. 13, 2002)................................. 7

*Beverage Distribs., Inc. v. Miller Brewing Co.,*
No. 08-cv-827, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010)................................. 7

*Clayton Corp. v. Altachem NV,*
No. 4:12-cv-01349, 2015 WL 2412178 (E.D. Mo. May 20, 2015)......................... 4

*Georgeandellis v. Holzer Clinic, Inc.,*
No. 2:08-cv-626, 2010 WL 1839027 (S.D. Ohio May 4, 2010)............................... 6

*Gordon, Wolf, Cowen Co. v. Indep. Halvah & Candies, Inc.,*
9 F.R.D. 700 (S.D.N.Y. 1949) ............................................................................... 6

*In re Atl. Fin. Fed. Sec. Litig.,*
No. 89-cv-0645, 1991 WL 153075 (E.D. Pa. Aug. 6, 1991) ................................... 6

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*
MDL No. 2179, 2011 WL 12663484 (E.D. La. July 1, 2011)................................. 6

*Sadofskyv v. Fiesta Prods., LLC,*
252 F.R.D. 143 (E.D.N.Y. 2008) ........................................................................... 6

*Trollinger v. Tyson Foods, Inc.,*
No. 4:02-cv-23, 2007 WL 951869 (E.D. Tenn. March 28, 2007) ........................... 7

**Rules**

Fed. R. Civ. P. 26(b)(2)............................................................................................ 4

In its opposition, AbbVie tries to resist the production of relevant board materials by advocating an indefensibly narrow interpretation of the FTC's requests and arguing that any materials would be duplicative of AbbVie employees' custodial files. AbbVie further suggests that the confidential nature of board materials counsels against their production. But none of these arguments has merit. As discussed below, materials from AbbVie's boards of directors are uniquely relevant, non-duplicative, and sufficiently safeguarded by the protective order in this case. After nearly a year of trying to avoid discovery of unique, relevant board documents, AbbVie offers no credible reason why it should not produce them and the FTC respectfully asks this Court to order their production.

**I.   AbbVie sidesteps the clear relevance of the board materials by improperly narrowing the scope of the document request and issues in the case**

As discussed in the FTC's motion to compel, the requested board materials are unquestionably responsive to the FTC's Request for Production No. 6 ("RFP No. 6"), which seeks "[a]ll documents presented to the AbbVie Defendants' . . . boards of directors discussing the marketing or sale of AndroGel." (Dkt. 187-4, at 12). During the extensive meet-and-confer process, AbbVie appeared to be preparing to produce the relevant materials, but then abruptly reversed course. AbbVie is now attempting to evade its obligation to produce relevant, responsive materials by advancing a nonsensical interpretation of the FTC's request.[1]

First, AbbVie asserts that the materials sought are irrelevant because this case is about AbbVie's use of sham patent litigation to delay generic entry from Perrigo and Teva, not about

---

[1] AbbVie incorrectly suggests that the FTC somehow negotiated away relevant board materials when the parties agreed on certain document custodians during the meet-and-confer process. This is plainly not true. The FTC has continually asked for board materials from the time it issued its Second Set of Requests for Production in August 2015. (Dkt 187-1, at 1-2.) Thus, discussions of relevant custodians during meet-and-confers were based on the understanding that board materials were a non-custodial search, likely located in a centralized corporate repository. Indeed, during the months that AbbVie was purportedly tracking down the board materials, it never contended that the FTC had negotiated away the right to receive them during the parties' custodian negotiations.

AbbVie's sales and marketing of AndroGel. (Dkt. 203, at 2-3.) But as discussed in the FTC's motion to compel, AbbVie's sales and marketing strategies—including strategies for dealing with competitive generic entry, such as from Perrigo and Teva—are directly relevant to various issues in this case, including the relevant product market, AbbVie's monopoly power within the relevant product market, the amount of ill-gotten gains that AbbVie should disgorge, and AbbVie's motive and intent to file a sham patent lawsuit against potential generic rivals. (Dkt. 187-1, at 2-5.) And, of course, the whole point of AbbVie's alleged illegal conduct to delay generic entry was to preserve AbbVie's sales of AndroGel.

Second, AbbVie attempts to evade its discovery obligations through an unduly narrow definition of the term "sales and marketing." In particular, AbbVie asserts—without support— that topics such as the acquisition of Solvay (the company that owned AndroGel before AbbVie), AbbVie's pricing strategies for AndroGel, and the expected timing and impact of generic entry are not included within the definition of "sales and marketing." (Dkt. 203, at 11-13.) But as outlined in the FTC's motion to compel, the Solvay acquisition, pricing strategies for AndroGel, and the expected timing and impact of generic entry all directly relate to the "marketing and sale of AndroGel." (Dkt. 187-1, at 2-5). For example, in conjunction with AbbVie's acquisition of Solvay, AbbVie ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Similarly, the timing and impact of generic entry is typically a central factor affecting the sales and marketing of a branded product because promotion of the branded product generally ceases as branded sales decline dramatically after generic entry. In this case, the expected timing of generic entry ████████████████████████████████████████ ████████████████████████████████████████ Finally, one can hardly imagine a topic

more directly related to "sales and marketing" than the company's pricing strategies for the product. AbbVie's assertion that these topics are not included in "sales and marketing" makes no sense.

Third, AbbVie asserts that the board materials are non-responsive because the boards ██████████████████████████████████████████████████ This is wrong. AbbVie's management provides updates to its board and seeks board approval for certain strategies. Indeed, by AbbVie's own "Governance Guidelines," its board of directors reviews "corporate strategies" and "monitor[s] the effectiveness of management policies and decisions, including the execution of strategies." (Dkt. 187-8, at 2) What AbbVie's senior management told the boards of directors about their views of market competition and the corporate strategies for delaying entry of generic competition is directly relevant to this case.[2]

## II.    The board materials are not duplicative of custodial files

AbbVie argues that it should not be required to produce relevant, responsive board materials because ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ This argument should be rejected on its face.

To begin with, AbbVie conspicuously has not asserted that *all* of the information in the board materials has been produced in this case. Rather, AbbVie argues that ███████████████ ████████████████████████████████ similar information scattered among AbbVie's document dump of millions of pages of materials in this case. AbbVie's inability to

---

[2] AbbVie's argument that board minutes were not "presented" to the board is a red herring. In most corporate entities, minutes of prior board meetings are presented to the board for review and ratification.

certify that all of the board materials have already been produced undermines its assertion that the discovery sought would be unreasonably cumulative.[3]

More importantly, however, the board materials should be produced *even if* the same documents have been produced from other custodial files. As AbbVie explains, the ███ ██████████████████████████████████████████████████████████████████████ ███████████████████ From all of the documents created by the relevant business units, AbbVie's senior management selects only a discrete set of materials to be included in these ████████████ What AndroGel-related information AbbVie's senior management decided to include is highly relevant: it reflects their view of the information that was deemed particularly important and reliable enough to present to the highest levels of the company. Thus, the very fact that certain information was included in the board materials is independently relevant, and not "obtainable from some other source."[4] For this reason, courts routinely order the production of board materials. (Dkt. 187-1, at 3.)

Indeed, AbbVie appears to recognize the unique importance of board materials. Even though board materials are drawn from the business units, according to AbbVie, ███████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████ But if the materials presented to the Board hold no special importance ███████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████.

---

[3] *See Clayton Corp. v. Altachem NV*, No. 4:12-cv-01349, 2015 WL 2412178, at *3 (E.D. Mo. May 20, 2015) ("[t]hough there will likely be some overlap between documents that Defendants have already produced and the documents that Clayton now requests, that does not mean that no new responsive documents would be found such that the discovery would be *unreasonably* duplicative" (*emphasis in original*)).

[4] Fed. R. Civ. P. 26(b)(2).

AbbVie also understates the particular value of board documents by implying that the company will not disavow or walk away from documents from the business units. (Dkt. 203, at 10.) However, AbbVie has already done so. For example, the FTC issued the following Request for Admission to AbbVie regarding a ██████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████

AbbVie responded, in part:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

It is part of any defendant's playbook to try to walk away from unhelpful documents, such as the one identified above. But AbbVie cannot walk away from materials presented to the board. That is why the FTC is entitled to know which plans, forecasts and other documents relating to the sale and marketing of AndroGel have been presented to the board.

Finally, AbbVie does not, and cannot, argue that identifying and producing the board materials would be burdensome. Indeed, ████████████████████████████

████████████████████████████████████████████

In short, the board materials are uniquely relevant, and the mere fact that AbbVie *might* have produced "substantively" similar information to that which was ultimately presented to the board of directors does not relieve AbbVie of its discovery obligations.

### III. AbbVie cannot use confidentiality to justify withholding unique, relevant documents

AbbVie's repeated claim that the sensitivity of its board materials weighs against their production ignores both the unique relevance of the board materials and the operative Protective Order in this case. (Dkt. 86.) As discussed above, AbbVie's board materials are clearly relevant to this case and unique. Though they may also be highly confidential, AbbVie points to no reason why the Protective Order cannot not address its confidentiality concerns.[5] Indeed, AbbVie cites no case denying discovery of sensitive board materials when the materials were relevant and covered by a protective order.[6] Further, the FTC is a sophisticated government agency that regularly receives highly sensitive confidential material from businesses, including board documents.[7]

---

[5] *See In re Atl. Fin. Fed. Sec. Litig.*, No. 89-cv-0645, 1991 WL 153075, at *4 (E.D. Pa. Aug. 6, 1991) ("defendants are already well-protected from improper disclosure by the confidentiality order").

[6] The cases cited by AbbVie that supposedly justify withholding board materials involved either non-responsive information or an apparent lack of confidentiality protections. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,* MDL No. 2179, 2011 WL 12663484, at *1 (E.D. La. July 1, 2011) (holding the protective order provisions were inadequate for materials that were *not relevant* to the case because the protective order only provided for "confidential" and "highly confidential" designations for *relevant* materials); *Sadofskyv v. Fiesta Prods., LLC*, 252 F.R.D. 143 at 153 (E.D.N.Y. 2008) (requestor failed to make an adequate showing the documents were relevant to his claim); *Gordon, Wolf, Cowen Co. v. Indep. Halvah & Candies, Inc.,* 9 F.R.D. 700 at 702 (S.D.N.Y. 1949) (no discussion of a protective order and no indication a protective order was in place for confidential information).

[7] In contrast, the cases cited by AbbVie where a court permitted redactions of board materials generally involve private individuals requesting the confidential board documents. *See Georgeandellis v. Holzer Clinic, Inc.,* No. 2:08-cv-626, 2010 WL 1839027 (S.D. Ohio May 4, 2010) (private individuals, and the court was already reviewing redactions for privilege); *Trollinger v. Tyson Foods, Inc.,* No. 4:02-cv-23, 2007 WL 951869 (E.D. Tenn. March 28, 2007) (private plaintiffs, and the court was already reviewing redactions for privilege); *Beauchem v. Rockford Prods. Corp.,* No. 01 C 50134, 2002 WL 1870050 (N.D. Ill. Aug. 13, 2002) (private individuals).

If the Court were to order production of the board materials, AbbVie requests that it be permitted to redact non-responsive information. Non-responsive "redaction of otherwise discoverable documents is the exception rather than the rule."[8] Here, the FTC is concerned about AbbVie exercising its own discretion to determine what information about AndroGel or other testosterone products is or is not relevant. This concern is firmly grounded in the FTC's experience in this case. First, as described above, AbbVie continues to advance unduly restrictive interpretations of "relevance" to justify its refusal to turn over the board materials. More disturbingly, AbbVie has a history of redacting as non-responsive information that was indisputably responsive and highly relevant. For example, on October 19, 2015, AbbVie produced ███████████████████████████████ redacting several paragraphs as "Nonresponsive." (Ex. A.)[9] On May 31, 2016 and in response to a letter from the FTC, AbbVie produced another version of this document, ████████████, with all redactions (privilege and relevance) removed. (Ex. B.) The unredacted version of this document showed that AbbVie had redacted as "Nonresponsive" information on ████████████

████████████████████████████████████:

████████████████████████████████████████

Information relating to the ██████████████████ is clearly relevant.

Nonetheless, if the Court determines that additional protection beyond the protective order is warranted for the board materials, the FTC does not object to AbbVie redacting detail

---

[8] *Beverage Distribs., Inc. v. Miller Brewing Co.*, No. 08-cv-827, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010).

[9] This document was deemed produced from the *Actavis* litigation. The FTC has objected to any redactions for responsiveness in documents produced in this matter.

pertaining only to non-testosterone products, provided the context of any non-redacted information is clear.[10] AbbVie should produce in unredacted form, however, everything in the board materials relating to any testosterone product, including AndroGel.

## Conclusion

For the reasons detailed above and in the FTC's opening brief, the Court should grant the FTC's motion to compel and order AbbVie to produce within ten days all non-privileged, non-work product board materials responsive to RFP No. 6, including any meeting minutes, agendas, board packets, presentations or other materials that discuss the marketing or sale of AndroGel from 2009 to the present, as well as any accompanying privilege log.


Dated: July 21, 2016                                    Respectfully submitted,

                                                        */s/ Patricia M. McDermott*
                                                        Patricia M. McDermott
                                                        Federal Trade Commission
                                                        600 Pennsylvania Avenue, N.W.
                                                        Washington, D.C. 20580
                                                        (202) 326-2569
                                                        pmcdermott@ftc.gov

                                                        *Counsel for Plaintiff*
                                                        *Federal Trade Commission*

---

[10] *See id.*, at *5 (finding that in cases where relevance redactions had been allowed, "the content of the redactions was readily apparent").

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FEDERAL TRADE COMMISSION,**

Plaintiff,

**v.**

**ABBVIE INC., et al.,**

Defendants.

**Case Number: 2:14-CV-5151-HB**

**Public Version**

### Declaration in Support of Plaintiff Federal Trade Commission's Reply Memorandum in Support of its Motion to Compel the AbbVie Defendants to Produce Board of Directors Documents Discussing the Marketing or Sale of AndroGel

I, Rebecca L. Egeland, declare as follows:

1.  I am an attorney licensed to practice in the District of Columbia representing the Federal Trade Commission ("FTC") in the above-captioned matter. I made my appearance in this case pursuant to Local Rule 83.5(e).

2.  I submit this declaration in support of the FTC's Reply Memorandum in Support of its Motion to Compel the AbbVie Defendants to Produce Board of Directors Documents Discussing the Marketing or Sale of AndroGel.

3.  Attached hereto as Exhibit A is a true and accurate copy of the document produced in this litigation and bearing the bates numbers ██████████████ through ████████ ██████████ .

4.  Attached hereto as Exhibit B is a true and accurate copy of the document produced in this litigation and bearing the bates numbers ██████████████████ through ████████ ████████ .

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 21, 2016

Rebecca L. Egeland

Filed Under Seal

# Exhibit A

Filed Under Seal

# Exhibit B