IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION       :            CIVIL ACTION
                                   :
           v.               :
                                   :
ABBVIE INC., et al.            :            NO. 14-5151

MEMORANDUM

Bartle, J.                                   August 25, 2016

      Before the court are two motions of the plaintiff Federal Trade Commission ("FTC") to compel the production of documents withheld or redacted during discovery by defendants AbbVie Inc., Abbott Laboratories, and Unimed Pharmaceuticals LLC (collectively "AbbVie").

      In addition to the litigation pending before this court, the parties are involved in litigation in the U.S. District Court for the Northern District of Georgia in FTC v. Actavis, Inc., 09-cv-955. AbbVie has produced privilege logs in connection with each action. Documents withheld by AbbVie with regard to the action in the Northern District of Georgia are recorded on the "Georgia privilege logs."[1] Documents withheld by

_____

1. Before the FTC filed its pending motions, AbbVie supplied the FTC with two privilege logs corresponding to the Georgia action. The FTC attached those privilege logs to its motion to compel production of documents on the Georgia privilege logs. In responding to that motion, AbbVie supplied the court with revised privilege logs purporting to add additional information and privilege claims. We reject AbbVie's belated attempt at amending the privilege logs. However, to the extent that AbbVie

AbbVie in relation to the action pending in this court are listed on the "Pennsylvania privilege log."  The FTC seeks thirty-three documents from AbbVie's Pennsylvania privilege log and forty-seven documents from its Georgia privilege log.[2] AbbVie asserts that these documents are protected by the attorney-client privilege and/or the work product doctrine. AbbVie has submitted these documents to the court for in camera review.

The FTC filed this action in September 2014 against the AbbVie defendants, Besins Healthcare, Inc. ("Besins"), and Teva Pharmaceuticals USA, Inc. ("Teva").  In Count I of the complaint, the FTC alleges that the AbbVie defendants and Besins filed sham patent infringement actions against Teva and Perrigo Company ("Perrigo") in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  The court previously dismissed Count II of the complaint, which asserted that AbbVie and Teva entered into an anticompetitive settlement of that patent litigation.

In January 2003, Unimed Pharmaceuticals, LLC ("Unimed") and Besins obtained U.S. Patent Number 6,503,894

---

has withdrawn claims of privilege in its amended logs, we will of course treat those claims as withdrawn.

2.  In its motions to compel, the FTC originally sought thirty-seven documents from the Pennsylvania privilege log and 250 documents from the Georgia privilege logs.  After the FTC filed its motions, the parties resolved the vast majority of these document disputes.

("the '894 patent") for the brand-name testosterone drug,
AndroGel.  Solvay Pharmaceuticals, Inc. ("Solvay") subsequently
acquired Unimed.  AbbVie's predecessor, Abbott Laboratories
("Abbott"),[3] later acquired Solvay in 2010.  In April 2011 and
October 2011, AbbVie and Besins filed patent infringement
lawsuits against Teva and Perrigo for allegedly violating the
'894 patent.  At the time, Teva and Perrigo were in the process
of seeking approval of their generic versions of AndroGel from
the Food and Drug Administration ("FDA").

        In our December 2015 Memorandum, we granted in part
and denied in part two motions of the FTC to compel AbbVie and
Besins to produce certain documents withheld or redacted during
discovery.  See FTC v. AbbVie, 2015 WL 8623076, at *1 (E.D. Pa.
Dec. 14, 2015).  We rely on the law and analysis set forth in
that Memorandum in addressing the pending motions.

                                I.

        We begin with Pennsylvania documents 711, 724, 726,
727, and 839, for which AbbVie asserts the attorney-client
privilege.  The attorney-client privilege protects against
discovery of:  "(1) a communication (2) made between privileged
persons (3) in confidence (4) for the purpose of obtaining or
providing legal assistance for the client."  See In re Teleglobe

_____

3.  AbbVie came into existence in January 2013, when Abbott
divided into two independent companies:  Abbott and AbbVie.

Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007).  "The party
asserting the attorney-client privilege 'bears the burden of
proving that it applies to the communication at issue.'"
Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P. ("SEPTA"),
254 F.R.D. 253, 259 (E.D. Pa. Dec. 9, 2008) (quoting Sampson v.
Sch. Dist. of Lancaster, 262 F.R.D. 469, 473 (E.D. Pa. Nov. 5,
2008)); Matter of Grand Jury Empanelled Feb. 14, 1978, 603 F.2d
469, 474 (3d Cir. 1979).

        According to AbbVie's privilege log, Pennsylvania
documents 711, 724, 726, 727, and 839 are handwritten notes
reflecting legal advice regarding the AndroGel patent
application.  Although the privilege log identifies Joseph
Mahoney ("Mahoney"), outside patent counsel for Solvay and
Besins, as the author of these documents, AbbVie's opposition
brief says that the documents were authored by Lana Knedlik
("Knedlik").  Knedlik was also outside patent counsel for Solvay
and Besins.  By declaration, Mahoney says that he "believe[s]
that the notes were written by Lana Knedlik."  Mahoney states,
in general terms, that Knedlik performed legal research and
analysis using information received from Solvay and Besins.  He
asserts that "[t]hese five documents appear to contain
information that came from Solvay or Besins in such
communications."  Knedlik and Mahoney did not share these notes
with their clients.

AbbVie has not met its burden to prove that these notes are protected by the attorney-client privilege.  The privilege applies to "an exchange of technical information necessary so that an [ ] employee c[an] secure legal services or legal advice" on behalf of a client corporation.  See Smithkline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 481 (E.D. Pa. Dec. 30, 2005).  Attorney notes which "clearly reflect conversations or other communications with clients, they are of course privileged."  See In re Gabapentin Patent Litig., 214 F.R.D. 178, 187 (D.N.J. 2003).  On the other hand, the privilege does not protect "the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."  See Hickman v. Taylor, 329 U.S. 495, 508 (1947).  The "attorney's notes and personal musings [which] do not constitute 'communications,' are not privileged, and must be produced." In re Gabapentin Patent Litig., 214 F.R.D. at 187.

At most Mahoney, by declaration, claims that because Knedlik relied on information received from her clients in performing her duties as their attorney, some client information might be contained in her notes.  Mahoney does not contend that Knedlik's notes are comprised solely of information obtained

-5-

from clients and nothing else.  Our in camera review of these
documents indicates that at least some portions of the notes
contain attorney musings rather than client information.  For
example, document 727 sets forth a short list of numbered items
beneath the underlined word "Joe."  We assume that "Joe" refers
to Joseph Mahoney.  Item number six in that list is entitled
"Literature research" and appears to summarize that research.
Likewise, document 839 contains a list of items, one of which
reads "2-3 pg summy [sic] of what it purports to cover."  These
notes were "prepared by counsel for [her] own use in prosecuting
[her] client's case."  See Hickman, 329 U.S. at 508.  Notes are
not privileged simply because some unidentified portions might
contain client information.  AbbVie has not carried its burden
to demonstrate that these documents are privileged.

                              II.

          For the next set of documents, AbbVie asserts that the
attorney-client privilege applies because the documents were
sent to an attorney for review at some point after they were
created.  These are Georgia documents 972, 973, 2974, 2981,
2982, 2987, 2989, 2995, 3001, 3002, 3040, 3041, 3101, and 3379
and Pennsylvania documents 1309, 1442, 1445, 1452, 1482, 1485,
1487, 1494, 1513, and 1732.  Only Pennsylvania document 1442 is
privileged.

                              -6-

The attorney-client privilege is recognized only as
necessary to achieve its purpose of encouraging full and frank
discussion between a client and its attorney.  See In re Chevron
Corp., 633 F.3d 153, 165 (3d Cir. 2011) (citing Fisher v. United
States, 425 U.S. 391, 403 (1976)).  It "protects only those
disclosures — necessary to obtain informed legal advice — which
might not have been made absent the privilege."  See
Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d
1414, 1423-24 (3d Cir. 1991) (quoting Fisher, 425 U.S. at 403).
The client will not be discouraged from disclosing documents to
its attorney that were already discoverable in the client's
files.  See Fisher, 425 U.S. at 403-04.  As such, the "attorney-
client privilege does not shield documents merely because they
were transferred to or routed through an attorney."  SEPTA, 254
F.R.D. at 259 (quoting Smithkline Beecham Corp., 232 F.R.D. at
478  (internal quotation marks omitted)).  Furthermore, "[t]o
the extent that purely factual material can be extracted from
privileged documents without divulging privileged
communications, such information is obtainable."  See id. at 258
(quoting Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.,
174 F.R.D. 609, 633 (M.D. Pa. 1997)).

The privilege log describes Georgia documents 972 and
973 as a "[s]preadsheet" and "[r]eport providing information for
the purpose of obtaining legal advice regarding AndroGel patent

-7-

application."  According to the privilege log, these documents
were sent by employee Ellen Cooper ("Cooper") to executive
Juliana Hardy ("Hardy").  Document 972 is dated March 25, 2010
and document 973 is dated January 4, 2010.  By declaration,
Hardy says that she asked Cooper to locate and send these
documents to her pursuant to a March 24, 2010 request by in-
house counsel Shannon Klinger and Stephan Bensiek "concerning a
Canadian patent application filed by Solvay."  AbbVie avers that
these documents are privileged because they were "collected and
compiled at the request of attorneys, so that the attorneys
could provide informed legal advice."  Yet, AbbVie concedes
"that other copies of the same documents, in the original
custodians' files, would not be privileged."  These documents
were created for some unspecified business purpose unrelated to
legal matters.  Nevertheless, AbbVie asserts that this "does not
matter" and that the privilege should apply because an employee
later sent those documents to counsel.

        We disagree.  Pre-existing, non-privileged documents
do not become privileged merely because they were later sent to
an attorney.  See SEPTA, 254 F.R.D. at 259.  Every document sent
to counsel in relation to a patent application is not
automatically deemed privileged.  AbbVie has not met its burden
to prove that these particular documents are privileged.  AbbVie
must produce Georgia documents 972 and 973 to the FTC.

The same is true for Georgia documents 2974, 2981, 2982, 2987, 2989, 2995, 3001, 3002, 3040, 3041, and 3101. AbbVie claims that these documents are protected by the attorney-client privilege because they contain or request legal advice concerning AndroGel promotional initiatives.  The presentations are dated August 2011 and entitled "AndroGel 1.62% Patient Transition Support: Evaluation of Key AndroGel 1.62% Acceleration Initiatives."  Business employee Chris Landreck ("Landreck") is the author of these documents.  The content largely varies between presentations, though some pages appear to be identical.  These documents were entirely withheld.

Although AbbVie contends that Vice President and in-house counsel Perry Siatis ("Siatis") and in-house counsel Joanne Lee ("Lee") and Jennifer Razor ("Razor") were "involved" with these presentations, Siatis does not address these presentations in his declaration.  AbbVie did not submit a declaration from Lee.  Razor states by declaration that "[t]hese documents are draft presentations concerning the AndroGel promotional initiatives that were sent to me for my legal review and analysis."  Razor says that she reviewed and edited the drafts, but she does not identify the portions of the document which contain her comments and notes, let alone her legal advice.  Neither Razor nor AbbVie explains why these presentations were created or the nature of Razor's legal

advice.  It is apparent from our <u>in camera</u> review that Landreck created these documents for some unspecified business purpose. Notably, one of the few identifiable comments on the presentations instructs Landreck to delete the statement "Prepared at the request of legal counsel" because "[t]his statement isn't accurate.  Please change to 'Privileged and Confidential.'"

These pre-existing, non-privileged presentations are not privileged simply because they were transmitted to an attorney.  See <u>SEPTA</u>, 254 F.R.D. at 259.  Even if attorneys added legal advice to the presentations, AbbVie has not identified that legal advice.  Moreover, having reviewed the documents <u>in camera</u>, we are skeptical whether any portion of those documents contains legal advice.  AbbVie must produce these documents.

We turn to Georgia document 3379, which AbbVie's privilege log identifies as a "[p]resentation providing information for the purpose of obtaining legal advice regarding AndroGel 1.62% acceleration tactics."  It is a two-page document with one redacted line.  The document is entitled "AndroGel 1.62% Patient Transition Support Tactical Update."  Once again, the privilege log states that the document was created by Landreck.  However, the privilege log does not identify any other person or attorney with regard to this document.  AbbVie

asserts that the redaction requests legal advice regarding a promotional initiative.  By declaration, Razor states that the redaction "recounts a request to me and other Abbott attorneys for legal advice concerning a promotional initiative that was being considered by Abbott."  AbbVie and Razor provide no further detail or information.  The redacted text states "[a]nalysis sent to GPO and Legal awaiting approval to produce additional pumps."  AbbVie has not explained the significance of "GPO."  This bare statement by a business employee that some business analysis was sent to "legal" and another unidentified entity in order to obtain some unidentified approval cannot be deemed a communication between an attorney and client for the purpose of obtaining legal advice.

Pennsylvania documents 1309, 1442, 1445, 1452, 1482, 1485, 1487, 1494, 1513, and 1732 concern AbbVie's discontinuation of its AndroGel 1% pump dispenser in 2013. Documents 1442 and 1485 are emails sent by non-attorney employees to other non-attorney employees.  In-house counsel Pearson Bownas ("Bownas") and Timothy Boarini ("Boarini") were copied on these emails.  In-house counsel Darrell Taylor ("Taylor") was also copied on the email in document 1485. Documents 1309, 1445, 1452, 1482, 1487, 1494, 1513, and 1732 are draft presentations that were sent to Bownas at some point after they were created.  Controller Lisa Wortsmann ("Wortsmann")

drafted all but three of these presentations.  Director Michael
Gautsch ("Gautsch") authored one presentation, and no author is
identified for the other two presentations.  The privilege log
indicates that Bownas received copies of all of the
presentations except documents 1494 and 1732.  Bownas is listed
as "Other Attorney" with respect to documents 1494 and 1732.

     In its opposition brief and the accompanying
declaration of Bownas, AbbVie avers that the presentations in
Pennsylvania documents 1309, 1445, 1452, 1482, 1487, 1494, 1513,
and 1732 are privileged because they were "transmitted to an
AbbVie in-house litigation attorney, Pearson Bownas, requesting
legal advice regarding a proposed plan to discontinue the
AndroGel 1% pump-dispenser."  However, AbbVie's opposition brief
and supporting declarations do not assert that these documents
were <u>prepared</u> for the purpose of obtaining legal advice.[4]  At
most, the brief and declarations state merely that these
documents were sent to Bownas after being created by "AbbVie
businesspeople."[5]  The decision to discontinue a product is
inherently a business decision.  The titles of two of the
withheld documents mention Executive Vice President of Global

---

4.  We note that most of the privilege log entries for these
presentations averred that the documents were "[d]raft
presentation[s] prepared at the request of AbbVie in-house
counsel Pearson Bownas."  AbbVie's opposition brief and Bownas's
declaration clearly have backed away from this assertion.

5.  Gautsch's declaration does not discuss that presentation.

Commercial Operations Carlos Alban ("Alban").  Two other titles refer to Chief Financial Officer William Chase ("Chase").  Specifically, those titles are:  "AndroGel 1% Pump Discontinuation Scenario – Carlos Review" and "AndroGel 1% Pump Discontinuation Scenario – Chase Review."  These documents appear to have been created specifically for business executives Alban and Chase.

Even if in-house counsel Bownas advised business employees on the pump discontinuation, this does not mean that all documents sent to him concerning the pump discontinuation are privileged.  Merely sending a non-privileged business document to an attorney does not transform the document into a privileged document.  See SEPTA, 254 F.R.D. at 259; SmithKline Beecham Corp., 232 F.R.D. at 477-78.  AbbVie has not identified any portions of Pennsylvania documents 1309, 1445, 1452, 1482, 1487, 1494, 1513, and 1732 which contain legal advice.[6]  As such, AbbVie has not met its burden to prove that the privilege applies.

The emails in documents 1442 and 1485 relate to these presentations.  Document 1485 contains an email that was sent by

---

6.  In addition, we note that in-house counsel has a "dual role" as business and legal advisor.  See Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 209 (E.D. Pa. 2008).  AbbVie has not provided any information to demonstrate that these documents concern legal rather than business advice.  See Kramer v. Raymond Corp., 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992).

director Frank Jaeger ("Jaeger") to controllers Wortsmann and
Donna O'Connor ("O'Connor").  In-house counsel Bownas, Taylor,
and Boarini are copied on the email.  The subject of the email
is "Carlos Presentation."  As explained above, "Carlos" refers
to Carlos Alban, Executive Vice President of Global Commercial
Operations.  Jaeger addressed his email to non-attorney
employees "Lisa and Donna."  By declaration, Bownas states that
the presentation in document 1482 was attached to this email.
He says that document 1487 is another version of that
presentation.

          Our in camera review of the email in document 1485
confirms that the presentations in documents 1482 and 1487 are
not protected by the attorney-client privilege.  In this email,
Jaeger stated that the presentation in document 1482 "included
the other slides that were part of our original extended deck to
help tell the story to Carlos."  In other words, at least some
portion of the presentations in documents 1482 and 1487 were
drafted for the express purpose of informing Executive Vice
President Alban.  According to the email in document 1485, the
remaining slides in documents 1482 and 1487 concern financial
forecasting and flow-through.  This email and the related
presentations undoubtedly relate to business matters.  AbbVie
has not convincingly explained how we could construe the email
in 1485 and the related presentations as requests for legal

-14-

advice.  AbbVie has not shown that the email in document 1485 is privileged.

On the other hand, the email in Pennsylvania document 1442 is protected by the attorney-client privilege.  It is a communication by director Bonnie Shaul to director Jaeger and several others, including in-house counsel Bownas, Boarini, and Taylor, for the purpose of obtaining legal advice.  The FTC has not challenged AbbVie's privilege claim over the analysis that was attached to this email.

III.

In its privilege log, AbbVie asserts the attorney-client privilege for Pennsylvania documents 1259, 1260, and 1261 and Georgia documents 2913, 2919, 2920, 2921, 2922, 2926, 2934, and 4605.  It also claims the work product doctrine for a subset of those documents:  Pennsylvania documents 1259, 1260, and 1261 and Georgia documents 2919, 2921, 2926, and 2934.[7]

The work product doctrine precludes discovery of documents and other tangible items which were (1) created in reasonable anticipation of litigation by or for a party and (2) prepared primarily for the purpose of litigation.  See Fed. R. Civ. P. 26(b)(3); Hickman, 329 U.S. at 510-11.  The doctrine

---

7.  In the revised Georgia privilege log attached to its opposition brief, AbbVie attempts to add additional work product claims for Georgia documents 2913, 2920, 2922, and 4605.  As explained above, AbbVie cannot add these claims at this late stage.

"shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661–62 (3d Cir. 2003) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).  It protects not only materials created by the attorney, but also those created with "the assistance of investigators and other agents." See Nobles, 422 U.S. at 238.

For the work product doctrine to apply, the party asserting the doctrine must establish that the document was created in reasonable anticipation of litigation. See Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982). The relevant inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)).  We consider the subjective state of mind of the author and whether it was objectively reasonable to believe that there was some litigation on the horizon. See In re Grand Jury Subpoena, 745 F.3d 681, 694 (3d Cir. 2014).  However, "[e]ven where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work product privilege still depends primarily on the reason or

purpose for the document production." <u>In re Gabapentin Patent</u>
<u>Litig.</u>, 214 F.R.D. at 184.  The doctrine does not apply to
"[m]aterials assembled in the ordinary course of business, or
pursuant to public requirements unrelated to litigation, or for
other nonlitigation purposes" even if those materials are later
useful in litigation.  <u>See</u> Fed. R. Civ. P. 26(b)(3) advisory
committee's note to 1970 amendment.

          AbbVie asserts that these documents are forecasting
presentations which were prepared at the request of Vice
President and in-house counsel Siatis for use in the Teva and
Perrigo patent litigations.  The documents are dated August 2011
and were entirely withheld from production.  AbbVie notes that
in our December 2015 Memorandum, we found that eighteen
spreadsheet documents were protected by the work product
doctrine.  There, we relied on sworn declarations by Siatis and
O'Connor which stated that O'Connor had prepared the
spreadsheets at Siatis's request for the "specific and sole
purpose" of allowing Siatis to analyze that information for the
purpose of litigation.  Here, AbbVie argues that the disputed
"forecasting presentations merely summarize in chart, graph, and
table formats the information in the spreadsheets, for Mr.
Siatis's use."

          However, these presentations were sent by employee
Maureen Snider to Vice President Jeffrey Stewart ("Stewart") on

-17-

the same day that they were created.  The subject of the email
transmitting these presentations to Stewart reads "AndroGel
Summary and AndroGel Scenarios Prepared by Todd Benzschawel."
Todd Benzschawel ("Benzschawel") was a director.  Stewart then
forwarded these presentations to Benzschawel and then-Vice
President of Sales and Marketing James Hynd ("Hynd") to request
that they "put the forecast slides into graphical format as was
my request" for presentation to Chief Executive Officer Rick
Gonzales and Executive Vice President of Global Commercial
Operations Carlos Alban.  (Emphasis added).

        We are thus faced with after-the-fact testimony and
argument by an interested party that is contradicted by
contemporaneous evidence.  AbbVie and Siatis assert that the
presentations were created for legal purposes, but they do not
explain Vice President Stewart's involvement or apparent request
that these documents be created.  The work product doctrine does
not apply to "[m]aterials assembled in the ordinary course of
business . . . or for other nonlitigation purposes" even if
those materials are useful in litigation.  See Fed. R. Civ. P.
26(b)(3) advisory committee's note to 1970 amendment; Martin,
983 F.2d at 1260.  AbbVie has not carried its burden to prove
that these documents were prepared in anticipation of
litigation.  Likewise, AbbVie has not shown that these

-18-

presentations prepared by business employees for a business purpose are privileged attorney-client communications.

IV.

In resolving the remaining document disputes, we must determine whether each document contains privileged legal or unprivileged business advice.  The relevant documents are Pennsylvania documents 98, 538, 539, 600, 656, 921, 1071, 1178, 1739, 2103, 2230, 2412, 2448, 2488, and 2489 and Georgia documents 968, 1033, 1058, 1321, 2835, 2838, 2849, 2851, 2852, 2889, 2890, 2932, 2933, 2967, 3241, 5032, 6093, 6984, 8230, 8258, 8274, 8344, 8347, 8679, and 9946.[8]

"[W]here a communication contains both legal and business advice, the attorney-client privilege will apply only if the primary purpose of the communication was to aid in the provision of legal advice."  Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co., 1997 WL 33768546, at *2 (D.N.J. Aug. 12, 1997). Thus, "in order to successfully assert the attorney-client privilege, the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'"  SEPTA, 254 F.R.D. at 259 (quoting AAMCO Transmissions, Inc. v. Marino, 1991 WL 193502, at

---

8.  Although AbbVie originally claimed that the work product doctrine applied to Georgia documents 1033, 2849, and 8230, it withdrew these claims when it filed a revised privilege log attached to its opposition brief.

*3 (E.D. Pa. Sept. 24, 1991)).  "Because legal advice in the corporate community is often intertwined with and difficult to distinguish from business advice, the inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal."  See In re Bristol-Myers Squibb Sec. Litig., 2003 WL 25962198, at *5 (D.N.J. June 25, 2003) (internal quotation marks omitted).

This is particularly necessary where in-house counsel is the source of the advice because "[i]n-house counsel performs a dual role of legal advisor and business advisor."  See Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 209 (E.D. Pa. 2008). For us to find that in-house counsel was acting as a legal advisor, "the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'"  See Kramer v. Raymond Corp., 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (quoting AAMCO Transmissions, Inc., 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991)).  "In order to meet this standard, and to prevent corporate attorneys from abusing the privilege, the claimant should demonstrate 'that the communication would not have been made but for the client's need for legal advice or services.'"  La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 306 (D.N.J. 2008) (quoting Leonen v. Johns-Manville, 135 F.R.D. 94, 99 (D.N.J. 1990)).

-20-

A company's "decision on how to market or advertise a product, or what conditions of sale should apply" is not privileged because "[a]lthough it is based on legal advice, the policy is primarily a business policy." See In re Domestic Drywall Antitrust Regulation, 2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014). Likewise, in our December 2015 Memorandum, we explained that "[e]ven though in-house counsel may have been consulted to help determine the market entry date for [anticipated generic] competitors, this does not mean that any document using that date must be privileged." See FTC v. AbbVie, 2015 WL 8623076, at *11 (E.D. Pa. Dec. 14, 2015).

AbbVie asserts the attorney-client privilege for Georgia documents 2849 and 9946. These documents contain identical typewritten text but different handwritten notes. By declaration, in-house counsel Razor explained that she prepared the typewritten text in these documents and distributed copies of the document to AbbVie employees at a discussion that she led in August 2011. At that meeting, the employees made handwritten notes on Razor's document. Then-manager Gautsch made handwritten notes on document 2849 and employee Kay Murray made the handwritten notes on document 9946. These documents memorialize legal advice that Razor provided to the employees. As such, they are privileged attorney-client communications.

Georgia documents 2889 and 2890 are identical copies of an email chain.  AbbVie redacted the body of an email sent by in-house counsel Razor in response to director Jaeger's unredacted email.  In her email, Razor conveys legal advice. Although the need for this legal advice arose in the context of a business decision, the redacted text nonetheless contains a privileged attorney-client communication.

The privilege log describes Georgia document 2967 as an "Email Chain requesting legal advice regarding marketing plams [sic]."  AbbVie redacted portions of an email sent by then-manager Gautsch and the entire response by director Melissa Shields ("Shields").  Vice President and in-house counsel Siatis and in-house counsel Lee and Razor were copied on Gautsch's email wherein Gautsch asked Shields to supply information about the timing of a "WAC price increase" and "Differential Contracting" in redacted text.  He stated that guidance is needed from legal before taking action.  In responding to Gautsch, Shields said that she did not have the requested information and clarified her responsibilities with regard to the topics discussed.  Shields copied Razor and several non-attorneys.  AbbVie has not explained the "WAC price increase," "Differential contracting," or the nature of the guidance sought from legal.  Thus, AbbVie has not met its burden to "clearly demonstrate that the communication in question was made for the

express purpose of securing legal not business advice.'" See
SEPTA, 254 F.R.D. at 259 (quoting AAMCO Transmissions, Inc.,
1991 WL 193502, at *3.

          The privilege log entry for Pennsylvania document 2448
reads:  "[e]mail chain requesting legal advice, providing
information for the purpose of obtaining legal advice and
reflecting and memorializing legal advice from Abbott in-house
counsel Andrew Cohen regarding negotiations with Solvay and
terms of draft Solvay agreements."  The subject is "Chocolate
Initial Co-Promotion Ideas for Inclusion."  The email chain
begins with a message sent by then-manager Marianne Sutcliffe
("Sutcliffe") to in-house counsel Andrew Cohen and Hubert Allen.
Employees Richard Marshak ("Marshak"), Kevin O'Rourke
("O'Rourke"), and Anna Hudak are copied on that email.  Most of
that email is redacted.  The next day, manager Marshak replied
to everyone on that email.  The body of his email is redacted.
Sutcliffe's subsequent reply was produced to the FTC without
redactions.  The redacted portions of this email chain
memorialize communications between in-house counsel and
employees which were made for the purpose of providing and
receiving legal advice.  As such, document 2448 is protected by
the attorney-client privilege and need not be produced.

          Georgia document 6093 is protected by the attorney-
client privilege because it was prepared by controller Wortsmann

at the request of counsel Sulaiman Qazi ("Qazi") and other in-
house counsel using "various assumptions and parameters that
[Qazi] and the other attorneys provided to her" so that counsel
could provide legal advice regarding the "amended license and
supply agreement being negotiated" with Besins for AndroGel.

AbbVie asserts the attorney-client privilege for
Georgia documents 2835, 2838, 2851, and 2852.  It also argues
that the work product doctrine covers Georgia documents 2835 and
2852.  All of these documents contain identical email chains
consisting of two emails.  Document 2851 is also marked with
handwritten notes.  Most of the text in the first email is
redacted.  That redacted email was sent by Vice President Hynd
to Vice President and in-house counsel Siatis and in-house
counsel Razor and Lara Levitan.  Jeffrey Stewart, Frank Jaegar,
Kevin Dolan, Kay Murray, Michele Cardell, and Maureen Snider are
also copied on the email.  In the body of his email, Hynd
addressed his message to the "Legal Team."  The email contains
privileged communications between attorney and client for the
purpose of obtaining legal advice.

AbbVie argues that both the attorney-client privilege
and work product doctrine apply to the redacted email in
Pennsylvania document 2230.  The unredacted subject reads:
"Testosterone Pricing as of 3/18/15."  The redacted email was
sent by director Gautsch to employee Danielle Niday with a copy

-24-

to Katherine Manchester Flores.  By declaration, Gautsch states that the redacted text contains a request for information made by in-house counsel Adam Chiss, paralegal Shannon Bremer, and outside litigation counsel at Jones Day for use in pending patent infringement litigation.  This email is a privileged communication.

Georgia document 3241 is a chain of three emails, all of which are dated September 21, 2011.  The first email was sent by in-house counsel Johanna Corbin ("Corbin") to executives and managers for the purpose of providing legal advice about anticipated patent infringement litigation.  It is thus protected by the attorney-client privilege and work product doctrine.  The two emails following Corbin's email are also privileged communications made by non-attorneys for the purpose of conveying Corbin's legal advice.

Pennsylvania document 98 is an email chain consisting of two emails, one of which is redacted.  AbbVie asserts both the attorney-client privilege and the work product doctrine. Both emails were sent by Vice President Hynd to non-attorney employees, including Executive Vice President of Global Commercial Operations Alban.  Vice President and in-house counsel Siatis is copied on and mentioned in the redacted email, but he does not address this document in his declaration. AbbVie has not explained the significance of "AndroGel

-25-

scenarios," which is both the subject of the email and the topic discussed in the body of the email.  Instead, AbbVie concludes that document "98 contains a September 30, 2011 email from Mr. Hynd to AbbVie executives and Mr. Siatis which recounts legal advice and requests additional legal advice from Mr. Siatis concerning the Teva patent litigation."  AbbVie has not explained how the redacted text connects to the Teva patent litigation.  We cannot, on the basis of the information before us, find that AbbVie has carried its burden to establish that the attorney-client privilege or work product doctrine apply to this email.

Georgia document 6984 is an email sent by director Bonnie Shaul to in-house counsel Taylor and Boarini and non-attorneys Frank Jaeger, Lisa Robertson, Dana Riess, Michael Staff, John Powers, Joseph Serio, Joesph Nemuras, Joseph Miller, Keith Nowakowski, Elizabeth Lock, Jeff Kunkel, and Lisa Wortsmann.  AbbVie has not shown that the redacted text under the number "4" is privileged.  Rather than convey legal advice, this redacted text states that some unidentified person or entity should obtain clarification about rebate differentials for some unidentified reason.  All other redacted text in this email memorializes legal advice provided by the attorneys at a recent meeting.  The legal nature of that advice is apparent in

reading the email.  This portion of document 6984 is protected
by the attorney-client privilege.

Pennsylvania documents 538 and 539 are entitled
"Position Statement Androgen Replacement for Male Hypogonadism."
They are dated April 30, 2002 and December 21, 2001,
respectively, and marked "DRAFT."  They are each approximately
thirty pages long, but AbbVie has redacted only a handful of
sentences in each document.  The privilege log describes these
documents as "[d]raft report[s] reflecting and memorializing
legal advice from Solvay outside counsel Joseph Mahoney
regarding intellectual property and patent review and analysis
of multiple androgen products and markets."  The log indicates
that the documents were authored by "Johnannwille, B."  Mahoney
is listed in a column called "Other Attorney."  It is unclear
who author "Johnannwille, B" is or to what extent Mahoney or any
another attorney was involved in this document.

AbbVie avers that the challenged redactions are
privileged because they contain legal advice that arose in the
context of a business decision.  We disagree.  The redactions
concern business strategy.  For example, on page 6 of document
538, the redacted text is in a section titled "Generic Strategy
(ANDA)."  As is evident from the surrounding unredacted text,
the redaction concerns AbbVie's marketing strategy in light of
possible competition for AndroGel.  Aside from making vague and

-27-

conclusory assertions about the nature of the documents and the
application of privilege protections, AbbVie has not supplied
any information that would allow us to find that the redacted
text is privileged.  Thus, we cannot say that AbbVie has met its
burden to prove that the attorney-client privilege applies.

Pennsylvania documents 656,[9] 1739, and 2103 and Georgia
documents 8258 and 8274 are business planning documents that
concern a "LRP Key Call."  "LRP" refers to AbbVie's long range
business planning for AndroGel.  The redacted text refers to in-
house counsel Corbin by name.  However, to the extent that
Corbin furnished or AbbVie sought advice, that appears to have
been business advice for the business purpose of creating a long
range plan for AndroGel.  AbbVie has not even attempted to
explain how Corbin's apparent business advice about AndroGel
exclusivity could be construed as legal in nature.  This is
insufficient to meet its burden.  When AbbVie relies on its in-
house counsel to render business advice for a business purpose,
the attorney-client privilege does not apply.

AbbVie has not carried its burden to prove that
Pennsylvania documents 921, 1071, or 2412 are privileged.  The
redactions in these documents concern AndroGel exclusivity and
generic entry. These documents were not drafted by, sent to, or

9.  "Laura S." is mentioned in document 656, but AbbVie has not
explained who she is or the extent of her involvement.

-28-

received by any attorneys.  Yet, according to AbbVie, the
redactions contain Vice President and in-house counsel Siatis's
advice about the legal risks of a business acquisition.  The
attorney-client privilege applies only if Siatis was acting as a
legal advisor, not a business advisor, in providing this
information.  AbbVie has not "clearly demonstrate[d] that the
communication in question was made for the express purpose of
securing legal not business advice."  See Kramer, 1992 WL
122856, at *1 (quoting AAMCO Transmissions, Inc., 1991 WL
193502, at *3).  It has provided no supporting information from
which we could find that Siatis gave legal advice.  In fact,
Siatis does not even address these documents in his declaration.

       As for the email in Georgia document 1321, Hynd
proclaims that the redacted text recounts legal advice received
from in-house counsel.  He says that this advice conveys the
legal implications of a draft report on AndroGel.  He does not
supply any information about the draft report or the nature of
the legal advice.  He also does not direct us to a copy of the
draft report.  The email discusses a strategic business plan for
AndroGel "from a compliance perspective."  AbbVie does not
explain what this means.  AbbVie has not demonstrated that this
email was written for the purpose of conveying legal rather than
business advice.

AbbVie also has not put into context the redacted statement made by Vice President Hynd in the email in Georgia document 5032.  By declaration, Hynd states that the redacted portion of the email contains legal advice on AndroGel pricing. Without additional information, we cannot conclude that the redacted text, which conveys only that Hynd and in-house counsel Qazi are "aligned," is privileged.  In-house counsel and a corporate executive may be "aligned" on business or legal matters related to AndroGel pricing.  AbbVie has once again failed to prove that the privilege applies.

Georgia document 1033 concerns Axiron, "an experimental transdermal male testosterone replacement therapy . . . for the treatment of low testosterone in men (hypogonadism)."  The document was drafted by executive Hardy and sent to non-attorney employees.  Hardy does not discuss this document in her declaration, and the privilege log does not identify any attorney in reference to the document.  Outside counsel Mahoney says that "the redacted portions of this document contain legal advice and analysis that I and others at Mayer Brown provided to Solvay concerning the exclusive rights, including patent rights, covering a drug called Axiron." However, this document is clearly directed to market, competition, and other business considerations.  Once again,

-30-

AbbVie has not supplied the context necessary to find that redacted text in this business-oriented document is privileged.

Similar versions of the same email chain appear in Pennsylvania document 1178 and Georgia document 1058.  AbbVie once again has not provided sufficient information for us to find that the privilege applies to these documents.  Hardy's declaration concludes that these communications contain requests for legal advice without providing context to substantiate her contention.  As far as we can tell from our own in camera examination of this email, in-house counsel supplied the redacted information for a predominately business, not legal, purpose.  In unredacted text in the email chain, controller O'Rourke wrote that "John Schilling is putting together this information across PPD."  AbbVie has not explained the significance of "PPD," who John Schilling ("Schilling") is, or the reason that he sought this information.  O'Rourke stated that the information would be furnished to his "[f]inance colleagues who are compiling this information."  It is apparent that Hardy provided business advice to O'Rourke, Schilling, and his finance colleagues for business purposes.  The privilege does not apply.

The same is true of Georgia documents 2932, 2933, 8230, 8344, 8347, and 8679.  AbbVie asserts that these documents contain or recount legal advice from in-house counsel concerning

patent and other exclusivity rights.  First, documents 2932 and
2933 contain identical email chains wherein employee James
Henricks asked then-manager Gautsch to supply patent expiration
dates for "some FAQ's for the potential sell-in of a AndroGel
retail share agreement."  Gautsch asked his supervisor, director
Jaeger, to send this information, and Jaeger forwarded his
request to in-house counsel Lee.  Lee asked Siatis to answer the
question and he did.  Second, in documents 8230 and 8679,
controllers Wortsmann and David Purdue compiled the "[loss of
exclusivity] dates we are currently using for [long range
planning] purposes" for AndroGel and sought "guidance on what to
assume for [loss of exclusivity] dates for financial purposes
only" and "guidance on the 2014 [long range planning]."  Third,
documents 8344 and 8347 are June 20, 2013 presentations titled
"Men's Health Long-Term Strategy."  With regard to all of these
documents, aside from making broad and conclusory statements,
AbbVie has not explained the legal nature of these business-
oriented documents.  Having reviewed these documents in camera,
we find that the redactions contain business not legal advice.

        AbbVie argues that Georgia document 968 and
Pennsylvania documents 600, 2488, and 2489 concern its FDA
citizen petition.  The Pennsylvania documents were produced with
redactions and the Georgia document was withheld.  In April

2010, AbbVie filed citizen petitions with the FDA concerning generic competitors to AndroGel.

Georgia document 968 is a draft citizen petition that was prepared by in-house counsel Steven Gersten in March 2010, one month before Abbott submitted its final citizen petition to the FDA. Preliminary "[d]rafts of documents prepared by counsel . . . are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." See SEPTA, 254 F.R.D. at 258. This document is protected by the attorney-client privilege.

Pennsylvania document 600 is an email chain dated July 24, 2014. The first email was sent by Vice President Hynd, to in-house counsel Neal Parker and Vice President and in-house counsel Siatis. Morry Smulevitz received a copy of this email. AbbVie has not told the court who Morry Smulevitz is. The subject is "CP is public." "CP" refers to the citizen petition. In redacted text, Hynd stated that "[w]e may receive inquiries and would like your thoughts on basic talking points." Siatis responded to Hynd with "some thoughts on internal talking points" and included "Dave Freundel from Public Affairs for his comments/thoughts." After receiving Siatis's email, Hynd forwarded that email to Lawrence J. Peepo and Elizabeth A. Shea. Peepo was the Vice President of Investor Relations. Hynd's

-33-

unredacted email says "[s]ee below talking points in case you receive questions during analyst call" and "Perrigo has issued a press release."

The FTC has argued that "the unredacted portion of this email demonstrates that the redacted information was to be shared with analysts on a public earnings call and was not to remain confidential within the attorney-client relationship, which also renders the communication not privileged." Yet, in its opposition brief, AbbVie does not address the context of the email. Rather, Hynd's declaration and AbbVie's brief simply conclude that the email chain requests and contains legal advice concerning the citizen petitions. Siatis does not mention this document in his declaration. After reviewing this document <u>in camera</u>, we find that Hynd requested talking points from Siatis so that Peepo and others at AbbVie could relay that information to AbbVie's investors and others for a business purpose. AbbVie has not carried its burden to demonstrate that this email chain is privileged.

AbbVie redacted portions of two email chains in Pennsylvania documents 2488 and 2489. AbbVie claims that both email chains concern its citizen petition and intellectual property. By declaration, director Sutcliffe states that the redacted text contains and requests legal advice from Siatis. Siatis does not address either document in his declaration.

-34-

Document 2488 is a chain of emails between Siatis and Sutcliffe, all of which were sent on March 18, 2010. Then, in an unredacted email, Sutcliffe forwarded these emails to O'Rourke and asked "Now what? I'm going to raise in the LRP discussion today. We may have to leave as a key +/- for UPD and LRP right now. Don't forward." "LRP" refers to AbbVie's long range business plans. AbbVie has not explained the meaning of "UPD." Document 2489 contains only two emails, one sent by Sutcliffe and the other sent by business executive Hardy. Hardy's email is not redacted, but several lines in Sutcliffe's email are redacted. This redacted text also refers to "the UPD process" and "LRP." The redacted text in both documents 2488 and 2489 relays Laura Schumacher's position on changing generic assumptions. But AbbVie has not explained who Laura Schumacher is. AbbVie also has not provided any context for us to understand the legal nature of the redacted content. AbbVie has not met its burden to prove that these documents are protected by the attorney-client privilege.