# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

ABBVIE INC., et al.,

      Defendants.

Case Number: **2:14-CV-5151-HB**

**PUBLIC VERSION**

## PLAINTIFF FEDERAL TRADE COMMISSION'S
## PRE-TRIAL MEMORANDUM

Daniel S. Bradley
Rebecca L. Egeland
Garth Huston
Heather M. Johnson
Hannah Lamb
Thomas D. Mays
Patricia M. McDermott
Markus H. Meier
Kara L. Monahan
Peter J. Taylor
Matthew B. Weprin

*Attorneys for Plaintiff*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2569
pmcdermott@ftc.gov

**TABLE OF CONTENTS**

I.   Brief Statement of Nature of the Action and Basis for Jurisdiction ........................................1

II.  Brief Statement of Facts ...........................................................................................................3

     A.   Defendants' abuse of the government process to delay generic AndroGel 1%
          entry ................................................................................................................................3

          1.   The lucrative AndroGel franchise ...........................................................................3

          2.   The threat of generic entry and Defendants' strong incentives to delay
               such competition ......................................................................................................4

          3.   Despite strong financial incentives to sue Perrigo in 2009, Defendants
               concluded there was an insufficient basis to do so .................................................5

          4.   Following the decision not to sue Perrigo, Defendants expected near-term
               generic AndroGel 1% entry .....................................................................................7

          5.   With no basis to sue Perrigo for patent infringement in 2009, Defendants
               pursued other avenues to extend branded AndroGel exclusivity ...........................8

          6.   Defendants filed an objectively baseless infringement lawsuit against Teva
               to trigger the automatic 30-month stay of FDA approval of Teva's product .........9

          7.   With a second chance at a 30-month stay, Defendants filed an objectively
               baseless infringement lawsuit against Perrigo in 2011 ........................................11

          8.   Defendants maintained the objectively baseless lawsuits and secured
               settlements to thwart generic competition ............................................................12

     B.   Defendants' AndroGel monopoly ..................................................................................13

          1.   Generic versions of AndroGel 1% posed a unique competitive threat to
               AndroGel ................................................................................................................13

          2.   The Hypothetical Monopolist Test conducted by Professor Shapiro
               confirms that AndroGel and its generic counterparts comprise a distinct
               relevant market ......................................................................................................14

          3.   Injections were not a close competitor to AndroGel during the relevant
               period .....................................................................................................................14

          4.   AndroGel's market shares demonstrate the existence of monopoly power ..........16

III. Relief Sought ...........................................................................................................................17

     A.   Injunction to prevent similar conduct ...........................................................................18

i

B.     Injunction to restore competitive market conditions ........................................................20

C.     Monetary equitable relief.........................................................................................21

**IV.    Significant Legal Issues and Other Appropriate Matters.........................................25**

A.     Law of the case .........................................................................................................25

B.     The second prong of *PRE* asks whether defendants intended to interfere with competitors' business relationships ..............................................................................26

C.     Monopoly power........................................................................................................30

     1.     Direct and indirect evidence may prove monopoly power....................................31

     2.     Economic substitution is the touchstone of the indirect evidence inquiry ...........32

     3.     Defendants possessed monopoly power during the relevant period.....................35

D.     Prohibition on the use of privilege claims as both a shield and a sword ...........................36

E.     Specific admissibility and evidentiary issues likely to arise ............................................40

     1.     Corporate predecessor's statements are party admissions....................................40

     2.     Statements by paid consultants acting as party's agent may constitute a party admission .................................................................................................42

     3.     Statements by Defendants' lawyers as their agent may constitute a party admission ...........................................................................................................43

F.     Trial procedure issues ................................................................................................44

     1.     Availability of Defendants' witnesses to testify in the FTC's case-in-chief .........44

     2.     Designation of witnesses as adverse to the FTC ................................................45

     3.     Moving exhibits into evidence............................................................................46

     4.     Schedule for closing arguments..........................................................................47

**V.    List of Witnesses and Deposition Designations .........................................................47**

**VI.    Schedule of Exhibits ................................................................................................47**

**VII.    Estimate of Trial Length ..........................................................................................47**

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. Mukasey*,
534 F.3d 181 (3d Cir. 2008) ...............................................................................25

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
310 F. Supp. 2d 638 (D. Del. 2004) .....................................................................37

*Babyage.com, Inc. v. Toys "R" Us, Inc.*,
558 F. Supp. 2d 575 (E.D. Pa. 2008) ....................................................................34

*Bayer AG v. Housey Pharm., Inc.*,
No. 01-148, 2002 WL 31433303 (D. Del. June 20, 2002) ....................................37

*Beck v. Haik*,
377 F.3d 624 (6th Cir. 2004), *overruled on other grounds by*
*Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) ...............................................43

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ...........................................................................36, 38

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007 ............................................................................30, 31

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ..............................................................................................32

*Buchwald v. Renco Grp., Inc.*,
No. 13-CV-7948, 2014 WL 4207113 (S.D.N.Y. Aug. 25, 2014) ........................44

*CGC Holding Co., LLC v. Hutchens*,
No. 11-CV-01012, 2016 WL 6778853 (D. Colo. Nov. 16, 2016)........................44

*Columbia Pictures Television Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001) ..............................................................................37

*Condus v. Howard Sav. Bank*,
986 F. Supp. 914 (D.N.J. 1997).............................................................................42

*Eastman Kodak v. Image Tech. Servs, Inc.*,
504 U.S 451 (1992) ................................................................................................35

*Engineered Prods. Co. v. Donaldson Co., Inc.*,
313 F. Supp. 2d 951 (N.D. Iowa 2004) .................................................................37

*Fehr v. SUS-Q Cyber Charter Sch.*,
No. 4:13-CV-01871, 2015 WL 6166627 (M.D. Pa. Oct. 20, 2015)......................46

*Ford Motor Co. v. United States*,
405 U.S. 562 (1972) ..............................................................................................20

*FTC v. Actavis*,
  133 S. Ct. 2223 (2013) ................................................................................31

*FTC v. Advocate Health Care Network*,
  841 F.3d 460 (7th Cir. 2016) .......................................................................33

*FTC v. Amy Travel Serv., Inc.*,
  875 F.2d 564 (7th Cir. 1989), *cert. denied*, 493 U.S. 954 (1989) .................22

*FTC v. Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011) ........................................................................22

*FTC v. Cephalon, Inc.*,
  100 F. Supp. 3d 433 (E.D. Pa. 2015) ...........................................................22

*FTC v. Commerce Planet, Inc.*,
  815 F.3d 593 (9th Cir. 2016) .......................................................................23

*FTC v. Direct Mktg. Concepts, Inc.*,
  624 F.3d 1 (1st Cir. 2010) ...........................................................................22

*FTC v. E.M.A. Nationwide, Inc.*,
  767 F.3d 611 (6th Cir. 2014) .......................................................................23

*FTC v. Freecom Commc'ns, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ...................................................................22

*FTC v. Gem Merch. Corp.*,
  87 F.3d 466 (11th Cir. 1996) .......................................................................22

*FTC v. Ind. Fed'n of Dentists*,
  476 U.S. 447 (1986) ....................................................................................31

*FTC v. Ivy Capital, Inc.*,
  No. 2:11-CV-283, 2013 WL 1224613 (D. Nev. Mar. 26, 2013), *aff'd in part,
  vacated in part, remanded,* 616 F. App'x 360 (9th Cir. 2015)......................23

*FTC v. J. William Enters., LLC*,
  No. 16-cv-2123, 2017 WL 4776669 (M.D. Fla. October 23, 2017) ................22

*FTC v. Lundbeck, Inc.*,
  650 F.3d 1236 (8th Cir. 2011) .....................................................................33

*FTC v. Magazine Sols.*,
  432 F. App'x. 155 (3d Cir. 2011) .................................................................22

*FTC v. Mylan Labs., Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999)..................................................................22

*FTC v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) .......................................................................22

*FTC v. Penn State Hershey Med. Ctr.*,
 838 F.3d 327 (3d Cir. 2016) ...................................................33, 34

*FTC v. Ross*,
 743 F.3d 886 (4th Cir. 2014) ...........................................................22

*FTC v. Security Rare Coin & Bullion Corp.*,
 931 F.2d 1312 (8th Cir. 1991) .........................................................22

*FTC v. Sw. Sunsites, Inc.*,
 665 F.2d 711 (5th Cir. 1982) ...........................................................22

*FTC v. Sysco Corp.*,
 113 F. Supp. 3d 1 (D.D.C. 2015) .....................................................34

*FTC v. Wash. Data Res., Inc.*,
 704 F.3d 1323 (11th Cir. 2013) .......................................................23

*Gerhart v. Henry Disston & Sons*,
 290 F.2d 778 (3d Cir. 1961) ............................................................44

*Glenmede Trust Co. v. Thompson*,
 56 F.3d 476 (3d Cir. 1995) ..............................................................39

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
 423 F.3d 374 (3d Cir. 2005) ............................................................30

*Hoffman-La Roche Ltd. v. Empagram S.A.*,
 542 U.S. 155 (2004) ........................................................................18

*In re Brand Name Prescription Drugs Antitrust Litig.*,
 186 F.3d 781 (7th Cir. 1999) ...........................................................31

*In re Buspirone Patent Litig.*,
 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ...............................26, 28, 29

*In re Cardizem CD Antitrust Litig.*,
 105 F. Supp. 2d 618, 632, 643-44 (E.D. Mich. 2000) ....................29

*In re Flonase Antitrust Litig.*,
 795 F. Supp. 2d 300 (E.D. Pa. 2011) ...............................................26

*In re Nat'l Credit Mgmt. Gp., LLC*,
 21 F. Supp. 2d 424 (D.N.J. 1998) ....................................................22

*In re Neurontin Antitrust Litig.*,
 No. 02-1390, 2009 WL 2751029 (D.N.J. Aug. 28, 2009) ................28

*In re Pharmacy Benefit Managers Antitrust Litig.*,
 582 F.3d 432 (3d Cir. 2009) ............................................................25

*In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*,
 64 F. Supp. 3d 665 (E.D. Pa. 2014) .........................................28, 31

*In re Terazosin Hydrochloride Antitrust Litig.*,
  335 F. Supp. 2d 1336 (S.D. Fla. 2004)................................................29

*Int'l Salt Co. v. United States*,
  332 U.S. 392 (1947), *abrogated on other grounds by*
  *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006)................17

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
  No. 05-CV-633, 2009 WL 3415689 (S.D. Cal. Oct. 21, 2009)................44

*Kilopass Tech. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013)................26, 27

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  88 F. Supp. 3d 402 (E.D. Pa. 2015)................31

*Kokesh v. SEC*,
  137 S. Ct 1635 (2017)................22

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)................43

*Livingstone v. North Belle Vernon Borough*,
  91 F.3d 515 (3d Cir. 1996)................36, 38

*Moldex Metric, Inc. v. 3M Co.*,
  No. 14-1821, 2015 WL 520722 (D. Minn. Feb. 9, 2015)................27

*Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  838 F.3d 421 (3d Cir. 2016)................32

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*,
  No. 92 CIV. 1735, 1998 WL 118174 (S.D.N.Y. Mar. 16, 1998)................42

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
  435 U.S. 679 (1978)................17

*Niebur v. Town of Cicero*,
  212 F. Supp. 2d 790 (N.D. Ill. 2002)................45

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014)................26, 27

*Pack v. Beyer*,
  157 F.R.D. 219 (D.N.J. 1993)................37, 38

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*,
  508 U.S. 49 (1993)................2, 26

*R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*,
  945 F.2d 269 (9th Cir. 1991)................44

*Radio Music License Comm., Inc. v. SESAC Inc.*,
  No. 12-cv-5807, 2013 WL 12114098 (E.D. Pa. Dec. 23, 2013) .......................................33

*Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*,
  32 F.3d 851 (3d Cir. 1994) ..................................................................................................39

*Rochester Drug Coop., Inc. v. Braintree Labs.*,
  712 F. Supp. 2d 308 (D. Del. 2010) ....................................................................................29

*Sadid v. Idaho State Univ.*,
  No. 4:11-CV-00103, 2013 WL 6383254 (D. Idaho Dec. 5, 2013)......................................46

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
  778 F.3d 775 (9th Cir. 2015) ..............................................................................................33

*SEC v. Antar*,
  97 F. Supp. 2d 576 (D.N.J. 2000)........................................................................................23

*SEC v. Hughes Capital Corp.*,
  917 F. Supp. 1080 (D.N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997) ..........................22, 23

*SEC v. Teo*,
  746 F.3d 90 (3d Cir. 2014) ............................................................................................22, 23

*Sherif v. AstraZeneca*,
  No. 2:00-cv-3285, 2002 WL 32350023 (E.D. Pa. May 9, 2002) .....................................41

*SmithKline Corp. v. Eli Lilly & Co.*,
  575 F.2d 1056 (3d Cir. 1978) ..............................................................................................33

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ...........................................................................................27

*Thomas v. Landrum*,
  No. 11-CV-09275, 2014 WL 11370447 (N.D. Ill. Mar. 18, 2014) ...................................46

*Times-Picayune Pub. Co. v. United States*,
  345 U.S. 594 (1953) ............................................................................................................32

*Tisa v. Beasley FM Acquisition Corp.*,
  343 F. App'x 793 (3d Cir. 2009).........................................................................................42

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
  959 F.2d 468, 472-73, 481 (3d Cir. 1992)..........................................................................31

*Tracinda Corp. v. DaimlerChrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005) ....................................................................................41

*TransWeb, LLC v. 3M Innovative Properties Co.*,
  No. 10-4413, 2011 WL 2181189 (D.N.J. June 1, 2011) ....................................................27

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
  762 F.3d 1338 (Fed. Cir. 2014) ..........................................................................................27

*United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA*,
No. 14-MD-02521-WHO, 2017 WL 5068533 (N.D. Cal. Nov. 3, 2017) ..........................................33

*United States ex rel. Remtech, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
No. 97-CV-005424, 2000 WL 1171139 (9th Cir. Aug. 17, 2000) ....................................................43

*United States v. Cinergy Corp.*,
No. 1:99-CV-1693, 2009 WL 6327419 (S.D. Ind. Apr. 24, 2009) ...................................................41

*United States v. Eastman Kodak Co.*,
63 F.3d 95 (2d Cir. 1995) ..............................................................................................................34

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) ......................................................................................................................18

*United States v. Lane Labs-USA Inc.*,
427 F.3d 219 (3d Cir. 2005) ..........................................................................................................21

*United States v. McLaughlin*,
No. 95-CR-113, 1998 WL 966014 (E.D. Pa. Nov. 19, 1998) .........................................................45

*United States v. Merlino*,
349 F.3d 144 (3d Cir. 2003) ..........................................................................................................40

*United States v. Microsoft*,
253 F.3d 34 (DC Cir. 2001) (*en banc*) ....................................................................................18, 30

*United States v. Oracle Corp.*,
331 F. Supp. 2d 1098 (N.D. Cal. 2004) ........................................................................................34

*United States v. Uarte*,
175 F.2d 110 (9th Cir. 1949) ........................................................................................................46

*Valley Drug v. Geneva Pharmaceuticals, Inc.*,
344 F.3d 1294 (11th Cir. 2003) ....................................................................................................31

*Vanemmerik v. The Ground Round, Inc.*,
No. 97-CV-5923, 1998 WL 474106 (E.D. Pa. July 16, 1998) ........................................................45

*Zacharias v. SEC*,
569 F.3d 458 (D.C. Cir. 2009).......................................................................................................23

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ......................................................................................................................18

## **Statutes**

15 U.S.C. § 45...............................................................................................................................1

15 U.S.C. § 53(b)...........................................................................................................................1

21 U.S.C. § 355(c) .......................................................................................................................28

21 U.S.C. § 355(j).........................................................................................................................28

28 U.S.C. § 1331.................................................................................................................1

28 U.S.C. § 1337(a) ...........................................................................................................1

28 U.S.C. § 1345.................................................................................................................1

**Other Authorities**

Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence (4th ed. 2017)...................................43

DOJ & FTC, Horizontal Merger Guidelines (2010)...............................................................34

Fed. R. Evid. 801(d)(2)(C) Advisory Committee's Note (1972) ............................................43

Michael H. Graham, Handbook of Fed. Evid. § 801:23 (8th ed. 2017) ..................................42

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (4th ed. 2017)..............................20, 27, 31, 32

**Rules**

Fed. R. Civ. P. 1 ...............................................................................................................44

Fed. R. Evid. 611(a).........................................................................................................44

Fed. R. Evid. 611(c).........................................................................................................45

Fed. R. Evid. 801(d)(2)...........................................................................................40, 41, 42, 43

Judge Harvey Bartle III Policies and Procedures, (June 2011) ...........................................46

Pa. Rules of Prof. Conduct ..............................................................................................40

# I. Brief Statement of Nature of the Action and Basis for Jurisdiction

This federal antitrust enforcement action challenges Defendants AbbVie Inc., Abbott Laboratories, Unimed Pharmaceuticals, LLC (collectively "AbbVie"), and Besins Healthcare, Inc.'s anticompetitive course of conduct to prevent lower cost generic competition to the highly lucrative testosterone replacement therapy, AndroGel. The Federal Trade Commission's ("FTC") complaint alleges that AbbVie and Besins illegally protected their AndroGel monopoly through the filing and maintenance of sham patent litigation against potential generic competitors Perrigo Company and Teva Pharmaceuticals. By filing two lawsuits that this Court has already ruled "were without question objectively baseless," AbbVie and Besins knew they would trigger a regulatory provision automatically blocking approval of Teva's and Perrigo's products for up to thirty months. Faced with the imminent threat of generic competition, AbbVie and Besins used the courts and the Hatch-Waxman Act regulations to delay entry of generic rivals and secure protection from competition that any reasonable litigant would know its AndroGel patent could not provide. Because of AbbVie and Besins's exclusionary conduct, consumers paid far higher prices for AndroGel, resulting in over a billion dollars in ill-gotten profits for AbbVie and Besins.

The FTC is an independent agency charged with promoting competition and protecting consumer interests. The FTC enforces, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits unfair methods of competition, including violations of the federal antitrust laws. Section 13(b) of the FTC Act authorizes the FTC to enforce that law in federal district court. 15 U.S.C. § 53(b). The FTC exercises primary responsibility over federal antitrust enforcement in the pharmaceutical industry. In this case, the FTC's complaint charges AbbVie and Besins with violating Section 5(a) of the FTC Act by unlawfully maintaining their monopoly through the filing and maintenance of sham patent litigation. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

The FTC's monopolization claim against AbbVie and Besins has two primary elements: (1) the possession of monopoly power in a relevant antitrust market; and (2) acquisition or maintenance of that power through exclusionary conduct. Monopolization claims predicated on the filing and maintenance of sham litigation as the alleged exclusionary conduct require proof that: (1) the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;" and (2) "the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."[1]

In granting the FTC summary judgment on the first prong of the sham litigation claim, this Court already has ruled that "AbbVie and Besins could not realistically have expected success on the merits of [their infringement actions against Teva and Perrigo] or have had a reasonable belief that they had a chance to prevail." (Dkt. 300 at 31.) Thus, the only liability issues that remain for trial are: (1) whether Defendants filed their baseless lawsuits to use the government process—by triggering the automatic 30-month stay of FDA approval of those generic products—as an anticompetitive weapon; and (2) whether Defendants engaged in this anticompetitive conduct to protect their AndroGel monopoly. At trial, the FTC will present compelling evidence establishing both points.

To remedy Defendants' anticompetitive conduct, the FTC seeks equitable relief including an injunction aimed at preventing this type of misuse of government processes from recurring, injunctive relief to partially restore competitive conditions, and disgorgement of AbbVie and Besins's ill-gotten profits of over one billion dollars to compensate victims of Defendants' anticompetitive conduct.

---

[1] *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*, 508 U.S. 49, 60-61 (1993) (internal citations and quotation marks omitted) (emphasis in original).

## II.     Brief Statement of Facts

### A.     Defendants' abuse of the government process to delay generic AndroGel 1% entry

#### 1.     The lucrative AndroGel franchise

AndroGel is a brand-name transdermal testosterone gel product indicated for replacement therapy in men for conditions associated with a deficiency or absence of testosterone.[2] The AndroGel franchise now consists of two dosage strengths: 1%, which was the original formulation launched in June 2000, and 1.62%, which is a later formulation launched in May 2011. AndroGel 1.62% is comprised of the same ingredients as AndroGel 1% but in different amounts, and is approved for the same indications as AndroGel 1%. ████████████████████████████████████
████████████████

After Solvay began marketing AndroGel 1% in 2000, the product quickly achieved substantial commercial success. By 2009, AndroGel was one of Solvay's "flagship" products, representing its top-selling prescription drug in the United States with net sales ████████████. By 2012, net sales for the AndroGel franchise exceeded $1 billion. Indeed, ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████

_____

[2] AbbVie ultimately came to control an interest in the AndroGel franchise through a series of acquisitions and corporate restructurings. In 1995, Unimed licensed the U.S. rights to AndroGel from Besins and contracted to secure commercial supply of AndroGel from Besins. Solvay Pharmaceuticals, Inc. (then a U.S. subsidiary of Solvay S.A.) acquired Unimed in 1999. In 2010, Abbott Laboratories acquired Solvay Pharmaceuticals, Inc., including its wholly-owned subsidiary Unimed and its interests in AndroGel. In January 2013, Abbott separated into two independent companies, Abbott and AbbVie Inc. AndroGel was transferred to AbbVie's portfolio of products as part of this corporate reorganization. Numerous key employees and executives retained responsibility for AndroGel across the various corporate changes, including Jean Louis Anspach (Unimed, Solvay, Abbott (through March 2010)), Jim Hynd (Solvay, Abbott, AbbVie), and Murray Kay (Solvay, Abbott).

██████████████████████████████████████████

████████████

**2.  The threat of generic entry and Defendants' strong incentives to delay such competition**

As a result of its substantial commercial success, AndroGel was an attractive target for generic competitors. This threat of generic entry was particularly acute because AndroGel was protected by a single narrow formulation patent that generic companies could easily invent around by using a different penetration enhancer.

As patent co-owners, Defendants knew they had secured allowance of U.S. Patent No. 6,503,894 (the "'894 patent") by submitted a series of amendments that narrowed the penetration enhancer element of their claims to the single penetration enhancer, isopropyl myristate ("IPM"), used in the AndroGel formulation. (Dkt. 300 at 6-8.) Moreover, Defendants knew that they only had submitted evidence of commercial success and unexpected results based on the AndroGel formulation and that they had made "no effort based on commercial success or otherwise to save isopropyl palmitate or other penetration enhancers disclosed" in the prior art cited by the examiner. (Dkt. 300 at 23.) After an interview with the patent examiner, patent prosecution counsel, Joseph Mahoney, explicitly informed Defendants' representatives: ████████████████████████████████

█████████████████████████████████████████████████████████ By submitting supplemental amendments conforming the claims to what the patent examiner indicated she deemed allowable, Defendants "clearly surrendered broader language for narrower language" and "purposefully and not tangentially excluded isopropyl palmitate [IPP] and isostearic acid [ISA]." (Dkt. 300 at 26, 30-31; Dkt. 256 at 3; Dkt. 241 at 39.)

Entry of generic competition to AndroGel would be devastating to AbbVie and Besins, but a boon to customers. As the FTC's economic expert, University of California Berkeley Professor of

Economics Carl Shapiro will explain,[3] generic drugs are uniquely effective sources of competition for their branded counterparts and generate substantial benefits to consumers in the form of lower prices.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ ████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ Defendants,

therefore, stood to gain substantially from even a short delay in generic entry.

**3.  Despite strong financial incentives to sue Perrigo in 2009, Defendants concluded there was an insufficient basis to do so**

In June 2009, Perrigo filed two Abbreviated New Drug Applications ("ANDAs") with the FDA seeking approval to market its generic AndroGel 1% product. Not surprisingly, Perrigo designed around the AndroGel patent by developing a generic AndroGel 1% product that uses ISA as the penetration rather than IPM. With its ANDAs, Perrigo filed paragraph IV certifications asserting that its product did not infringe the '894 patent because it used a different penetration enhancer than the patented composition. With its notice letters sent to Unimed and Besins, Perrigo included a detailed

---

[3] Professor Shapiro, a highly esteemed antitrust economist, holds an endowed chair as a business and economics professor at UC Berkeley and previously served as a Senate-confirmed member on the President's Council of Economic Advisers.

[4] The FDA assigns therapeutic equivalency ratings to drugs, indicating whether the generic drug is bioequivalent to its reference listed drug. Generic drugs with an "A" or "AB" rating may be automatically substituted at the pharmacy for the brand name drug under state law; generic drugs with a "B" or "BX" rating may not be auto-substituted.

statement explaining why prosecution history estoppel prevented any infringement claim by Defendants.

Upon receiving Perrigo's paragraph IV certification, Solvay issued a press release on behalf of Unimed and prepared a coordinated communication strategy statement indicating that it intended to "carefully evaluat[e] all available options" and "use all means at its disposal to protect its intellectual property" for AndroGel. As part of this careful evaluation, Defendants consulted with at least █

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

Defendants knew that, under the Hatch-Waxman Act, if they filed a patent infringement suit against Perrigo within 45 days after receiving notice of Perrigo's paragraph IV certification, the FDA would be prohibited from approving Perrigo's application for 30 months, unless a court earlier found the patent to be invalid, unenforceable, or not infringed. This "30-month stay" (as it is commonly referred) is triggered automatically; it does not depend on the merits (or lack thereof) of the infringement claims and the FDA exercises no discretion in imposing it.

Defendants unquestionably had substantial economic incentives to file a patent infringement suit to obtain the automatic 30-month stay of FDA approval so long as they had any reasonable basis for doing so. Indeed, based on the FTC's economic expert's calculation, a delay in entry of even just one to six months would have resulted in ███████████████████████████████. Nonetheless,

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ Defendants thus made a considered decision *not* to file a patent infringement suit against Perrigo and knowingly forfeited the ability to obtain the automatic regulatory 30-month stay of FDA approval of Perrigo's product.

On July 17, 2009, Solvay issued a press release on Unimed's behalf publicly announcing the decision not to sue Perrigo. Solvay explained that Perrigo's formulation was different from "the formulation protected by the AndroGel patent" and that "[t]his distinction played a role in the company's decision not to file patent infringement litigation at this time." In communication strategy briefing documents that further describe the decision not to sue Perrigo, Solvay candidly explained that:

> Solvay Pharmaceuticals takes its obligations under U.S. law very seriously. These obligations include certain pleading requirements that must be satisfied prior to initiating any litigation, including patent infringement litigation.
> . . . .
> We conducted a thorough analysis based upon the contents of the Paragraph IV certifications and the information available to us, determined there was not a sufficient basis for filing patent infringement litigation at this time.

**4.    Following the decision not to sue Perrigo, Defendants expected near-term generic AndroGel 1% entry**

Defendants understood that their decision not to sue Perrigo could have significant detrimental financial ramifications. In contemporaneous ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ Indeed, in the summer of 2009, Solvay was offering all of its pharmaceutical assets for sale (including AndroGel), and Abbott was considering purchasing them. ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████.

**5.** **With no basis to sue Perrigo for patent infringement in 2009, Defendants pursued other avenues to extend branded AndroGel exclusivity**

Just days after deciding not to sue Perrigo, Defendants began efforts to obtain additional patents covering testosterone gels and, specifically, for testosterone gels using ISA, Perrigo's penetration enhancer. On August 18, 2009—approximately one month after issuing the press release on its decision not to sue Perrigo—Defendants filed an application seeking patent coverage for testosterone gel formulations using ISA, requesting accelerated examination by the Patent and Trademark Office ("PTO"). During the prosecution of these claims, AbbVie made numerous assertions that IPM and ISA (and penetration enhancers generally) are not equivalent or substitutable.

In addition, after an FDA ruling in late August 2009 concerning other testosterone gel products, Abbott developed a ████████████████████████████████████████████. The FDA had granted a citizen petition filed by Auxilium (the manufacturer of Testim, another testosterone gel) and decided that generic formulations containing different inactive ingredients from the branded drug Testim would need to be supported by additional safety studies and filed as a New Drug Application ("NDA"), rather than an ANDA. Defendants understood that the FDA's approach with Testim could provide a means to delay the onset of generic AndroGel competition if the FDA were to impose similar requirements for generic formulations of AndroGel containing a different penetration enhancer.

With its regulatory strategy primed, on September 26, 2009, Abbott entered into the agreement to purchase Solvay's pharmaceutical assets, including AndroGel. ████████████████████ ██████████████████████████, but the Solvay purchase agreement included milestone payments from Abbott to Solvay in the event that AndroGel sales for 2011, 2012, and 2013 exceeded certain targets.

On April 9, 2010, Abbott filed its own citizen petition with the FDA, requesting that FDA require any applicant for a generic drug referencing AndroGel and containing a different penetration enhancer than IPM to submit additional safety studies and to file an NDA rather than an ANDA.

8

AbbVie further requested that any generic AndroGel NDA applicant be required to provide a new paragraph IV certification to listed patents, even if a paragraph IV certification had previously been made under a prior ANDA. This would ensure that Perrigo would have to refile for FDA approval of its generic AndroGel 1% product as an NDA and, importantly, would need to submit a new paragraph IV certification. A new paragraph IV certification would provide Defendants a renewed opportunity to trigger an automatic 30-month stay of FDA approval of Perrigo's product by filing a patent suit (regardless of its merit).

Just after filing its citizen petition with the FDA, Abbott changed its internal assumption of AB-rated AndroGel generic entry to 2015. ██████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ In October 2010, the FDA granted AbbVie's petition in part, requiring some additional safety studies, a 505(b)(2) NDA filing, and new patent certifications for any generic AndroGel product containing a different penetration enhancer.

> **6.** **Defendants filed an objectively baseless infringement lawsuit against Teva to trigger the automatic 30-month stay of FDA approval of Teva's product**

Like Perrigo, Teva also designed around the '894 patent by developing a generic AndroGel 1% product that uses a different penetration enhancer (IPP) than the one used in branded AndroGel and claimed in the '894 patent. In early 2011, Teva submitted an NDA seeking to market a generic AndroGel product and requested that the FDA rate its generic AndroGel NDA product as "AB," or bioequivalent to, branded AndroGel. Teva then sent Defendants a paragraph IV notice and detailed statement asserting that its generic AndroGel 1% product did not contain IPM and therefore did not infringe the '894 patent literally or under the doctrine of equivalents.

AbbVie's outside counsel, Munger Tolles & Olson, was provided confidential access to portions of Teva's NDA and confirmed that Teva's product contained IPP and not IPM. As patent co-owners, Defendants knew that all penetration enhancers other than IPM, including IPP, had been

surrendered during prosecution to secure the '894 patent. Defendants also knew, however, that the mere act of filing a patent infringement suit would result in a 30-month stay on FDA approval of Teva's generic AndroGel product. Thus, Defendants had significant economic incentives to delay generic competition for as long as possible. On April 29, 2011, even though no reasonable litigant could have realistically expected the claims to succeed, Defendants filed baseless patent infringement litigation against Teva in federal district court for the District of Delaware. In response, Teva filed antitrust counterclaims, asserting that the infringement lawsuit was baseless and a sham. Nonetheless, Defendants' lawsuit still triggered the automatic 30-month stay of FDA approval of Teva's generic AndroGel product. The stay would not expire until September 2013, unless there was an earlier court decision finding the patent invalid, unenforceable, or not infringed by Teva's generic product.

Defendants' expectation of blocking Teva's generic entry until at least the expiration of the 30-month stay hit an unexpected obstacle, however, when Teva filed an early, pre-discovery motion for summary judgment on August 1, 2011—only three months into the objectively baseless patent litigation. Teva's motion asserted that prosecution history estoppel applied as a matter of law and precluded an infringement claim against Teva's generic product. Beginning one week after Teva filed its motion for summary judgment, ███████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████

To blunt the negative impact of earlier than anticipated generic entry, Abbott ramped up its plans to transition AndroGel 1% customers to its follow-on product, AndroGel 1.62%. Abbott's goal was to transition customers to AndroGel 1.62% before generic 1% products became available and

significantly decreased branded sales. ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████

      On October 25, 2011, the court entered a scheduling order that set a date in May 2012 for a trial on the dispositive issue of prosecution history estoppel. ██████████████████████████

█████████████████████████████████████ Thus, a decision on prosecution history estoppel favorable to Teva would remove the last remaining regulatory barrier to Teva's ability to launch generic AndroGel. With a fast approaching trial date in its objectively baseless infringement action, Defendants were in danger of not being able to realize the full 30 months of the FDA stay and not having sufficient time to transition AndroGel 1% customers to AndroGel 1.62% before generic 1% entry. █████████████████████████████████████████████████████████

████████████████████████████████████████████

      **7.**      **With a second chance at a 30-month stay, Defendants filed an objectively baseless infringement lawsuit against Perrigo in 2011**

      After completing the additional studies required by the FDA, Perrigo resubmitted its generic AndroGel 1% product as an NDA. Perrigo did not materially change the formulation of its generic AndroGel product from its original ANDA filing. Notably, Perrigo's product still contained ISA (and not IPM) as the penetration enhancer. In September 2011, Perrigo served a new paragraph IV letter on Defendants, including a detailed statement of its non-infringement position explaining that it did not infringe the '894 patent because prosecution history estoppel precluded Defendants' reliance upon the doctrine of equivalents. Perrigo also noted in its paragraph IV certification that any infringement lawsuit brought by AbbVie ████████████████████████████████████████████████████

████████████████████████████████████████████

AbbVie's outside counsel, Munger Tolles & Olson, was provided confidential access to portions of Perrigo's NDA and confirmed that Perrigo's product still used ISA as the penetration enhancer and did not contain IPM. As co-owners of the '894 patent, Defendants knew that ISA and all other penetration enhancers besides IPM had been surrendered during prosecution to secure the patent. Further, Abbott and Besins were aware of the prior decision not to sue Perrigo over the same generic AndroGel product. In fact, ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ Defendants, however, also knew that the mere act of filing a patent infringement suit would result in a 30-month stay of FDA approval of Perrigo's generic AndroGel product.

On October 31, 2011, even though no reasonable litigant could have realistically expected infringement claims to succeed, Defendants filed a baseless patent infringement lawsuit against Perrigo. Defendants filed the Perrigo lawsuit in the District of New Jersey—not in the District of Delaware where its lawsuit against Teva was proceeding very quickly. Defendants' lawsuit triggered the statutory automatic 30-month stay of FDA approval of Perrigo's generic AndroGel. ████████ ████████████████████████████████████████████████████████████████ ████████████

### 8. Defendants maintained the objectively baseless lawsuits and secured settlements to thwart generic competition

Defendants leveraged their baseless infringement lawsuits into settlements that further extended branded AndroGel's exclusivity. Faced with the automatic 30-month stays on FDA approval of their generic AndroGel products, Teva and Perrigo each agreed to settle the baseless infringement lawsuits for business reasons. In December 2011, Defendants entered into binding terms sheets with both Perrigo and Teva, securing their agreement not to market generic AndroGel until at least ████████████

███ The negotiation and signing of both agreements would not have taken place if Defendants had not filed the objectively baseless patent suits.

After settling the litigations, ████████████████████████████████████████████ ████████████████████████████████████████████████████████ With the filing, maintenance, and settlement of their objectively baseless lawsuits, Defendants avoided judicial determination of their infringement claims and blocked competition from generic AndroGel 1% products for over three years after Teva and Perrigo originally filed their NDAs.

**B.      Defendants' AndroGel monopoly**

Extensive expert and record evidence demonstrates that Defendants had monopoly power at the time they filed their objectively baseless lawsuits against Teva and Perrigo in April 2011 and October 2011, respectively, and maintained that power long after that conduct.

**1.      Generic versions of AndroGel 1% posed a unique competitive threat to AndroGel**

AbbVie, Teva, and Perrigo each recognized the unique impact generic AndroGel 1% entry would have on branded AndroGel prices and sales. ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████

Actual sales data corroborates the companies' contemporaneous forecasts. The first marketed generic AndroGel 1% product, Perrigo's product, ultimately launched in the United States on December 27, 2014. And in the second half of 2015, Par Pharmaceuticals Company, Inc. and Actavis, Inc. launched generic AndroGel 1% products in the United States. ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

There is no comparable evidence that AbbVie expected the entry of any other testosterone replacement therapy ("TRT") product to have a similar impact on branded AndroGel prices, sales, or revenues. Instead, AbbVie projected that AndroGel's sales, prices, and revenues would continue to rise despite the presence of injections and other TRT products labeled to treat the same condition as AndroGel.

> ## 2. The Hypothetical Monopolist Test conducted by Professor Shapiro confirms that AndroGel and its generic counterparts comprise a distinct relevant market

The FTC's economic expert, Professor Carl Shapiro, conducted a quantitative analysis to assess "the structure and composition of the relevant market" and evaluate whether Defendants possessed monopoly power during the relevant period. Professor Shapiro will explain that, to define the relevant market, he utilized the widely accepted hypothetical monopolist test ("HMT") using both AbbVie's contemporaneous business forecasts and the actual market data following generic entry in 2014 and 2015. Based on these calculations, Professor Shapiro will explain that, at a minimum, entry of an AB-rated and a BX-rated generic AndroGel 1% product would cause market prices███████████████ ███ respectively, and therefore, under the HMT, AndroGel and its generic counterparts comprise a discrete product market for antitrust purposes.

> ## 3. Injections were not a close competitor to AndroGel during the relevant period

The evidence also will show that other TRT products such as injections, although FDA approved for the treatment of hypogonadism like AndroGel, were not close enough economic substitutes to significantly affect AndroGel's prices or sales during the relevant period.

Contemporaneous AbbVie documents demonstrate that AndroGel and other transdermal TRT ("TTRT") products have significant advantages relative to injections. Testimony from both parties' medical experts and AbbVie's own employees will describe the meaningful differences between TTRT products and injections. For example, AndroGel is painless to apply, easy to administer, has

convenient application sites, and produces steady testosterone concentration levels over a 24-hour period. AndroGel's steady release of testosterone is ██████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████.

In contrast, the most common forms of testosterone injections (*e.g.*, cypionate and enanthate) are administered through a deep intramuscular shot that may result in pain and discomfort. For the many patients unable or unwilling to self-administer, there also is inconvenience associated with visiting a provider every two to three weeks to get the injection. In addition, injections have an unfavorable pharmacokinetic profile that can result in ██████████████ in testosterone levels and create the potential for ████████████████████████████████ between dosings. Notably, Unimed and Besins relied on these significant differences between AndroGel and other existing TRT products like patches and injections in their arguments to the PTO to get the '894 patent.

Because of the substantial differences in use and application, AndroGel and testosterone injections appeal to very different types of patients. Some patients prefer the ████████████ ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████. In addition, injection sales grew in recent years due to the advent of "low-T centers," which introduced a new model for administering injections based on the promise of ████████████████████████████████████. As AbbVie's own business executives explain, low-T centers are designed to appeal to men by promoting a █████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████.

Although AbbVie tracks data on injections, AndroGel's marketing director from 2010-2013, Frank Jaeger, has testified that ████████████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

The evidence will show that injections and AndroGel do not meaningfully compete on price. From the time AndroGel launched in 2000 through 2011 (when it filed the sham litigations), generic versions of injection products were already on the market and had list prices [REDACTED] [REDACTED] Despite the injections' significantly lower price and the introduction of several new testosterone products, [REDACTED] [REDACTED] [REDACTED]

Finally, economic analyses conducted by Professor Shapiro also demonstrate that AndroGel and injection prescriptions are not sensitive to relative price changes. Professor Shapiro will testify at trial that he analyzed the change in injection prescription volumes in response to two generic TTRT entry events and ran a regression analysis confirming that injections' overall upward trend in sales continued unabated after the introduction of generic AndroGel 1%. Based on these analyses and events study, Professor Shapiro finds that the cross-price elasticity of demand between AndroGel and injectables is relatively low and thus injectables should not be included in a properly defined relevant product market.

4.    **AndroGel's market shares demonstrate the existence of monopoly power**

Professor Shapiro will confirm that Defendants' market share in the relevant product market comprised of branded AndroGel and its generic equivalents was 100%. Professor Shapiro will further explain that even in the broader market including all TTRTs, Defendants had market shares of [REDACTED] in April 2011 and [REDACTED] in October 2011 (when they filed objectively baseless sham lawsuits against Teva and Perrigo), which are sufficiently large to infer monopoly power.

Potential entrants in the market faced high regulatory barriers, and investment and research and development commitments, as well as objectively baseless lawsuits that prevented their entry. In particular, generic AndroGel 1% products were blocked from entering the market for years because of Defendants' conduct and various FDA regulations. (Dkt. 300 at 9.) No other generic AndroGel 1% product was able to overcome these regulatory and patent litigation hurdles before Perrigo's entry in December 2014. Through these facts, the FTC will demonstrate that there are high barriers to entry in this market and that Defendants maintained monopoly power at all relevant times.

## III.    Relief Sought

Defendants' sham litigation deprived consumers of access to lower-priced versions of Defendants' AndroGel 1% products for over two and half years. Further, by delaying generic 1% entry, Defendants shifted more sales to 1.62% than they otherwise would have and thus the harm is ongoing as Defendants continue to benefit from AndroGel 1.62% sales that would not be made absent the anticompetitive conduct. Given the magnitude of consumer harm, the FTC seeks equitable relief in the form of (1) an injunction to prevent Defendants from engaging in similar conduct in the future; (2) an injunction to partially restore competitive market conditions; and (3) disgorgement of Defendants' over one billion dollars in ill-gotten profits, along with prejudgment interest, to compensate victims of the anticompetitive conduct.

The Court has broad discretion to fashion relief "to fit the exigencies of the particular case."[5] It is not limited to imposing a "simple proscription against the precise conduct previously pursued."[6] Rather, a "federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future

---

[5] *Int'l Salt Co. v. United States*, 332 U.S. 392, 400-01 (1947), *abrogated on other grounds by Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006).

[6] *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978).

unless enjoined."[7] Moreover, remedying illegal monopolization should also "deprive the defendants of any of the benefits of the illegal conduct, and break up or render impotent the monopoly power found to be in violation of the Act."[8] As the Supreme Court has explained: "[I]t is well settled that once the Government has successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor."[9]

In accordance with this Court's Sixth Scheduling Order and Local Rule 16.1(c)(2), the FTC outlines below the three types of relief it seeks, and "provides information adequate for framing an order granting the relief sought."

## A. Injunction to prevent similar conduct

The FTC seeks an injunction that would prevent or deter Defendants from filing sham litigation and engaging in other sham conduct similar to that at issue in this case.

1. *Prohibition on Certain Claims Related to the '894 Patent*: This provision would prohibit the filing of any claims of patent infringement based on the claims of the '894 patent by a product that does not include about 0.1% to about 5% IPM. Proposed order language includes:

> Defendants shall not, jointly or individually, assert a patent infringement claim that U.S. Patent No. 6,503,894 is infringed by any drug product, or the use of any drug product, that contains the active ingredient testosterone, unless the drug product also contains the penetration enhancer IPM.

2. *Prohibition on Sham Litigation*: This provision would prohibit Defendants from filing sham litigation against any ANDA or 505(b)(2) NDA holder. It would not prohibit legitimate patent infringement claims. Proposed order language includes:

---

[7] *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 132 (1969) (internal quotation marks omitted).

[8] *United States v. Grinnell Corp.*, 384 U.S. 563, 577 (1966); *see also United States v. Microsoft*, 253 F.3d 34, 103 (DC Cir. 2001) (*en banc*).

[9] *Hoffman-La Roche Ltd. v. Empagram S.A.*, 542 U.S. 155, 170-71 (2004) (internal quotation marks omitted).

Defendants shall not, jointly or individually, in connection with any patent infringement litigation filed against an ANDA or 505(b)(2) NDA holder:

> (A)    Assert any fraudulent or objectively baseless claim, or otherwise engage in sham litigation, whereby the effect of the assertion of the fraudulent or objectively baseless claim is to delay or otherwise hinder entry of a generic drug product under an ANDA or 505(b)(2) NDA; or
>
> (B)    Enforce or seek to enforce any patent that it knows is invalid, unenforceable, or not infringed.

3.    *Prohibition on Similar Sham Conduct*: This provision would prohibit Defendants from engaging in any action that misuses government processes for anticompetitive purposes. It would not prohibit legitimate use of government processes. Proposed order language includes:

> Defendants shall not fraudulently or without an objectively reasonable basis make any filing, claim, petition, submission, application, or other use of a governmental process whereby the effect of that filing, claim, petition, submission, application, or other use of a governmental process is to delay or otherwise hinder entry of a generic drug product under an ANDA or 505(b)(2) NDA.

4.    *Certification Requirements*: This provision would ensure that any patent infringement litigation filed by Defendants, or other action taken by Defendants that uses governmental process to effect generic entry, has an objectively reasonable basis by requiring an executive of Defendants to provide a written certification with the commencement of litigation, or in the case of non-litigation actions, on an annual basis. Proposed order language includes:

> At the time a Defendant files any patent infringement litigation, including any amended complaint in any patent infringement litigation or any counterclaim for patent infringement in any type of action, against the holder of an ANDA or 505(b)(2) NDA, the filing Defendant shall provide to the Federal Trade Commission and defendant in the patent infringement litigation a verified statement signed by an executive who has the authority to bind the Defendant, stating that each of the claims for infringement included in the patent infringement litigation has an objectively reasonable basis. This certification shall specify the basis of the claims and information relied upon in making the certification. In addition, the filing Defendant shall provide the Federal Trade Commission with a copy of the complaint, amended complaint, or counterclaim.
>
> Annually for the duration of this Order, each Defendant shall provide to the Federal Trade Commission a verified statement signed by an executive who has the authority to bind the Defendant that describes each filing, claim, petition, submission, application, or other use of a governmental process that delayed the entry of a generic drug product under an ANDA or

505(b)(2) NDA, and states the objectively reasonable basis for each such filing, claim, petition, submission, application or other use of governmental process.

## B.       Injunction to restore competitive market conditions

The FTC also seeks an injunction requiring Defendants to license AndroGel 1.62% to one or more generic competitors. A core purpose of equitable relief in an antitrust case is to restore the marketplace to competitive conditions that more closely resemble what would have existed but for the anticompetitive conduct.[10]

During the nearly two and a half years delay in generic 1% entry obtained from filing the objectively baseless lawsuits, Defendants converted significant sales from AndroGel 1% to AndroGel 1.62%, which cannot be automatically substituted at the pharmacy with generic AndroGel 1% products. *See supra* Part II.A.6. As one AbbVie employee explained: ████████████████████ ███████████████████████████████████████████████████████████

Defendants' sham litigation extended the window for AbbVie to execute this transition and to better protect the AndroGel franchise from the impact of generic 1% entry. At the time Defendants sued Perrigo in October 2011, AndroGel 1.62% represented only about ████ of total AndroGel franchise sales. By the time of actual generic entry in December 2014, AbbVie had successfully transitioned ████ of the franchise mix to AndroGel 1.62%. By diminishing AndroGel 1% sales before generic entry occurred, Defendants blunted the uptake of generic AndroGel 1% products and substantially reduced the benefit consumers received from generic 1% competition. Absent AbbVie's anticompetitive conduct, generic 1% sales would constitute a substantially greater portion of the

---

[10] *See* 2A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 325a (4th ed. 2017) ("[T]he court's most important task is to devise a remedy that is reasonably well calculated to restore competitive conditions."); *see also Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) ("The relief in an antitrust case must be effective to redress the violations and to restore competition." (internal quotation marks omitted)).

AndroGel market today.[11] Thus, an order requiring Defendants to license a generic AndroGel 1.62%

product to one or more generic competitors would restore to some degree the competitive conditions

that likely would have prevailed if Defendants had not delayed generic 1% entry and prevent

Defendants from continuing to profit from sales achieved through its illegal monopolization. To make

this licensing remedy effective, the order should include a provision requiring Defendants to enter into

a supply agreement if necessary to effectuate timely entry by a generic under a license.

Proposed order language for the licensing remedy includes:

Defendants AbbVie, Unimed, and Besins shall, in response to the request of any company
that has submitted an ANDA or 505(b)(2) NDA referencing AndroGel 1.62% ("AndroGel
generic manufacturer"), take the following steps to enable the requesting AndroGel generic
manufacturer to manufacture, market and sell an Androgel 1.62% generic drug product:

(A) jointly grant to the AndroGel generic manufacturer, (1) a nonexclusive royalty-
free license for U.S. Patent Nos. 6,503,894; 8,466,136; 8,466,137; 8,466,138; 8,486,925;
8,729,057; 8,741,881; 8,754,070; 8,759,329; 9,125,816; and 9,132,089; and (2) a license for
any additional current or future U.S. patent or patent application that is owned or controlled
by any Defendant and contains claims related to the making, using, selling, offering for sale
and/or importing AndroGel 1.62% (NDA No. 22309); and

(B) pursuant to an agreement approved by the Federal Trade Commission, contract
manufacture and deliver, in a timely manner and under reasonable terms and conditions, a
supply of AndroGel 1.62% to the licensed manufacturer for sale as a generic drug product
until the AndroGel generic manufacturer is able to manufacture, market and sell a generic
version of AndroGel 1.62% independently of Defendants.

## C. Monetary equitable relief

The FTC also seeks a monetary equitable remedy, including prejudgment interest, to deprive

the Defendants of their illegal profits and to compensate victims of Defendants' anticompetitive

conduct. As the Third Circuit has explained, a statute that empowers a court to issue an injunction also

empowers that court to order ancillary equitable relief, absent a clear limitation in the statute. *See*

*United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 225 (3d Cir. 2005). Applying that well-established

---

[11] Professor Shapiro estimates that Teva's entry with a generic product in June 2012 would have
limited AndroGel 1.62%'s market share to about ███ .

principle, every court to address the issue has concluded that Section 13(b) of the FTC Act allows a district court to order monetary equitable remedies such as disgorgement of profits or restitution.[12] Indeed, the Third Circuit in a non-precedential opinion and numerous district courts within this Circuit have endorsed this uniform view.[13]

The FTC has the initial burden of presenting a "reasonable approximation" of Defendants' ill-gotten gains. *See SEC v. Teo*, 746 F.3d 90, 105 (3d Cir. 2014).[14] The burden then shifts to Defendants to show that the FTC's approximation is unreasonable. *Id.* at 105. According to the Third Circuit: "[The defendants' burden] is not simply one of carrying the ball back across the fifty-yard line by presenting a merely plausible alternative explanation for the profit." *Id.* at 107. At a minimum, defendants must provide "specific evidence" of "any other cause for the profits they assert were untainted by illegality." *Id.* at 107-08. Since it is often impossible to calculate precisely the amount of illegitimate profits, the risk of uncertainty falls on defendants. *See SEC v. Antar*, 97 F. Supp. 2d 576,

---

[12] *See, e.g.*, *FTC v. Ross*, 743 F.3d 886, 890-92 (4th Cir. 2014); *FTC v. Bronson Partners*, *LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 14-15 (1st Cir. 2010*); FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994); *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-15 (8th Cir. 1991); *FTC v. Amy Travel Serv.*, *Inc.,* 875 F.2d 564, 571-72 (7th Cir. 1989), *cert. denied*, 493 U.S. 954 (1989); *see also see also FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 717-18 (5th Cir. 1982) ("[A] grant of jurisdiction such as that contained in Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it."); *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 37 (D.D.C. 1999) (disgorgement available as a remedy in pharmaceutical antitrust case).

[13] *FTC v. Magazine Sols.*, 432 F. App'x. 155, 158 n.2 (3d Cir. 2011); *FTC v. Cephalon, Inc.*, 100 F. Supp. 3d 433, 435 (E.D. Pa. 2015); *In re Nat'l Credit Mgmt. Gp., LLC*, 21 F. Supp. 2d 424, 461-62 (D.N.J. 1998) (citing *Pantron I*, 33 F.3d at 1102).

Some defendants have argued that the Supreme Court's recent decision in *Kokesh v. SEC,* 137 S. Ct 1635 (2017), undermines this uniform precedent. No court has agreed. As one district court recently explained, *Kokesh* addressed the distinct issue of whether a five year statute of limitations applies when disgorgement is sought under the SEC Act—not the FTC Act—and the Supreme Court "specifically declined to address whether courts possess authority to order disgorgement in SEC enforcement proceedings." *FTC v. J. William Enters.*, *LLC*, No. 16-cv-2123, 2017 WL 4776669, at *2 (M.D. Fla. October 23, 2017).

[14] *See also SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997).

578-79 (D.N.J. 2000). In addition, courts have awarded prejudgment interest on equitable monetary awards. *See Teo*, 746 F.3d at 90, 109.[15] Multiple defendants that "collaborate" or have a "close relationship" in connection to the illegal conduct may be held jointly and severally liable for disgorgement. *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997).[16]

Courts have found that the government may satisfy its initial burden to provide a reasonable approximation of the disgorgement amount by identifying the net revenue or net profit earned by the defendants during the period of violation.[17] Here, the FTC's economic expert, Professor Shapiro, took a more conservative approach. He estimates that Defendants earned an additional $1.23 billion through August 2017. That additional profit is the difference between what Defendants actually earned and what they would have earned if there had been no delay of generic 1% entry as a result of the sham litigation. Professor Shapiro further estimates that Defendants' financial gain likely will continue to accrue at a rate of approximately ███████████████████████ .

For purposes of this calculation, Professor Shapiro models that: (1) Teva would have entered in June 2012 with a BX-rated product; (2) Perrigo would have entered in June 2013 with an AB-rated product; and (3) entry by each of Perrigo and Teva would have affected Defendants' AndroGel profits. Contemporaneous evidence from around the time of the anticompetitive conduct and basic economic principles support the reasonableness of these assumptions:

---

[15] *See also FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283, 2013 WL 1224613, at *18 (D. Nev. Mar. 26, 2013) (ordering disgorgement of ill-gotten gains plus prejudgment interest), *aff'd in part, vacated in part, remanded,* 616 F. App'x 360 (9th Cir. 2015).

[16] *See also FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600-01 (9th Cir. 2016) (rejecting challenge to joint and several liability for equitable relief and noting that "[e]quity courts have long exercised the power to impose joint and several liability"); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 636-37 (6th Cir. 2014) (affirming district court's imposition of joint and several liability under Section 13(b)).

[17] *See FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1327 (11th Cir. 2013) (using net revenue as measure for disgorgement under Section 13(b)); *Zacharias v. SEC*, 569 F.3d 458, 472-73 (D.C. Cir. 2009) (using profits as the measure for disgorgement).

- **Teva's June 2012 entry with a BX-rated product**: Teva filed its NDA in January 2011. Teva's contemporaneous business forecasts and work plan reflect that ████████████ ███████████████████████████████████████████████████ These documents were presented to senior management and prepared by Teva either before Defendants filed the sham lawsuit or at time when AndroGel 1% still accounted for a substantial portion of the market. ███████████████████████████████████████████████ ██████████████████████████████████████

- **Perrigo's June 2013 entry with an AB-rated product**: Perrigo's in-house counsel has testified that ████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████ Ultimately, Perrigo received a TE-rating four months after filing the FDA suit.

  Perrigo's product was approved in January 2013. As numerous documents show, Perrigo stood to make very significant profits from an AB-rated product, and so absent the sham litigation, Perrigo would have wanted to act as soon as possible to resolve the situation with its TE-rating. The FTC takes the reasonable position that in the counterfactual Perrigo would have sued regarding the TE-rating soon after receiving its January 2013 approval, received an FDA TE-rating 4 months later (as occurred in the real world) and launched in June 2013.

- **Impact of earlier generic entry on AndroGel profits**: Contemporaneous business forecasts and real world data on the effects of actual generic entry show that earlier entry by Teva and Perrigo would have had a substantial effect on Defendants' AndroGel profits. Evidence shows that earlier generic entry would have halted the growth of AndroGel 1.62% sales and that most of AndroGel 1% sales would have switched to generic sales. Earlier generic entry also would have resulted in lower prices for branded AndroGel.

Professor Shapiro also calculates several alternative estimates of disgorgement based on variations of these assumptions. For example, Professor Shapiro calculates Defendants' minimum ill-gotten gains based on the assumption—███████████████████████████████████████ ███████████████████████████████████████████████████████ Under this scenario, in which Perrigo would have been the first generic entrant in June 2013, Defendants' minimum ill-gotten gains are $448 million as of August 2017 and are continuing to accrue at a rate of approximately ███████████████████████.

## IV. Significant Legal Issues and Other Appropriate Matters

To assist the Court in understanding the issues to be tried and evaluating the anticipated testimony and evidence the parties propose to offer, the FTC provides the following comments regarding the significant legal issues that remain in this case, the legal standards governing certain privilege and evidentiary issues likely to arise, and several trial procedure issues.

### A. Law of the case

On September 15, 2017, this Court entered an order granting summary judgment in the FTC's favor on the objectively baseless prong of *PRE*'s sham litigation test. (Dkt. 301.) In the accompanying opinion, this Court found as a matter of law that "[t]he patent lawsuits against Teva and Perrigo were without question objectively baseless. AbbVie and Besins could not realistically have expected success on the merits of this issue or have had a reasonable belief that they had a chance to prevail." (Dkt. 300 at 31.) This Court's legal determination of objective baselessness was based on the lack of undisputed material facts and a thorough review of the patent prosecution history record and case law at the time, which is not subject to change.

"Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800, 815-16 (1988)) (internal quotations marks omitted). This doctrine was "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (internal citation and quotation marks omitted). It "promotes the finality and efficiency of the judicial process." *Mukasey*, 534 F.3d at 187 (quoting *Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800, 816 (1988)) (internal quotation marks omitted).

Here, this Court's legal determination that no reasonable litigant could have believed they could prevail on the merits is the law of this case. As such, the FTC will oppose, and this Court should prohibit, any attempt by Defendants to offer evidence at trial on the issue of whether Defendants had any reasonable basis for believing they could prevail on the merits of the patent infringement claims against Teva and Perrigo.

### B.  The second prong of *PRE* asks whether defendants intended to interfere with competitors' business relationships

Once a lawsuit has been determined to be objectively baseless, the second prong of the Supreme Court's sham litigation test asks "whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor." *PRE*, 508 U.S. at 60-61 (internal citation and quotation marks omitted) (emphasis in original). This is sometimes referred to as *PRE*'s "subjective prong" or the "subjective intent" requirement. The second prong of *PRE* does not require proof of the litigants' actual knowledge that the case was frivolous.[18] Instead, the second prong focuses on whether the litigant initiated the baseless lawsuit to "use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 60-61 (emphasis in original).[19] In other words, while *PRE*'s first prong analyzes "the lawsuit's *legal* viability," the second prong analyzes "the suit's *economic* viability." *Id.* at 61 (emphasis in original). The second prong of *PRE* is satisfied if the sham plaintiff "brought baseless claims in an attempt to thwart competition."[20] Though

---

[18] *See Kilopass Tech. v. Sidense Corp.*, 738 F.3d 1302, 1313-14 (Fed. Cir. 2013) (explaining that "the [*PRE*] Court's subjective inquiry has nothing to do with what a litigant knew or should have known regarding the merits of its claims").

[19] *See also Kilopass*, 738 F.3d at 1313-14; *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 369 (S.D.N.Y. 2002) (articulating the second prong of *PRE* as whether the infringement lawsuit was "subjectively motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy") (citing *Nobelpharma A.B. v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068, 1071 (Fed. Cir. 1998)).

[20] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014); *see also In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 311 (E.D. Pa. 2011) (the second prong of *PRE* requires

the case law on subjective intent under *PRE* is not well-developed (relatively few claims satisfy the objective baselessness prong, and those that do rarely go to trial), a preponderance of the evidence standard applies to most civil cases and should apply to *PRE*'s second prong as well.[21]

Direct evidence of a defendant's anticompetitive intent to use the litigation process as a weapon is rarely available due to claims of privilege. For this reason, the anticompetitive intent inquiry necessarily must rely on circumstantial evidence.[22] In a variety of legal contexts, courts routinely infer intent from circumstantial evidence.[23] The same principles apply here. Indeed, various allegations of circumstantial evidence have been held sufficient, if proven, to demonstrate anticompetitive intent under *PRE*'s second prong.[24] For example, one court found significant the FDA's comment on the

showing "that the subjective intent of the petitioning party was to inhibit competition, rather than to petition the Government for redress").

[21] *See Kilopass*, 738 F.3d at 1315 (*citing Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)). In fact, the Supreme Court recently rejected use of the heightened clear and convincing evidence standard in determining whether to award attorneys' fees in patent lawsuits, noting that "patent-infringement litigation has always been governed by a preponderance of the evidence standard, and that is the standard generally applicable in civil actions." *Octane Fitness*, 134 S. Ct. at 1757 (internal citations omitted).

[22] *See* 3 Areeda & Hovenkamp, Antitrust Law at ¶ 706(b) ("[*PRE*] should not be read to require inquiry into the infringement plaintiff's actual state of mind . . . intent can be inferred from sufficiently unambiguous conduct.").

[23] *See, e.g., Kilopass*, 738 F.3d at 1311-12 (holding reliance on circumstantial evidence to support an inference of subjective bad faith appropriate when a patentee pursues claims that are devoid of merit in cases seeking attorney fees under § 285); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("a district court may infer intent from indirect and circumstantial evidence" to find fraud on the patent office).

[24] *See Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1348 (Fed. Cir. 2014) (the timing of the filing of a citizen petition—the day after a court granted summary judgment of non-infringement—and an internal email, assessing strength of temazepam patents and the ability of a generic to design around patent, could satisfy the subjective element of proving the citizen petition was a sham); *Moldex Metric, Inc. v. 3M Co.*, No. 14-1821, 2015 WL 520722 at *9 (D. Minn. Feb. 9, 2015) (allegations that defendant asserted infringement of patents "[t]o force Moldex from the market," persisted in one of the infringement litigation "imposing substantial costs on Moldex Metric," and issued covenants not to sue immediately prior to summary judgment hearings satisfied *PRE*'s second prong); *TransWeb, LLC v. 3M Innovative Properties Co.*, No. 10-4413, 2011 WL 2181189, at *15 (D.N.J. June 1, 2011) (allegations of "a series of events that [TransWeb] asserts shed light on 3M's intent to drive TransWeb out of the market" were sufficient to satisfy second prong).

timing of a pharmaceutical company's announcement of its withdrawal of the product's tablet form from the market and the filing of a citizen petition with the FDA seeking to block the approval of generic tablets.[25]

The anticompetitive intent inquiry exists because, in many circumstances, a sham plaintiff does not benefit significantly from filing a baseless lawsuit, beyond imposing costs on its rival to defend the lawsuit. But "[t]he Hatch-Waxman regulatory scheme presents unique opportunities for gamesmanship by offering a 'non-refundable' 30-month stay." *In re Neurontin Antitrust Litig.*, No. 02-1390, 2009 WL 2751029, at *20 (D.N.J. Aug. 28, 2009). Under the Hatch-Waxman Act, if a patent holder initiates an infringement action within a specific period of time, the FDA is prohibited from approving the generic manufacturer's ANDA or 505(b)(2) NDA for 30 months, unless a court finds the patent to be invalid, unenforceable, or not infringed by the generic before the expiration of 30 months.[26] This 30-month stay is statutorily imposed and applies automatically, regardless of the merits (or lack thereof) of the underlying patent infringement claim.[27]

The Hatch-Waxman statutory framework provides both incentive and ability to use the mere filing of a lawsuit to interfere directly with competitors' business interests. As this Court previously noted, "[b]y filing the lawsuits, AbbVie and Besins automatically triggered a thirty-month stay of FDA approval of those generic products. This step delayed entry of the Teva and Perrigo generic products into the market where they would compete with AndroGel 1%." (Dkt. 300 at 9 (internal citation

---

[25] *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 688-90 (E.D. Pa. 2014) (indicating the FDA had noted that "its close alignment with the period in which generic competition for [that] product was expected to begin[] cannot be ignored").

[26] 21 U.S.C. § 355(j)(5)(B)(iii); 21 U.S.C. § 355(c)(3)(C).

[27] 21 U.S.C. § 355(j)(5)(B)(iii); 21 U.S.C. § 355(c)(3)(C); *see also In re Buspirone*, 185 F. Supp. 2d at 372.

omitted).) Indeed, some courts have suggested that the intent to impose the automatic 30-month stay on FDA approval was sufficient on its own to satisfy *PRE*'s second prong.[28]

It is undisputed in this case that Defendants knew the mere act of filing of their patent infringement lawsuits would result in automatic 30-month stays on FDA approval of Teva's and Perrigo's generic AndroGel 1% products and would delay their entry into the market where they would compete with AndroGel. Further, the FTC will present extensive additional circumstantial evidence at trial sufficient to show that Defendants intended to interfere with Teva's and Perrigo's business interests under either possible evidentiary standard, including:

- Defendants had knowledge of the prosecution history of '894 patent (which any reasonable litigant would know resulted in the surrender of testosterone formulations that use any penetration enhancer other than IPM);

- AndroGel was an important product, and Defendants projected steep declines in sales and revenues if generics entered the market. In 2011, Defendants had strong economic incentives to file baseless infringement lawsuits to obtain the automatic 30-month stays on Teva's and Perrigo's products;

- Despite similar economic incentives, Defendants had elected not to file an infringement suit against Perrigo in 2009, publicly announcing that the decision was based on the different formulation (*i.e.*, penetration enhancer) of Perrigo's product;

---

[28] *See Rochester Drug Coop., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 318 (D. Del. 2010) (sham allegations sufficient when "Braintree commenced suit against Schwarz to obtain the benefits of the 30-month stay and extend its market monopoly on MiraLax beyond that allowed by the patent laws"); *In re Buspirone*, 185 F. Supp. 2d at 375 n.5 (suggesting allegations Bristol-Myers's purpose in listing the patent in the Orange Book and initiating infringement action was "simply to delay the FDA's approval of Mylan's and Watson's ANDAs for up to thirty months, irrespective of the outcome of the litigations" was sufficient to meet *PRE*'s second prong); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 632, 643-44 (E.D. Mich. 2000) (allegations the patent was listed in the Orange Book solely as a basis to impose a 30-month stay and that defendants had knowledge that the patent claimed a dissolution profile that plainly excluded the generics' dissolution profile were sufficient); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1361-62 (S.D. Fla. 2004) ("These facts . . . can create the type of pressures to employ the Hatch-Waxman statutory process not to protect legitimate patent rights, but to extend a monopoly in violation of the Sherman Act. Thus, courts must carefully analyze such lawsuits to determine whether at the time of filing there was a legally arguable basis to file the suit, or whether the action was so obviously baseless that it was simply a sham to obtain a 30 month stay.").

- When anticipating the early termination of the Teva infringement litigation (and thus early termination of the 30-month stay on Teva's FDA approval), ████████████ ██████████████████████████████████████████████████████

- Defendants undertook other regulatory actions, including filing patent applications covering Perrigo's formulation with the PTO and filing citizen petitions with the FDA regarding Teva's and Perrigo's products, to try to keep generic AndroGel off the market;

- Defendants continued to maintain the baseless infringement lawsuits until they could secure the agreement of Teva and Perrigo to keep their generic products off the market until at least ███████ █████[29]

## C. Monopoly power

"Monopoly power is defined as 'the power to control prices or exclude competition.'" *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956)). Monopoly power may be established through direct evidence, such as "prices substantially above the competitive level," *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (*en banc*), or indirect evidence, such as a large share of a relevant market subject to entry barriers. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (citing *Microsoft*, 253 F.3d at 51 and *SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056, 1062-63 (3d Cir. 1978)).

The purpose of any monopoly power inquiry is to assess the likely competitive effects of the conduct at issue. In this case, that means determining whether Defendants' filing of objectively baseless litigation that delayed generic competition to AndroGel 1% harmed consumers by maintaining higher prices for AndroGel than otherwise would have prevailed. Monopoly power is properly

---

[29] It is unclear what evidence, if any, Defendants will offer to rebut the FTC's evidence of anticompetitive intent to use the litigation process as a weapon. ████████████████████ ███████ Defendants offered no explanation for why they lacked the subjective motivation to interfere directly with the business relationships of a competitor with the Teva and Perrigo lawsuits, ████████████████████. Defendants have not updated ████████████ following the Court's decision that the Teva and Perrigo lawsuits were objectively baseless.

assessed at the time of the anticompetitive conduct.[30] The core question is whether the defendant exercised monopoly power at the time it excluded competition; unexpected changes in market conditions after those events do not retroactively nullify liability for anticompetitive conduct.

### 1. Direct and indirect evidence may prove monopoly power

Under the direct evidence inquiry, the key indicator of monopoly power is "the power to charge prices higher than the competitive level." *FTC v. Actavis*, 133 S. Ct. 2223, 2236 (2013) (the presence of "higher-than-competitive profits" is a "strong indication of market power"); *Broadcom*, 501 F.3d at 307. Moreover, "proof of actual detrimental effects . . . can obviate the need for an inquiry into market power, which is but a surrogate for detrimental effects." *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458-61 (1986). In the pharmaceutical context, courts have recognized that the "the anticompetitive effects of [delaying generic entry] cannot be seriously debated." *Valley Drug v. Geneva Pharmaceuticals, Inc.*, 344 F.3d 1294, 1311 n.27 (11th Cir. 2003).[31]

"Market power can sometimes be inferred from an exclusionary practice that would not be a rational act for a firm lacking significant power." 2B Areeda & Hovenkamp, Antitrust Law at ¶ 520b2. Thus, expensive, risky, or irrational conduct designed to exclude competition can establish monopoly power. *See Actavis*, 133 S. Ct. at 2236 (observing that expensive efforts to block generic competition can demonstrate market power because a firm lacking market power is not "likely to pay 'large sums' to induce 'others to stay out of its market'"); *accord King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 88 F. Supp. 3d 402, 414-15 (E.D. Pa. 2015).

---

[30] *See Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 472-73, 481 (3d Cir. 1992) (considering defendant's market share only during the period when the challenged conduct occurred); *In re Suboxone*, 64 F. Supp. 3d at 711-13 (finding evidence of monopoly power limited to time of challenged conduct sufficient to survive motion to dismiss).

[31] *See also In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 787 (7th Cir. 1999) ("It would not be surprising, therefore, if *every* manufacturer of brand name prescription drugs had some market power.").

In the absence of direct evidence, a plaintiff may also use indirect evidence to show that "(1) Defendants had market power in the relevant market and (2) that there were barriers to entry into the market." *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 435 (3d Cir. 2016). "Products are in the same market if there is reasonable interchangeability of use *and* cross elasticity of demand." (Dkt. 300 at 33 (emphasis added) (citing *Mylan Pharm.*, 838 F.3d at 435).) Cross-elasticity of demand is "[a] relationship between two products, usually substitutes for each other, in which a price change for one product affects the price of the other." (Dkt. 300 at 33 (quoting *Mylan Pharm.*, 838 F.3d at 435-36).)

### 2.    Economic substitution is the touchstone of the indirect evidence inquiry

Ultimately, a properly defined antitrust product market is no broader than necessary to capture the range of *economic* substitutes (*i.e.*, products that compete on price) and often does not "include the full range of *functional* substitutes from which consumers choose."[32] Functional interchangeability is the beginning of the relevant market inquiry because it provides only "[t]he outer boundaries of a product market." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). The Supreme Court has explained: "For every product, substitutes exist. But a relevant market cannot meaningfully encompass that infinite range. The circle must be drawn narrowly to exclude any other product to which, within reasonable variations in price, only a limited number of buyers will turn . . . ." *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 612 n.31 (1953). Substitutability with other drugs shows a lack of market power only if it "effectively limit[s] the price . . . to the competitive level or something slightly above." 2B Areeda & Hovenkamp, Antitrust Law at ¶ 507.

As a result, courts in this circuit and others routinely focus on economic substitution—that is, cross-elasticity of demand—when defining relevant antitrust markets. *Mylan Pharm.*, 838 F.3d at 421

---

[32] DOJ & FTC, Commentary on Horizontal Merger Guidelines, Market Definition and Concentration at 6 (Mar. 2006) (emphasis added), *available at* https://www.justice.gov/atr/file/801216/download.

(explaining that "[i]nterchangeability is only one aspect of establishing a relevant antitrust market through indirect evidence," and that the evidence of cross-elasticity of demand between Doryx and other tetracyclines supported the broader adopted market definition). In the pharmaceutical context, courts exclude functional substitutes from a relevant market when they exhibit low cross-elasticity of demand. For example, in *SmithKline Corp. v. Eli Lilly & Co.*, the Third Circuit held that the relevant product market contained only cephalosporin antibiotics, even though "there is a certain degree of interchangeability among all antibiotics." 575 F.2d 1056, 1064 (3d Cir. 1978). In *FTC v. Lundbeck, Inc.*, the Eighth Circuit upheld the district court's finding that the only two drugs to treat a serious birth defect were in separate product markets because of their "low cross-elasticity of demand." 650 F.3d 1236, 1240 (8th Cir. 2011). And in *United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA*, the court found on summary judgment that the market consisted solely of Lidoderm and its generic equivalents, excluding other functionally interchangeable pain relief products. No. 14-MD-02521-WHO, 2017 WL 5068533, at *21 (N.D. Cal. Nov. 3, 2017).

In defining relevant markets and assessing cross-elasticity of demand, courts and economists alike routinely rely on the Hypothetical Monopolist Test (HMT). The HMT is a widely accepted methodology adopted in the U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines and applies to both merger[33] and conduct cases.[34] Last year, in *FTC v. Penn State Hershey Med. Ctr.*, the Third Circuit reaffirmed the use of the HMT in defining relevant markets. 838 F.3d 327, 338 (3d Cir. 2016).

---

[33] *See, e.g.*, *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 338 (3d Cir. 2016) (the HMT is "[a] common method employed by courts"); *FTC v. Advocate Health Care Network*, 841 F.3d 460, 473 (7th Cir. 2016) (rejecting critique that the HMT assumes the answer, explaining instead that the HMT is an iterative process that "tests the hypothesis and adjusts the market definition if the results require it"); *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015) (the HMT is "[a] common method to determine the relevant . . . market").

[34] *See, e.g.*, *Radio Music License Comm., Inc. v. SESAC Inc.*, No. 12-cv-5807, 2013 WL 12114098, at *9-10, *14-16 (E.D. Pa. Dec. 23, 2013) (accepting HMT analysis to define relevant market in Section 2 case); *Babyage.com, Inc. v. Toys "R" Us, Inc.,* 558 F. Supp. 2d 575, 581 (E.D. Pa. 2008) (same).

As explained in *Babyage.com*, the HMT incorporates both "reasonable interchangeability" and "cross-elasticity of demand between in-market products" to systematically evaluate economic substitutability and determine whether an identified group of products qualifies as a relevant product market. 558 F. Supp. 2d at 581. Consistent with the "narrowest market principle" governing antitrust analysis, the HMT starts with a narrow set of products (the candidate market) and asks whether a hypothetical monopolist selling all of the products in the candidate market could profitably impose a small but significant non-transitory increase in price ("SSNIP," taken to be 5% or more) in the proposed market.[35] If the answer is yes, then the market is correctly defined.[36] A meaningful number of customers do not venture outside the market to make purchases when prices in a candidate market go up because "those out-of-market products are not reasonably interchangeable with the in-market products; otherwise consumers would be buying them instead of the in-market products to take advantage of the lower price." *Babyage.com*, 558 F. Supp. 2d at 581. Conversely, if a hypothetical monopolist could not profitably impose a price increase of 5% or more, then the relevant product market is too narrow and must be expanded to include other products.[37]

In defining a relevant market, "[c]ourts should be wary of defining markets so broadly that a seller's existing market power is missed." *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1121 (N.D. Cal. 2004). A monopolist's products can be "so overpriced that even inferior substitutes begin to look good to consumers." *United States v. Eastman Kodak Co.*, 63 F.3d 95, 103 (2d Cir. 1995). As the Supreme Court explained, under that scenario, even "significant substitution . . . at the current price

---

[35] *See Penn State Hershey*, 838 F.3d at 338; *Babyage.com*, 558 F. Supp. 2d at 581; *see also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 25-27 (D.D.C. 2015); DOJ & FTC, Horizontal Merger Guidelines § 4.1.1 (2010).

[36] *Babyage.com*, 558 F. Supp. 2d at 581; Horizontal Merger Guidelines § 4.1.2.

[37] *See* Horizontal Merger Guidelines § 4.1.1.

does not tell us whether the defendant already exercises significant market power." *Eastman Kodak v. Image Tech. Servs, Inc.*, 504 U.S 451, 471 (1992).

### 3.    Defendants possessed monopoly power during the relevant period

The FTC will use both direct and indirect evidence to show that Defendants had monopoly power at the time they filed their objectively baseless sham lawsuits in April 2011 and October 2011, and that they sustained that monopoly power for long afterwards. First, using direct evidence consisting of extensive ordinary course business forecasts and actual market entry date, the FTC will show that AbbVie's objectively baseless patent infringement lawsuits harmed consumers by delaying generic entry and preventing significantly lower-priced AndroGel 1% alternatives from entering and taking substantial share. *See supra* Parts II.A.7-8, II.B.1. The FTC's economic expert, Professor Shapiro, concludes from this evidence that by keeping out lower-priced generic 1% entrants, AbbVie was able to keep the market price of AndroGel and its generic equivalents substantially higher than the market price would have been had generic competition not been delayed. That power to control prices and exclude competition is the very essence of monopoly power.

Defendants' willingness to file an objectively baseless lawsuit subject to treble damages further confirms their monopoly power. Why would Defendants engage in such risky and irrational conduct if not to protect monopoly profits on the AndroGel franchise? The unique competitive constraint AbbVie faced by the threat of generic entry, and the concomitant expected dramatic drop in prices and its own loss of sales is the obvious explanation. The threat of generic entry presented a unique constraint on Defendants' AndroGel monopoly, and the objectively baseless lawsuits Defendants filed in response to that threat offers further direct evidence of monopoly power.

The indirect evidence in this case confirms the same conclusion as the direct evidence: Defendants possessed monopoly power in the relevant market. Based on his application of the Hypothetical Monopolist Test, Professor Shapiro will explain that branded AndroGel and its generic

counterparts comprise a discrete product market for antitrust purposes and that Defendants enjoyed a 100% share of that market at the time of the anticompetitive conduct and beyond.

Even if the relevant market were to include all TTRT products, Professor Shapiro will confirm that Defendants had market shares of ███ in April 2011 and ███ in October 2011 (when they filed objectively baseless lawsuits against Teva and Perrigo). Further, potential entrants in the market faced high regulatory barriers, substantial investment needs, and extensive research and development commitments, as well as sham lawsuits that prevented their entry. Through these facts, the FTC will prove that Defendants maintained monopoly power in the relevant market at all pertinent times.

Although Defendants contend that the relevant product market should include injections, the FTC will prove that injections were not close enough substitutes to prevent AbbVie from profitably raising AndroGel prices. This evidence includes the testimony of both parties' medical experts and AbbVie's executives, as well contemporaneous business documents, establishing the significant disadvantages of injections relative to other TTRTs and their distinct customer groups. *See supra* Part II.B.3. Likewise, the FTC will show that there is relatively low cross-elasticity of demand between TTRTS and injections through Professor Shapiro's event study and through AbbVie's own documents and executives' testimony evidencing that the price of injections did not constrain the price of AndroGel. *Id.*

### D.      Prohibition on the use of privilege claims as both a shield and a sword

The Third Circuit has long recognized the basic principle that "the attorney-client privilege cannot be used as both a 'shield' and a 'sword.'" *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 221 n.24 (3d Cir. 2006); *see also Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996) ("The attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct." (internal citation omitted)).

Accordingly, courts routinely preclude the introduction at trial of evidence or testimony that the opposing party refused to provide in discovery.[38]

Throughout this litigation and the preceding FTC investigation, Defendants have consistently and broadly asserted the attorney-client privilege and work product doctrine, blocking the FTC from obtaining discovery on all bases, reasons, or motives for Defendants' decision not to sue Perrigo in 2009 for infringement of the '894 patent and the reversal of that decision in 2011 resulting in their filing of objectively baseless lawsuits against Perrigo and Teva. The FTC served civil investigative demands, document requests and interrogatories, and took depositions of fact witnesses seeking discovery on these topics. In response, Defendants instructed witnesses not to answer and asserted privilege over much of this discovery.[39] Defendants now have included two current and one former in-

---

[38] *See Pack v. Beyer*, 157 F.R.D. 219, 225 (D.N.J. 1993); *see also Columbia Pictures Television Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's grant of motion *in limine* where defendant "sought to rely on advice of counsel" but "refused to answer questions regarding his interactions with counsel at his deposition"); *Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1023 (N.D. Iowa 2004) (granting motion *in limine* and determining that "the parties will be entitled to present documents and testimony formerly protected by the attorney-client privilege *only to the extent that those issues were explored in . . . deposition*") (emphasis in original); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 667-68 (D. Del. 2004) (where at deposition "counsel instructed [deponent] not to respond to the question citing attorney-client privilege," the court at trial "limited [deponent's] testimony to the substance of his deposition testimony"); *Bayer AG v. Housey Pharm., Inc.*, No. 01-148, 2002 WL 31433303, at *1 (D. Del. June 20, 2002) (granting motion to limit the introduction of evidence in a patent case and stating "[i]f defendant does not produce the requested evidence . . . defendant shall be precluded from relying on that evidence at trial").

[39] By way of illustration, Defendants asserted privilege over: (1) documents related to any investigation or analysis of Perrigo's or Teva's products prior to the commencement of patent litigation in 2011; (2) documents related to the decisions in 2011 to file lawsuits against Perrigo and Teva for patent infringement; (3) discussions concerning the next steps following Defendants' receipt of Perrigo's ANDA in 2009; (4) discussions about a 30-month stay of FDA approval of Perrigo's ANDA; (5) the identity of individuals involved in communications concerning the decision to file the Perrigo litigation in 2011; and (6) █████████████████████████████████████████████████████

house counsel on their joint trial witness list served on November 29, 2017. (Dkt. 316 at 2.) It is unclear what non-privileged information these witnesses are expected to testify to at trial.[40]

Having elected to invoke the attorney-client privilege and work product doctrine to shield discovery and having disavowed reliance on an advice of counsel defense in their interrogatory responses, Defendants should not be permitted to use at trial any evidence that has not been previously disclosed to the FTC due to an assertion of privilege. Defendants likewise should be prohibited from asserting as a material issue or asking the Court to draw any inference from the fact that Defendants consulted with counsel (including lawyers from current trial counsel Munger Tolles and Foley & Lardner) before filing the objectively baseless lawsuits in support of their defenses in this case. Instead, Defendants must be held to the consequence of their strategic choice: by refusing to allow discovery into these issues, Defendants cannot now reverse course and seek to introduce cherry-picked, self-serving evidence and testimony on those same issues. Allowing Defendants to present this evidence would circumvent the basic principle that "presentation of evidence without prior disclosure is not permitted as a basis for disposition on the merits." *Pack v. Beyer*, 157 F.R.D. 219, 222 (D.N.J. 1993). Accordingly, Defendants should be precluded from offering testimony for the first time at trial that they previously shielded from discovery based on attorney-client privilege and the work product doctrine.

In any event, notwithstanding Defendants assertion in their interrogatory responses that they "do not intend to rely on advice of counsel as a defense in this case," any affirmative step at trial to offer evidence suggesting that "the advice of a lawyer was relevant to the legal significance of the client's conduct" would waive privilege just like an advice of counsel defense. *See Berckeley*, 455 F.3d at 221 n.24; *Livingstone*, 91 F.3d at 537. If the advice of counsel is in fact put at issue by Defendants

---

[40] On December 1, 2017, the FTC sent Defendants a letter concerning the propriety of their including a number of individuals on Defendants' Witness List under Rule 37(c)(1) and requesting an offer of proof regarding Mr. Siatis's expected testimony. As of the filing of this memorandum, Defendants have not responded.

and the Court permits Defendants to present such evidence, the FTC is entitled "to test what information had been conveyed by the client to counsel and vice-versa regarding that advice—whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995).

Necessary discovery would include all communications, written and oral, related to the advice put at issue by Defendants. *See Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (by taking an affirmative step to place advice of counsel at issue in a litigation, "the client has opened to examination facts relating to that advice" including, for example, "what the advice was, when it was given, whether the [client's] conduct suggests he relied on the advice and whether he had knowledge of facts that would have led him to believe it would not be reasonable to rely on that advice"); *see also Glenmede*, 56 F.3d at 487 (by placing at issue legal advice related to the structure of the transaction, the party "waived the attorney-client privilege as to all communications, both written and oral, to or from counsel as to the entire transaction," including a law firm's "internal research and other file memoranda"). In such instances, fairness dictates that the party asserting a defense of its reliance on advice of counsel "should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of such discovery." *Glenmede*, 56 F.3d at 486. Here, any such discovery necessarily would include the advice Defendants' received concerning infringement of the '894 patent in both 2009 and 2011. *See Rhone-Poulenc*, 32 F.3d at 864 (finding that opposing party "may explore facts that would make it more probable than not that the [defendant] did not rely in good faith on" the advice put at issue, including "whether he had knowledge of facts that would have led him to believe it would not be reasonable to rely on that advice").

In addition, if Defendants seek to affirmatively rely on the fact of their consultation with counsel concerning the decision to file infringement claims against Perrigo and Teva as part of their defenses at trial, they also risk disqualifying trial counsel involved in the underlying legal advice put at issue who thus may become potential fact witnesses. Here, Jeffery Weinberger of Munger Tolles & Olson filed the complaints in the objectively baseless patent infringement actions on behalf of Abbott and ███████████ of Foley & Lardner represented Besins during its assessment of the infringement claims in both 2009 and 2011. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Putting this legal advice at issue would implicate ███████, Mr. Weinberger, and any attorney at Munger Tolles involved ████████████████████████ as predicate fact witnesses and disqualify those attorneys from serving as counsel in this litigation. *See* Pa. Rules of Prof. Conduct, Rule 3.7; *see also United States v. Merlino*, 349 F.3d 144, 152 (3d Cir. 2003) (finding a potential conflict of interest where an attorney could have been called as a fact witness "as it is often impermissible for an attorney to be both an advocate and a witness").

### E.    Specific admissibility and evidentiary issues likely to arise

#### 1.    Corporate predecessor's statements are party admissions

Given the history of corporate acquisitions and restructurings that occurred over the course of the relevant events in this case, the FTC will be offering into evidence numerous documents authored by AbbVie's corporate predecessors or subsidiary entities. Under Federal Rule of Evidence 801(d)(2)(A) statements are admissible against an opposing party if "made by the party in an individual or representative capacity."[41] Courts have interpreted Rule 801(d)(2)(A) to include statements that could have been admitted against a subsidiary and predecessor-in-interest if, absent the

---

[41] *See also* Fed. R. Evid. 801(d)(2)(C) (providing for admission of an opposing party if "made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

corporate transaction, the subsidiary would have been a named defendant.[42] For example, in *Sherif v. AstraZeneca* statements made by the then-CEO of Astra Merck were deemed admissible despite a series of corporate restructurings and mergers subsequent to those statements. 2002 WL 32350023, at *1-3 The court reasoned that "[t]o decline to accept these statements as admissions against a party-opponent solely because AstraZeneca is the only named party would elevate form over substance." *Id.* at *3. The court also noted that throughout the corporate changes, "the company and its management remained essentially the same." *Id*. Similarly, in *Tracinda Corporation v. DaimlerChrysler AG,* statements by the CEO of Chrysler were admitted in a lawsuit against DaimlerChrysler, Chrysler's corporate successor and parent.[43]

As in *Sherif* and *Tracinda*, any statements attributed to Solvay Pharmaceuticals, Inc. are admissible under Rule 801(d)(2)(A)-(D). After Abbott's acquisition, the name of Solvay Pharmaceuticals, Inc. changed to Abbott Products Inc. and today the entity is known as AbbVie Products LLC.[44] There is no question that documents created by employees of Solvay Pharmaceuticals, Inc. and statements issued on behalf of Solvay Pharmaceuticals, Inc. would have been admissible against AbbVie Products LLC, formerly known as Abbott Products Inc.—one of the named plaintiffs in the objectively baseless lawsuits filed against Teva and Perrigo. Further, at no point during this litigation has AbbVie challenged its liability as the corporate parent of AbbVie Products LLC, its

---

[42] *Sherif v. AstraZeneca*, No. 2:00-cv-3285, 2002 WL 32350023, at *3 (E.D. Pa. May 9, 2002) (admitting statements made by managers of predecessor company to use against the defendant successor company under Fed. R. Evid. 801(d)(2)(A)); *Tracinda Corp. v. DaimlerChrysler AG,* 362 F. Supp. 2d 487, 504 (D. Del. 2005) (admitting statements of Chrysler CEO against its successor and parent DaimlerChrysler); *United States v. Cinergy Corp.,* No. 1:99-CV-1693, 2009 WL 6327419, at *2 (S.D. Ind. Apr. 24, 2009) (explaining that the *Sherif* and *Tracinda* courts held that "not allowing the prior out-of-court statements against the parent, the successor-in-interest, would elevate the corporate form over the substance of the underlying suit").

[43] *Tracinda,* 362 F. Supp. 2d at 504.

[44] (Dkt. 89, AbbVie Defs.' Answer to the Compl. ¶ 18 ("The AbbVie Defendants admit that AbbVie Products LLC f/k/a Abbott Products Inc. f/k/a Solvay Pharmaceuticals, Inc. is currently a wholly owned subsidiary of AbbVie and was previously acquired by Abbott in 2010.").)

wholly-owned subsidiary. For purposes of this litigation, AbbVie is thus a successor-in-interest to

Solvay Pharmaceuticals, Inc. and any statements made by Solvay Pharmaceuticals, Inc., or its

employees, should be admissible. As in *Sherif*, the incidental fact that AbbVie is a named defendant

but not its predecessor Solvay Pharmaceuticals Inc. should not preclude admission of this evidence.

### 2. Statements by paid consultants acting as party's agent may constitute a party admission

The FTC also plans to introduce into evidence several documents authored by consultants

retained by Defendants and concerning matters within the scope of the consultancy relationship,

including ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████ To qualify for the Rule 801(d)(2)(D) exemption to

hearsay, a statement must be (i) made by an agent, (ii) during the course of the agency, and (iii)

concern a matter within the scope of the agency relationship. *See* Fed. R. Evid. 801(d)(2)(D). Notably,

a "statement meeting the requirement of Rule 801(d)(2)(D) is not made inadmissible simply because

the statement was made to the employer and not a third person." 6 Michael H. Graham, Handbook of

Fed. Evid. § 801:23 (8th ed. 2017) (footnote omitted). To determine if the declarant is an agent of the

party-opponent, the Third Circuit scrutinizes "the level of control that is exercised over the manner in

which the representative accomplishes its assigned task." *Condus v. Howard Sav. Bank*, 986 F. Supp.

914, 916 (D.N.J. 1997) (citing *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d

1421, 1439 (3d Cir. 1994)). Applying this test, courts have held that consulting companies fall within

the agency relationship contemplated by Rule 801(d)(2)(D).[45] Moreover, "[w]here it seems clear that

---

[45] *See, e.g.*, *Tisa v. Beasley FM Acquisition Corp.*, 343 F. App'x 793, 798 (3d Cir. 2009) (holding radio
consultant to be and "agent independent contractor" whose statement were admissible against the
principal); *see also Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, No. 92 CIV. 1735, 1998 WL
118174, at *38-39 (S.D.N.Y. Mar. 16, 1998) (holding that "it is enough that a declarant be 'answerable

the party directed the speaker to study and appraise something, that fact alone should count heavily toward admitting whatever the speaker then says." 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:55 (4th ed. 2017).

### 3. Statements by Defendants' lawyers as their agent may constitute a party admission

The FTC plans to introduce into evidence numerous statements made by the attorneys responsible for prosecuting the '894 patent and for litigating the objectively baseless lawsuits filed against Teva and Perrigo on behalf of Defendants. Such statements are admissible into evidence as an admission by a party-opponent within the meaning of Rule 801(d)(2).

Federal Rules 801(d)(2)(C) and (D) exempt from the definition of hearsay statements that are "offered against an opposing party" and are made either by "a person whom the party authorized to make a statement on the subject" or "by the party's agent . . . on a matter within the scope of that relationship" made "while it existed." Fed. R. Evid. 801(d)(2). The rule is "phrased broadly" to encompass both statements to third persons and "statements by the agent to the principal." *See* Fed. R. Evid. 801(d)(2)(C) advisory committee's note (1972). The Third Circuit has found that where an attorney acts as an agent for their client, their authority to make out-of-court admissions is measured by the same tests of express or implied authority as would be applied to other agents, and where they meet these tests, such statements are admissible as evidentiary admissions. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir. 1993); *Gerhart v. Henry Disston & Sons*, 290 F.2d 778, 789

---

and directly responsible' to a supervisor" and finding an agency relationship between AT&T and McKinsey) (internal citation omitted); *Beck v. Haik*, 377 F.3d 624, 639-40 (6th Cir. 2004) (holding that statements by a consultant hired to provide risk assessment services were admissions because "[t]he statements dealt directly with the subject matter of the . . . contract . . . and were expressed during the course of that relationship"), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009); *United States ex rel. Remtech, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 97-CV-005424, 2000 WL 1171139, at *3 n.4 (9th Cir. Aug. 17, 2000) (unpublished opinion) (holding that a consultant's statement was a Rule 801(d)(2)(D) admission because the statement concerned "a matter that was the subject of his consultancy" and "was made during his employ").

(3d Cir. 1961) (citation omitted).

## F. Trial procedure issues

### 1. Availability of Defendants' witnesses to testify in the FTC's case-in-chief

A number of the FTC's identified trial witnesses are current employees and executives of Defendants that do not reside, or regularly transact business within 100 miles of this Court. The FTC has requested that Defendants present all of these witnesses at trial. In addition, if Defendants call any current or former employee or executive to testify in person at trial who is also on the FTC's witness list, the FTC requests that the Court require Defendants to make that witness available during the FTC's case-in-chief or else prohibit Defendants from calling that witness.

Federal Rule of Evidence 611(a) gives district courts broad authority to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence," and Federal Rule of Civil Procedure 1 provides that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Evid. 611(a); Fed. R. Civ. P. 1. In *Buchwald v. Renco Grp., Inc.*, the court noted that:

> To prevent unfairness and avoid wasting time, numerous courts have held that a party may not limit a witness that the party intends to call at trial from testifying only during its own case in chief. Instead, the party must either permit its opponent to directly examine the witness, so that both parties may elicit the witness's live testimony during their cases in chief, or rely itself on the witness's deposition testimony, so that neither party may elicit the witness's live testimony during its case in chief.

No. 13-CV-7948, 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014) (citing many cases).[46]

---

[46] *See also R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 273 (9th Cir. 1991) (upholding district court's discretion to exclude live witness testimony in defendant's case-in-chief when defendants did not make witnesses available in plaintiff's case-in-chief); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05-CV-633, 2009 WL 3415689, at *5 (S.D. Cal. Oct. 21, 2009) (holding that defendants' witnesses that were beyond court's power of subpoena could not testify in defendants' case-in-chief if they were not also made available for plaintiffs' case-in-chief); *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012, 2016 WL 6778853, at *2 (D. Colo. Nov. 16, 2016) (finding that

If the witnesses are not made available during the FTC's case-in-chief, the FTC at a minimum requests that its examination of any such witness during Defendants' case-in-chief be permitted to go beyond the scope of Defendants' direct examination of the witness, despite Federal Rule of Evidence 611(b)'s general limitation on cross-examination. To facilitate planning and an orderly presentation of evidence, the FTC requests that the Court order Defendants to provide notice of all witnesses that will be made available to testify in person during the FTC's case-in-chief twenty business days before the start of trial.

### 2. Designation of witnesses as adverse to the FTC

In addition to current employees of Defendants, the FTC anticipates calling several other fact witnesses at trial via live testimony, including: (1) former Besins executive Thomas MacAllister; and (2) Maureen Cavanaugh, an employee of third party Teva Pharmaceuticals, Inc., originally named as a defendant in this action in Count Two of the Complaint that has since been dismissed by the Court (*see* Dkt. 81). The FTC seeks a designation of these witnesses as adverse to the FTC, and requests permission to use leading questions with these witnesses during direct examination.

Under Federal Rule of Evidence 611(c), leading questions are permitted "when a party calls a hostile witness, an adverse witness, or a witness identified with an adverse party." Fed. R. Evid. 611(c). "The term 'witness identified with an adverse party' is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party." *United States v. McLaughlin*, No. 95-CR-113, 1998 WL 966014, at *1 (E.D. Pa. Nov. 19, 1998).[47] Here, each witness has interests aligned with or a demonstrated connection to Defendants,

---

defendants' refusal to commit to making their witnesses available in plaintiff's case-in-chief while reserving the option to call these witnesses live amounted to "unjustified 'gamesmanship'"); *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 806 (N.D. Ill. 2002) (excluding testimony from defendant's witness because he had refused to testify in plaintiffs' case in chief).

[47] *See also Vanemmerik v. The Ground Round, Inc.*, No. 97-CV-5923, 1998 WL 474106, at *1 (E.D. Pa. July 16, 1998) ("The phrase of the rule, 'witness identified with' an adverse party, is designed to

either in this claim or in the dismissed claim challenging the settlement of the objectively baseless litigation in which AbbVie and Teva are co-defendants. *See, e.g.*, *Fehr v. SUS-Q Cyber Charter Sch.*, No. 4:13-CV-01871, 2015 WL 6166627, at *3-4 (M.D. Pa. Oct. 20, 2015) (finding defendant's former CEO to be "a witness identified with an adverse party" because of her managerial role with defendant during the relevant time frame); *Thomas v. Landrum*, No. 11-CV-09275, 2014 WL 11370447, at *4 (N.D. Ill. Mar. 18, 2014) (granting leave to call all former defendants as adverse witnesses on grounds that "the former defendants have a contrary position and contrary interests" to the plaintiff).[48] The witnesses in these categories are represented by either Besins's or Teva's counsel, and each will be prepared by those counsel for their testimony. There is no concern that leading questions will allow the FTC to shape testimony or put words in the mouths of either of these witnesses. Instead, the use of leading questions will facilitate the efficient presentation of evidence.

Accordingly, the FTC requests an order designating Ms. Cavanaugh and Mr. MacAllister as adverse and permitting the FTC to use leading questions during direct examination of these witnesses. The pre-trial resolution of this issue will facilitate the FTC's trial preparations and expedite trial.

### 3. Moving exhibits into evidence

Consistent with this Court's Policies and Procedures, the FTC proposes that the Court allow either party to move or offer into evidence at any point during their case, subject to objection, any exhibit that they intend to rely on even if no witness has testified about the exhibit. That admitted evidence may then be relied upon in post-trial submissions. (*See* Judge Harvey Bartle III Policies and Procedures, at 11, ¶ 16. (June 2011))

---

enlarge the category of persons thus callable.") (quoting Fed. R. Evid. 611(c) Advisory Committee Notes).

[48] *See also Sadid v. Idaho State Univ.*, No. 4:11-CV-00103, 2013 WL 6383254, at *2-3 (D. Idaho Dec. 5, 2013) (granting plaintiff's motion to designate former defendants as hostile witnesses); *United States v. Uarte*, 175 F.2d 110, 113 (9th Cir. 1949) (holding that the district court did not abuse its discretion when it allowed a former defendant to be treated as an adverse witness).

### 4.    Schedule for closing arguments

To facilitate effectual and orderly presentations to the Court, the FTC proposes that closing

arguments and summations be deferred and that a separate hearing be scheduled for a date shortly after

the deadline for submission of the parties' respective findings of fact and conclusions of law.

## V.    List of Witnesses and Deposition Designations

The FTC's list of witnesses expected to be called at trial is attached as Appendix A. The FTC's

designation of videotaped trial testimony and investigational hearing testimony to be offered at trial or

into evidence is attached as Appendix B.

## VI.    Schedule of Exhibits

The FTC's schedule of exhibits to be offered into evidence at trial is attached as Appendix C.

## VII.    Estimate of Trial Length

The FTC anticipates that the trial will require approximately ten to twelve business days but

this estimate depends on the resolution of various outstanding issues related to the parties' proposed

lists of witnesses in addition to which of those witnesses Defendants' ultimately will bring to present

live testimony.


Dated: December 6, 2017         Respectfully submitted,

                                   */s/ Patricia M. McDermott*
                                   Patricia M. McDermott

                                   FEDERAL TRADE COMMISSION
                                   600 Pennsylvania Avenue, N.W.
                                   Washington, D.C. 20580
                                   (202) 326-2569
                                   pmcdermott@ftc.gov

# Appendix A

# Filed Under Seal

## APPENDIX A

## PLAINTIFF FEDERAL TRADE COMMISSION'S
## <u>TRIAL WITNESS LIST</u>

### I. Fact Witnesses the FTC Intends to Call

The FTC intends to call the witnesses listed below to testify concerning both liability and remedy issues, except Mr. Joseph Mahoney and Mr. Perry Siatis who will testify concerning liability issues only.

### A. Via Live Testimony

#### 1. Maureen Cavanaugh (permission to call as adverse witness requested)

Ms. Cavanaugh is Senior Vice President and Chief Operating Officer, North America, for Teva Pharmaceuticals. On information and belief, her home address is ███████████ █████████████████. The FTC expects Ms. Cavanaugh to testify live or, if not available, by video deposition.

The FTC anticipates that Ms. Cavanaugh will testify about the factors that a generic company considers before launching a product and Teva's actual plans, efforts, and estimated timelines to be ready to launch a generic AndroGel 1% product (whether AB- or BX-rated). She also is expected to testify concerning Teva's forecasts ████████████████████ ██████████████████████████████████████████ ██████ Teva's negotiations with its contract manufacturer, ████████████████ █████████ and the ultimate sale of Teva's generic AndroGel 1% product to ANI Pharmaceuticals, Inc.

#### 2. James B. Hynd (called as an adverse witness)

Mr. Hynd is the Vice President of Endo, Metabolic, GI Care, and Institutional Accounts at AbbVie Inc. On information and belief, his home address is ████████████████,

███████████████. The FTC has requested that AbbVie make Mr. Hynd available to testify live. If he is not made available in person by AbbVie, the FTC will present his testimony by video deposition.

Mr. Hynd has been one of the principle executives responsible for the AndroGel franchise at Solvay, Abbott, and AbbVie since 2000. The FTC anticipates that Mr. Hynd's testimony will show the importance of the AndroGel franchise to AbbVie, the expected timing of generic entry, and the projected and actual impact of the loss of exclusivity on AndroGel sales. His testimony also will show that AbbVie knew that the filing of the objectively baseless lawsuits against Teva and Perrigo in 2011 would trigger automatic 30-month stays on FDA approval and delay entry of their respective generic products. In addition, Mr. Hynd is expected to testify about: (1) the announcement of Unimed and Solvay's decision not to sue Perrigo in 2009 after determining that there was not a sufficient basis to file a patent infringement claim; (2)████████████████████████████████████████████████ ████████████████████████████; (3) the conclusion—shared with AbbVie's executive leadership—that ██████████████████████████ ████████████████████████████; and (4) the actions taken by AbbVie beginning in ██████████████████████████ ████████████████████████████ ████████████████████.

### 3. Frank Jaeger (called as an adverse witness)

Mr. Jaeger currently is a Regional Sales Manager and formerly an AndroGel Marketing Director for AbbVie Inc. On information and belief, his home address is ██████████ ████████████████. The FTC has requested that AbbVie make Mr. Jaeger

available to testify live. If he is not made available in person by AbbVie, the FTC will present his testimony by video deposition and investigational hearing transcript.

The FTC anticipates Mr. Jaeger's testimony will show AbbVie's monopoly power for AndroGel, based on the expected loss of sales in response to generic AndroGel 1% entry, its advantages as compared to other testosterone replacement therapy products, and AbbVie's pricing and discounting strategies for AndroGel. Mr. Jaeger also is expected to testify about the actions taken by AbbVie ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

### 4.    Thomas MacAllister (permission to call as an adverse witness requested)

Mr. MacAllister is the former President and Chief Executive Officer of BHR Pharma, a subsidiary of Besins Healthcare, Inc. On information and belief, Mr. MacAllister's business address is 233 Broadway, Suite 1750, New York, New York, 10279. The FTC expects Mr. MacAllister to testify live or, if not available, by video deposition.

The FTC anticipates Mr. MacAllister's testimony will show that Besins knew that the filing of the objectively baseless lawsuits against Teva and Perrigo in 2011 would trigger automatic 30-month stays on FDA approval and delay entry of their respective generic products. Mr. MacAllister also is expected to testify about: Besins's decision not to sue Perrigo for infringement of the '894 patent in 2009; ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███ ; the decisions to file objectively baseless lawsuits against both Teva and Perrigo for infringement of the '894 patent in 2011; and ████████████████████████████████████

██████████████████████████████████████.

### 5. Jeffrey Stewart (called as an adverse witness)

Mr. Stewart is the President, U.S. Commercial Operations of AbbVie Inc. On information and belief, his home address is ████████████████████████████████. The FTC has requested that AbbVie make Mr. Stewart available to testify live. If he is not made available in person by AbbVie, the FTC will present his testimony by video deposition.

The FTC anticipates Mr. Stewart will testify about: (1) information received from Solvay during the due diligence conducted before Abbott's acquisition of Solvay and the AndroGel franchise; (2) ████████████████████████████████████████ ████████████████████████████████; (3) meetings and communications with AbbVie's executive leadership ████████████████████████████████████ ████████████████████; and (4) the actions taken by AbbVie ████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████.

### 6. Marianne Sutcliffe (called as an adverse witness)

Ms. Sutcliffe currently is a Vice President of AbbVie Inc. On information and belief, her home address is ████████████████████████████████████. The FTC has requested that AbbVie make Ms. Sutcliffe available to testify live. If she is not made available in person by AbbVie, the FTC will present her testimony by video deposition.

The FTC anticipates Ms. Sutcliffe's testimony will show that Abbott acted in accordance with a belief that ████████████████████████ following Unimed, Solvay, and Besins's decision not to sue Perrigo for infringement of the '894 patent in 2009. Specifically, Ms. Sutcliffe is expected to testify that (1) ████████████████████████████

████████████████████████████████████████; (2) ████████████████████████████████████████

███████████████████████████; and (3) ███████████████████████████████████████

████████████████████████████████████.

## 7. Lisa Wortsmann (called as an adverse witness)

Ms. Wortsmann currently is the Commercial Controller of AbbVie Inc. On information

and belief, her home address is ████████████████████████████████████. The FTC has

requested that AbbVie make Ms. Wortsmann available to testify live. If she is not made available

in person by AbbVie, the FTC will present her testimony by video deposition.

The FTC anticipates Ms. Wortsmann's testimony will show that, ████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████. Ms. Wortsmann also is expected to testify about: the timing and process for

preparing AbbVie's annual and long range plans for AndroGel; ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████.

## 8. Custodians of records

The custodian of records for any party or non-party from whom documents or records

have been obtained to the extent necessary to demonstrate the authenticity or admissibility of

such documents or to the extent the necessary affidavits cannot be obtained.

**B.      Via Video Deposition or Investigational Hearing Transcript**

      **1.      Murray Kay**

Mr. Kay is the former Vice President of Finance and Chief Financial Officer, Solvay

Pharmaceuticals, Inc. and former Commercial Controller, Abbott Laboratories. On information

and belief, Mr. Kay's home address is ████████████████████████████████. The FTC

expects to present Mr. Kay's testimony by video deposition.

      The FTC expects to present Mr. Kay's testimony about the significant potential impact

resulting from the 2009 decision not to sue Perrigo for infringement of the '894 patent and

████████████████████████████████████████████████████████████████████

████████████████████████████. The FTC further expects to present Mr. Kay's

testimony regarding meetings with AbbVie's executive leadership ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

      **2.      Joseph A. Mahoney**

Mr. Mahoney is a partner with Mayer Brown LLP with offices located at 71 South

Wacker Drive, Chicago, Illinois, 60606. The FTC expects to present Mr. Mahoney's testimony

by video deposition.

      Mr. Mahoney was the attorney who prosecuted the '894 patent. The FTC expects to

present Mr. Mahoney's testimony showing that Defendants knew that the patent examiner would

only allow patent claims directed to the AndroGel formulation, and that he was involved in

discussions with ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████. The FTC further expects to
present Mr. Mahoney's testimony regarding his ████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████.

### 3. Perry Siatis (called as an adverse witness)

Mr. Siatis is in-house counsel and Vice President of Biotherapeutics and Legal for AbbVie
Inc. On information and belief, his home address is ████████████████████████████████
████. The FTC expects to present Mr. Siatis's testimony by investigational hearing transcript.

The FTC expects to present Mr. Siatis's testimony regarding the filing of the
infringement suit against Perrigo and AbbVie's ████████████████████████████████
████████████████████████████████████████████████
████████████. The FTC further expects to present Mr. Siatis's testimony about ████████████████
████████████████████████████████████████████████████.

### 4. Andrew Solomon

Mr. Solomon is a former Vice President and Assistant General Counsel of Perrigo
Company. On information and belief, his home address is ████████████████████████
████████████████████. The FTC expects to present Mr. Solomon's testimony by video
deposition.

The FTC expects to present Mr. Solomon's testimony showing that ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████. Mr. Solomon's testimony will also show that absent the objectively baseless patent infringement suit and settlement, Perrigo would have launched its generic AndroGel 1% product earlier because (a) ████████████████████████████ ███████████████████████████████████████, and (b) ███████ ██████████████████████████████████.

5. **Rule 30(b)(6) corporate designee(s) for Defendants AbbVie Inc., Abbott Laboratories, and Unimed Pharmaceuticals, LLC (called as an adverse witness)**

The FTC expects to present AbbVie's Rule 30(b)(6) corporate designee's testimony about: █████████████████████████████████████████ ████████████████████████; AbbVie's pricing and discounting for AndroGel; the companies' knowledge of the '894 patent prosecution; knowledge and impact of the 30-month stay of FDA approval; Defendants' decision not to sue Perrigo for patent infringement in 2009, including ██████████████████████████ ████████████████████████████████████████████████ █████████████████████; and the decisions to file objectively baseless lawsuits against both Teva and Perrigo for infringement of the '894 patent in 2011.

6. **Rule 30(b)(6) corporate designee for Defendant Besins Healthcare, Inc. (called as an adverse witness)**

The Rule 30(b)(6) corporate designee will testify about ██████████████████ ██████████████████████████; the company's knowledge of the '894 patent prosecution; Besins's knowledge of and the impact of the 30-month stay of FDA approval; the decision not to sue Perrigo for infringement of the '894 patent in 2009; Unimed and Besins's attempt to ███████████████████████████████████████████████

██████; and the decisions to file objectively baseless lawsuits against both Teva and Perrigo for infringement of the '894 patent in 2011.

## II.     Expert Witnesses the FTC Intends to Call

The FTC plans to call the following three experts to testify at trial concerning both liability and remedy issues, except Dr. Frances Hayes who will testify concerning liability issues only.

### 1.     Professor Carl Shapiro, Ph.D

Professor Shapiro is a Professor of Economics and the Transamerica Professor of Business Strategy at the Haas School of Business at the University of California at Berkeley, where he has taught since 1990. His business address is Haas School of Business, University of California, 2220 Piedmont Avenue, Berkeley, California, 94720. Professor Shapiro has served as a Senate-confirmed Member of the President's Council of Economic Advisers and has published extensively on antitrust issues in the pharmaceutical industry. Having spent nearly five years serving as the Deputy Assistant Attorney General for Economics in the Antitrust Division of the U.S. Department of Justice, Professor Shapiro has considerable experience in the application of economics to enforcement of the antitrust laws.

Based on his experience and analysis of the relevant evidence, Professor Shapiro will testify that both direct and indirect evidence indicate that Defendants had monopoly power in the relevant antitrust market at the time that Defendants filed their objectively baseless patent litigations in 2011. He will further testify that delay of generic entry due to the objectively baseless patent litigations allowed Defendants to maintain their monopoly power associated with AndroGel and avoid competition from generic products offered at much lower prices than branded AndroGel. He will explain that the option value of filing a patent infringement lawsuit

and triggering the statutory automatic 30-month stay of generic approval was high at the time Unimed, Solvay, and Besins chose not to file a patent infringement lawsuit against Perrigo in 2009. Professor Shapiro will further testify that the financial gain to Defendants from filing the objectively baseless patent litigations was ████████ through August 2017 and that this financial gain likely will continue to accrue at a rate of about ████████████████████ ████████████████████. In addition, Professor Shapiro will testify regarding his assessment and rebuttal of the reports and analysis presented by Defendants' economic expert.

### 2. Dr. Frances Hayes

Dr. Hayes is the Clinical Director of the Endocrine Division at Massachusetts General Hospital and her business address is Reproductive Endocrine Unit, Massachusetts General Hospital, 55 Fruit Street, Boston, Massachusetts, 02114. Based on her experience and analysis of the relevant evidence, Dr. Hayes will testify about the factors considered by physicians and patients in choosing a testosterone replacement formulation, the reasons that gels are the preferred form, and the reasons that AndroGel is the preferred drug of choice.

### 3. Kenneth Phelps

Mr. Phelps is the Founder, President, and Chief Executive Officer of Camargo Pharmaceutical Services, LLC and his business address is Camargo Pharmaceutical Services, 9825 Kenwood Road, Suite 203, Cincinnati, Ohio, 45242. Mr. Phelps has over 40 years of experience in the pharmaceutical industry, including a broad range of drug development experience for both branded and generic pharmaceuticals.

Mr. Phelps will testify based on his knowledge and experience to issues related to monetary equitable relief and liability, including the FDA pathways available to Teva and

Perrigo to seek approval of generic versions of AndroGel 1%, the Hatch-Waxman regulatory framework and its significance, therapeutic equivalence ratings, and FDA Citizen Petitions.

## III.    Rebuttal Witnesses If Needed

Throughout discovery, Defendants asserted privilege over and withheld evidence related to the filing and maintenance of the objectively baseless lawsuits they filed against Teva and Perrigo in 2011 and the decision not to sue Perrigo for infringement of the '894 patent in 2009. Accordingly, any attempt by Defendants at trial to rely upon their consultation with counsel in any way or otherwise invoke the advice of counsel concerning the filing and maintenance of the objectively baseless lawsuits against Teva and Perrigo in 2011 would be inappropriate and would result in a waiver of the privilege used to shield previously withheld documents and testimony. Should Defendants attempt to introduce such evidence and should the Court allow it, the FTC reserves the right to call in its rebuttal case the following witnesses (identified based on the information currently available to the FTC):

1.    Attorneys with Munger Tolles & Olson LLP (350 South Grand Avenue, Los Angeles, California, 90071) who provided advice to Defendants concerning Perrigo's and/or Teva's Paragraph IV certifications and the filing and maintenance of the objectively baseless lawsuits against Teva and Perrigo in 2011 for purported infringement of the '894 patent, including Jeffrey I. Weinberger and Ted G. Dane.

2.    Attorneys with Foley & Lardner LLP (3000 K Street, N.W., Suite 600, Washington, D.C., 20007) who provided advice to Defendants concerning Perrigo's and/or Teva's Paragraph IV certifications, ████████████████████, and the filing and maintenance of the objectively baseless lawsuits against Teva and Perrigo in 2011 for purported infringement of the '894 patent, including ███████████, Stephen A. Bent, and Doug H.

Carsten (now with Wilson Sonsini Goodrich & Rosati).

3.      Attorneys with ███████████████████████████████████
███████████████████████████ who provided advice to Defendants concerning
Perrigo's and/or Teva's Paragraph IV certifications and the possible infringement of the '894
patent by Perrigo's and/or Teva's products, including ███████████████████████
██████████████████.

4.      Attorneys with ████████████████████████████████
████████████████ who provided advice to Defendants concerning Perrigo's or Teva's
Paragraph IV certifications and the possible infringement of the '894 patent by Perrigo's and/or
Teva's products.

5.      In-house counsel for the AbbVie Defendants involved in the assessment of
Perrigo's or Teva's Paragraph IV certifications and/or the filing and maintenance of the
objectively baseless lawsuits against Teva and Perrigo in 2011, including ████████████
██████████████████████████████.

6.      In-house counsel for the AbbVie Defendants or their predecessor companies
involved in or with knowledge of the assessment of Perrigo's Paragraph IV certifications and the
decision not to sue Perrigo in 2009, including ███████████████████████.

7.      In-house counsel and employees of Besins Healthcare, Inc. or its European parent
who were involved in, consulted concerning, or received reports about the decision whether to
sue Teva and Perrigo for purported infringement of the '894 patent, including ██████
██████████████████████████████.

# Appendix B

| | |
|---|---|
| Pg: 10 Ln: 2 - 7 | Pg: 123 Ln: 9 - Pg: 124 Ln: 11 |
| Pg: 10 Ln: 14 - Pg: 11 Ln: 6 | Pg: 125 Ln: 12 - 16 |
| Pg: 11 Ln: 22 - Pg: 13 Ln: 2 | Pg: 125 Ln: 22 - Pg: 126 Ln: 8 |
| Pg: 14 Ln: 3 - Pg: 16 Ln: 16 | Pg: 127 Ln: 3 - 10 |
| Pg: 16 Ln: 23 - Pg: 17 Ln: 10 | Pg: 127 Ln: 13 - 24 |
| Pg: 17 Ln: 14 - 25 | Pg: 128 Ln: 17 - Pg: 129 Ln: 4 |
| Pg: 20 Ln: 3 - Pg: 21 Ln: 2 | Pg: 129 Ln: 9 - 17 |
| Pg: 27 Ln: 15 - Pg: 28 Ln: 25 | Pg: 129 Ln: 21 - 22 |
| Pg: 32 Ln: 2 - 19 | Pg: 131 Ln: 3 - 6 |
| Pg: 33 Ln: 5 - Pg: 34 Ln: 13 | Pg: 131 Ln: 10 - 11 |
| Pg: 39 Ln: 7 - 11 | Pg: 134 Ln: 5 - Pg: 135 Ln: 5 |
| Pg: 53 Ln: 24 - Pg: 54 Ln: 11 | Pg: 136 Ln: 16 - 20 |
| Pg: 55 Ln: 8 - Pg: 61 Ln: 24 | Pg: 136 Ln: 23 - Pg: 137 Ln: 2 |
| Pg: 62 Ln: 7 - 21 | Pg: 138 Ln: 11 - 13 |
| Pg: 99 Ln: 13 - 21 | Pg: 138 Ln: 16 - 24 |
| Pg: 100 Ln: 22 - Pg: 101 Ln: 18 | Pg: 138 Ln: 25 - Pg: 139 Ln: 7 |
| Pg: 101 Ln: 21 - Pg: 104 Ln: 20 | Pg: 139 Ln: 11 - 19 |
| Pg: 104 Ln: 22 | Pg: 139 Ln: 22 - Pg: 140 Ln: 2 |
| Pg: 106 Ln: 11 - 14 | Pg: 141 Ln: 22 - 25 |
| Pg: 106 Ln: 17 - Pg: 107 Ln: 2 | Pg: 142 Ln: 4 - 15 |
| Pg: 107 Ln: 4 - 6 | Pg: 142 Ln: 18 - Pg: 143 Ln: 12 |
| Pg: 107 Ln: 18 - Pg: 108 Ln: 6 | Pg: 143 Ln: 16 - Pg: 144 Ln: 7 |
| Pg: 109 Ln: 12 - Pg: 110 Ln: 9 | Pg: 144 Ln: 10 - 14 |
| Pg: 111 Ln: 13 - Pg: 112 Ln: 2 | Pg: 144 Ln: 17 - Pg: 145 Ln: 7 |
| Pg: 112 Ln: 5 - 23 | Pg: 145 Ln: 11 - Pg: 146 Ln: 22 |
| Pg: 113 Ln: 2 - 15 | Pg: 146 Ln: 24 - Pg: 147 Ln: 21 |
| Pg: 113 Ln: 18 - Pg: 114 Ln: 9 | Pg: 147 Ln: 24 |
| Pg: 114 Ln: 11 - Pg: 116 Ln: 6 | Pg: 148 Ln: 3 - 5 |
| Pg: 116 Ln: 9 - 18 | Pg: 148 Ln: 8 - 14 |
| Pg: 116 Ln: 21 - Pg: 117 Ln: 3 | Pg: 148 Ln: 16 - Pg: 149 Ln: 2 |
| Pg: 117 Ln: 18 - Pg: 118 Ln: 3 | Pg: 149 Ln: 20 - 22 |
| Pg: 118 Ln: 4 - 19 | Pg: 149 Ln: 25 |
| Pg: 119 Ln: 4 - Pg: 120 Ln: 2 | Pg: 150 Ln: 17 - 19 |
| Pg: 120 Ln: 7 - 12 | Pg: 150 Ln: 21 - 25 |
| Pg: 121 Ln: 16 - 18 | Pg: 151 Ln: 7 - 10 |
| Pg: 121 Ln: 22 - Pg: 122 Ln: 4 | Pg: 151 Ln: 16 - Pg: 152 Ln: 11 |
| Pg: 122 Ln: 7 - 18 | Pg: 152 Ln: 14 |
| Pg: 122 Ln: 22 - Pg: 123 Ln: 2 | Pg: 152 Ln: 16 - 25 |

| | |
|---|---|
| Pg: 153 Ln: 4 - 7 | Pg: 191 Ln: 8 |
| Pg: 155 Ln: 12 - Pg: 157 Ln: 23 | Pg: 191 Ln: 23 - Pg: 192 Ln: 3 |
| Pg: 158 Ln: 8 - 22 | Pg: 193 Ln: 9 - 22 |
| Pg: 159 Ln: 17 - Pg: 160 Ln: 6 | Pg: 193 Ln: 24 - 25 |
| Pg: 160 Ln: 16 - Pg: 161 Ln: 9 | Pg: 194 Ln: 16 - 19 |
| Pg: 161 Ln: 11 - 14 | Pg: 195 Ln: 2 - Pg: 196 Ln: 16 |
| Pg: 164 Ln: 13 - 16 | Pg: 196 Ln: 18 - 24 |
| Pg: 164 Ln: 18 - 20 | Pg: 197 Ln: 2 - 11 |
| Pg: 165 Ln: 3 - 12 | Pg: 197 Ln: 13 - 18 |
| Pg: 165 Ln: 15 - Pg: 166 Ln: 16 | Pg: 197 Ln: 20 - Pg: 198 Ln: 19 |
| Pg: 166 Ln: 18 - Pg: 167 Ln: 8 | Pg: 198 Ln: 21 - 23 |
| Pg: 167 Ln: 11 - Pg: 169 Ln: 8 | Pg: 203 Ln: 3 - 4 |
| Pg: 169 Ln: 10 - 20 | Pg: 203 Ln: 6 - 23 |
| Pg: 170 Ln: 6 - Pg: 171 Ln: 9 | Pg: 203 Ln: 25 - Pg: 204 Ln: 23 |
| Pg: 171 Ln: 12 - 23 | Pg: 204 Ln: 25 - Pg: 205 Ln: 15 |
| Pg: 172 Ln: 2 - 11 | Pg: 206 Ln: 3 - 6 |
| Pg: 172 Ln: 15 - Pg: 173 Ln: 5 | Pg: 206 Ln: 8 - Pg: 207 Ln: 7 |
| Pg: 173 Ln: 7 - 14 | Pg: 207 Ln: 9 - Pg: 210 Ln: 3 |
| Pg: 173 Ln: 25 - Pg: 174 Ln: 7 | Pg: 210 Ln: 10 - 21 |
| Pg: 174 Ln: 9 - 15 | Pg: 211 Ln: 11 - Pg: 212 Ln: 12 |
| Pg: 174 Ln: 17 - 22 | Pg: 212 Ln: 14 - 18 |
| Pg: 174 Ln: 24 - Pg: 175 Ln: 10 | Pg: 212 Ln: 20 - 25 |
| Pg: 176 Ln: 5 - 12 | Pg: 213 Ln: 3 - 8 |
| Pg: 177 Ln: 11 - 17 | Pg: 213 Ln: 11 - 19 |
| Pg: 177 Ln: 18 - 21 | Pg: 213 Ln: 21 - Pg: 214 Ln: 5 |
| Pg: 177 Ln: 23 - Pg: 178 Ln: 5 | Pg: 214 Ln: 7 - 17 |
| Pg: 178 Ln: 7 | Pg: 214 Ln: 19 - Pg: 215 Ln: 2 |
| Pg: 181 Ln: 13 - Pg: 182 Ln: 7 | Pg: 215 Ln: 4 - 14 |
| Pg: 182 Ln: 21 - 24 | Pg: 215 Ln: 22 - Pg: 216 Ln: 7 |
| Pg: 183 Ln: 2 - Pg: 184 Ln: 13 | Pg: 218 Ln: 4 - Pg: 219 Ln: 7 |
| Pg: 184 Ln: 23 - Pg: 185 Ln: 6 | Pg: 226 Ln: 3 - 8 |
| Pg: 185 Ln: 8 - 11 | Pg: 226 Ln: 10 - Pg: 228 Ln: 17 |
| Pg: 186 Ln: 12 - Pg: 188 Ln: 12 | Pg: 229 Ln: 6 - 25 |
| Pg: 188 Ln: 14 - 21 | Pg: 230 Ln: 15 - Pg: 231 Ln: 6 |
| Pg: 188 Ln: 24 - 25 | Pg: 231 Ln: 8 - Pg: 232 Ln: 18 |
| Pg: 189 Ln: 3 - 8 | Pg: 232 Ln: 20 - Pg: 234 Ln: 15 |
| Pg: 189 Ln: 10 - 11 | Pg: 234 Ln: 17 - Pg: 235 Ln: 21 |
| Pg: 190 Ln: 23 - Pg: 191 Ln: 6 | Pg: 236 Ln: 9 - Pg: 237 Ln: 7 |

| | |
|---|---|
| Pg: 237 Ln: 9 - 25 | Pg: 270 Ln: 23 - Pg: 272 Ln: 5 |
| Pg: 238 Ln: 20 - 21 | Pg: 272 Ln: 7 - 16 |
| Pg: 239 Ln: 5 - 15 | Pg: 277 Ln: 6 - Pg: 282 Ln: 13 |
| Pg: 239 Ln: 18 - Pg: 240 Ln: 15 | Pg: 282 Ln: 16 - Pg: 283 Ln: 5 |
| Pg: 240 Ln: 17 | Pg: 296 Ln: 6 - 9 |
| Pg: 242 Ln: 8 - Pg: 243 Ln: 8 | Pg: 297 Ln: 20 - Pg: 298 Ln: 12 |
| Pg: 243 Ln: 10 - 20 | Pg: 324 Ln: 2 - 7 |
| Pg: 243 Ln: 22 - Pg: 244 Ln: 18 | Pg: 324 Ln: 9 - 14 |
| Pg: 244 Ln: 20 - Pg: 254 Ln: 4 | Pg: 324 Ln: 16 - 23 |
| Pg: 254 Ln: 6 - 19 | Pg: 324 Ln: 25 - Pg: 325 Ln: 2 |
| Pg: 256 Ln: 13 - Pg: 257 Ln: 14 | Pg: 325 Ln: 6 - 9 |
| Pg: 257 Ln: 22 - 23 | Pg: 325 Ln: 12 - 15 |
| Pg: 257 Ln: 25 - Pg: 258 Ln: 24 | Pg: 326 Ln: 14 - 17 |
| Pg: 264 Ln: 11 - Pg: 265 Ln: 22 | Pg: 326 Ln: 20 - Pg: 327 Ln: 9 |
| Pg: 266 Ln: 25 - Pg: 267 Ln: 4 | Pg: 327 Ln: 12 - Pg: 328 Ln: 3 |
| Pg: 267 Ln: 6 - Pg: 270 Ln: 10 | Pg: 328 Ln: 9 - Pg: 329 Ln: 4 |

| | |
|---|---|
| Pg: 9 Ln: 10 - 12 | Pg: 104 Ln: 18 - 21 |
| Pg: 9 Ln: 17 - Pg: 10 Ln: 7 | Pg: 105 Ln: 2 - 9 |
| Pg: 10 Ln: 21 - 25 | Pg: 105 Ln: 13 - 19 |
| Pg: 11 Ln: 11 - 24 | Pg: 106 Ln: 10 - 14 |
| Pg: 13 Ln: 12 - Pg: 15 Ln: 9 | Pg: 106 Ln: 22 - Pg: 107 Ln: 4 |
| Pg: 15 Ln: 18 - Pg: 16 Ln: 20 | Pg: 107 Ln: 7 - 11 |
| Pg: 17 Ln: 9 - Pg: 18 Ln: 2 | Pg: 109 Ln: 5 - 12 |
| Pg: 18 Ln: 10 - Pg: 19 Ln: 21 | Pg: 109 Ln: 15 - 19 |
| Pg: 20 Ln: 18 - Pg: 23 Ln: 13 | Pg: 109 Ln: 21 - Pg: 110 Ln: 1 |
| Pg: 23 Ln: 17 - Pg: 25 Ln: 18 | Pg: 110 Ln: 3 - 7 |
| Pg: 26 Ln: 2 - Pg: 27 Ln: 1 | Pg: 110 Ln: 9 - Pg: 111 Ln: 1 |
| Pg: 27 Ln: 15 - 23 | Pg: 111 Ln: 4 - 6 |
| Pg: 28 Ln: 6 - 15 | Pg: 111 Ln: 23 - 25 |
| Pg: 29 Ln: 1 - 12 | Pg: 112 Ln: 9 - 10 |
| Pg: 35 Ln: 23 - Pg: 36 Ln: 15 | Pg: 113 Ln: 5 - Pg: 114 Ln: 8 |
| Pg: 38 Ln: 20 - Pg: 39 Ln: 2 | Pg: 116 Ln: 5 - 8 |
| Pg: 48 Ln: 24 - Pg: 49 Ln: 9 | Pg: 116 Ln: 13 - Pg: 117 Ln: 6 |
| Pg: 50 Ln: 14 - 23 | Pg: 117 Ln: 13 - 23 |
| Pg: 52 Ln: 11 - 24 | Pg: 118 Ln: 7 - 19 |
| Pg: 57 Ln: 2 - 15 | Pg: 119 Ln: 13 - 19 |
| Pg: 58 Ln: 20 - Pg: 59 Ln: 2 | Pg: 120 Ln: 6 - 18 |
| Pg: 59 Ln: 14 - 15 | Pg: 122 Ln: 2 - 22 |
| Pg: 60 Ln: 3 - Pg: 61 Ln: 1 | Pg: 122 Ln: 25 - Pg: 123 Ln: 6 |
| Pg: 75 Ln: 5 - Pg: 76 Ln: 18 | Pg: 123 Ln: 9 - Pg: 124 Ln: 1 |
| Pg: 77 Ln: 3 - 15 | Pg: 124 Ln: 5 |
| Pg: 77 Ln: 23 - 24 | Pg: 124 Ln: 11 - 18 |
| Pg: 78 Ln: 1 | Pg: 126 Ln: 16 - 20 |
| Pg: 78 Ln: 8 - 18 | Pg: 130 Ln: 19 - 25 |
| Pg: 80 Ln: 13 - 18 | Pg: 131 Ln: 7 - 25 |
| Pg: 84 Ln: 4 - 13 | Pg: 132 Ln: 3 - 11 |
| Pg: 85 Ln: 21 - Pg: 86 Ln: 7 | Pg: 132 Ln: 23 - Pg: 133 Ln: 5 |
| Pg: 86 Ln: 24 - Pg: 87 Ln: 19 | Pg: 134 Ln: 12 - 21 |
| Pg: 88 Ln: 18 - 21 | Pg: 135 Ln: 7 - 25 |
| Pg: 89 Ln: 14 - Pg: 90 Ln: 15 | Pg: 137 Ln: 9 - 18 |
| Pg: 95 Ln: 15 - Pg: 96 Ln: 11 | Pg: 138 Ln: 2 - 13 |
| Pg: 97 Ln: 5 - Pg: 98 Ln: 5 | Pg: 138 Ln: 19 - Pg: 139 Ln: 6 |
| Pg: 102 Ln: 5 - 21 | Pg: 139 Ln: 9 - 22 |
| Pg: 103 Ln: 14 - 23 | Pg: 140 Ln: 1 - 15 |

| | |
|---|---|
| Pg: 140 Ln: 18 - 20 | Pg: 201 Ln: 17 - 18 |
| Pg: 145 Ln: 22 - Pg: 146 Ln: 17 | Pg: 201 Ln: 21 - 25 |
| Pg: 150 Ln: 6 - 9 | Pg: 202 Ln: 3 - Pg: 203 Ln: 10 |
| Pg: 150 Ln: 12 - Pg: 151 Ln: 22 | Pg: 203 Ln: 14 - 18 |
| Pg: 151 Ln: 25 - Pg: 152 Ln: 11 | Pg: 204 Ln: 16 - Pg: 205 Ln: 1 |
| Pg: 152 Ln: 15 - 20 | Pg: 205 Ln: 3 - 16 |
| Pg: 153 Ln: 1 - 16 | Pg: 205 Ln: 18 - Pg: 208 Ln: 12 |
| Pg: 154 Ln: 22 - Pg: 155 Ln: 9 | Pg: 208 Ln: 14 - 18 |
| Pg: 155 Ln: 16 - 20 | Pg: 212 Ln: 11 - Pg: 213 Ln: 8 |
| Pg: 156 Ln: 15 - Pg: 157 Ln: 4 | Pg: 213 Ln: 12 - Pg: 214 Ln: 9 |
| Pg: 158 Ln: 4 - 13 | Pg: 215 Ln: 10 - 13 |
| Pg: 158 Ln: 15 - 21 | Pg: 216 Ln: 17 - Pg: 217 Ln: 10 |
| Pg: 158 Ln: 23 - Pg: 159 Ln: 11 | Pg: 218 Ln: 24 - Pg: 219 Ln: 6 |
| Pg: 159 Ln: 16 - 25 | Pg: 219 Ln: 8 - 10 |
| Pg: 160 Ln: 7 - 11 | Pg: 219 Ln: 12 |
| Pg: 160 Ln: 15 - 18 | Pg: 219 Ln: 21 - 23 |
| Pg: 161 Ln: 20 - Pg: 162 Ln: 4 | Pg: 220 Ln: 1 - 2 |
| Pg: 166 Ln: 25 - Pg: 167 Ln: 5 | Pg: 221 Ln: 8 - 14 |
| Pg: 167 Ln: 14 - 19 | Pg: 221 Ln: 17 - Pg: 222 Ln: 13 |
| Pg: 169 Ln: 4 - 7 | Pg: 222 Ln: 24 - Pg: 223 Ln: 1 |
| Pg: 174 Ln: 6 - Pg: 175 Ln: 3 | Pg: 223 Ln: 4 - 12 |
| Pg: 175 Ln: 8 - Pg: 177 Ln: 11 | Pg: 224 Ln: 3 - 8 |
| Pg: 177 Ln: 21 - Pg: 180 Ln: 12 | Pg: 224 Ln: 12 - 21 |
| Pg: 180 Ln: 24 - Pg: 181 Ln: 1 | Pg: 224 Ln: 24 - 25 |
| Pg: 181 Ln: 7 - 8 | Pg: 225 Ln: 12 - 17 |
| Pg: 181 Ln: 14 - Pg: 183 Ln: 5 | Pg: 226 Ln: 4 - 5 |
| Pg: 184 Ln: 8 - 23 | Pg: 226 Ln: 7 - 13 |
| Pg: 184 Ln: 25 - Pg: 185 Ln: 8 | Pg: 226 Ln: 15 - Pg: 227 Ln: 5 |
| Pg: 185 Ln: 13 - Pg: 186 Ln: 6 | Pg: 227 Ln: 8 - 11 |
| Pg: 191 Ln: 8 - 12 | Pg: 228 Ln: 1 - Pg: 229 Ln: 3 |
| Pg: 191 Ln: 16 - 25 | Pg: 231 Ln: 20 - Pg: 232 Ln: 3 |
| Pg: 192 Ln: 2 - Pg: 196 Ln: 3 | Pg: 233 Ln: 5 - Pg: 234 Ln: 2 |
| Pg: 196 Ln: 5 - 6 | Pg: 234 Ln: 13 - Pg: 235 Ln: 4 |
| Pg: 197 Ln: 10 - 22 | Pg: 236 Ln: 8 - 16 |
| Pg: 199 Ln: 8 - 9 | Pg: 236 Ln: 20 - 24 |
| Pg: 199 Ln: 11 - 17 | Pg: 237 Ln: 17 - Pg: 238 Ln: 3 |
| Pg: 199 Ln: 20 - Pg: 200 Ln: 16 | Pg: 239 Ln: 7 - 23 |
| Pg: 200 Ln: 19 - 20 | Pg: 240 Ln: 1 - 25 |

| | |
|---|---|
| Pg: 241 Ln: 2 - 10 | Pg: 269 Ln: 13 - Pg: 270 Ln: 13 |
| Pg: 241 Ln: 13 - Pg: 242 Ln: 2 | Pg: 270 Ln: 24 - Pg: 271 Ln: 5 |
| Pg: 242 Ln: 5 - 8 | Pg: 272 Ln: 12 - Pg: 273 Ln: 5 |
| Pg: 242 Ln: 18 - 20 | Pg: 273 Ln: 9 - 12 |
| Pg: 242 Ln: 22 | Pg: 274 Ln: 20 - 22 |
| Pg: 243 Ln: 12 - 14 | Pg: 275 Ln: 1 - 23 |
| Pg: 244 Ln: 1 - 3 | Pg: 276 Ln: 1 - 9 |
| Pg: 244 Ln: 11 - 15 | Pg: 276 Ln: 11 - Pg: 277 Ln: 24 |
| Pg: 245 Ln: 2 - 18 | Pg: 278 Ln: 2 - 9 |
| Pg: 245 Ln: 21 - Pg: 246 Ln: 1 | Pg: 279 Ln: 2 |
| Pg: 246 Ln: 4 - Pg: 247 Ln: 10 | Pg: 279 Ln: 10 - Pg: 281 Ln: 1 |
| Pg: 247 Ln: 13 - Pg: 248 Ln: 3 | Pg: 281 Ln: 7 - Pg: 282 Ln: 1 |
| Pg: 248 Ln: 5 - 21 | Pg: 282 Ln: 4 - 8 |
| Pg: 248 Ln: 24 - 25 | Pg: 282 Ln: 11 - 12 |
| Pg: 249 Ln: 24 - Pg: 250 Ln: 20 | Pg: 283 Ln: 3 - 19 |
| Pg: 250 Ln: 24 - Pg: 251 Ln: 19 | Pg: 284 Ln: 1 - Pg: 285 Ln: 7 |
| Pg: 251 Ln: 23 - Pg: 252 Ln: 4 | Pg: 285 Ln: 20 - Pg: 286 Ln: 15 |
| Pg: 252 Ln: 7 - 14 | Pg: 288 Ln: 1 - 5 |
| Pg: 252 Ln: 17 - 23 | Pg: 288 Ln: 16 - Pg: 289 Ln: 9 |
| Pg: 252 Ln: 25 - Pg: 254 Ln: 4 | Pg: 289 Ln: 16 - 25 |
| Pg: 254 Ln: 7 - Pg: 256 Ln: 19 | Pg: 290 Ln: 9 - 12 |
| Pg: 256 Ln: 22 - Pg: 257 Ln: 16 | Pg: 290 Ln: 16 - 20 |
| Pg: 258 Ln: 18 - Pg: 259 Ln: 16 | Pg: 290 Ln: 25 - Pg: 291 Ln: 8 |
| Pg: 260 Ln: 9 - Pg: 261 Ln: 2 | Pg: 291 Ln: 18 - Pg: 292 Ln: 5 |
| Pg: 261 Ln: 5 - 12 | Pg: 292 Ln: 11 - Pg: 293 Ln: 5 |
| Pg: 264 Ln: 13 - 19 | Pg: 293 Ln: 10 - 20 |
| Pg: 265 Ln: 4 - 18 | Pg: 293 Ln: 22 - 23 |
| Pg: 265 Ln: 21 - 22 | Pg: 294 Ln: 24 - Pg: 295 Ln: 13 |
| Pg: 266 Ln: 1 - 16 | Pg: 295 Ln: 16 - 23 |
| Pg: 266 Ln: 18 - Pg: 267 Ln: 2 | Pg: 296 Ln: 1 - 13 |
| Pg: 267 Ln: 5 - Pg: 268 Ln: 21 | Pg: 296 Ln: 18 - Pg: 297 Ln: 16 |
| Pg: 268 Ln: 24 - Pg: 269 Ln: 5 | Pg: 300 Ln: 2 - Pg: 303 Ln: 4 |

| | |
|---|---|
| Pg: 6 Ln: 10 - 13 | Pg: 126 Ln: 19 - Pg: 127 Ln: 1 |
| Pg: 21 Ln: 4 - 10 | Pg: 127 Ln: 4 - 5 |
| Pg: 94 Ln: 23 - Pg: 96 Ln: 7 | Pg: 127 Ln: 18 - 19 |
| Pg: 96 Ln: 18 - Pg: 97 Ln: 2 | Pg: 127 Ln: 22 - Pg: 128 Ln: 10 |
| Pg: 97 Ln: 11 - 19 | Pg: 128 Ln: 13 - Pg: 129 Ln: 10 |
| Pg: 98 Ln: 8 - 19 | Pg: 131 Ln: 10 - 12 |
| Pg: 99 Ln: 8 - 10 | Pg: 135 Ln: 3 - 8 |
| Pg: 99 Ln: 25 - Pg: 100 Ln: 5 | Pg: 136 Ln: 25 - Pg: 137 Ln: 12 |
| Pg: 102 Ln: 20 - Pg: 103 Ln: 2 | Pg: 137 Ln: 18 - 21 |
| Pg: 104 Ln: 13 - 16 | Pg: 138 Ln: 8 - 10 |
| Pg: 104 Ln: 19 - Pg: 105 Ln: 12 | Pg: 138 Ln: 17 - 22 |
| Pg: 105 Ln: 18 - Pg: 106 Ln: 2 | Pg: 139 Ln: 24 - Pg: 140 Ln: 6 |
| Pg: 106 Ln: 17 - Pg: 107 Ln: 5 | Pg: 140 Ln: 9 - Pg: 141 Ln: 13 |
| Pg: 108 Ln: 15 - 16 | Pg: 144 Ln: 25 - Pg: 145 Ln: 11 |
| Pg: 109 Ln: 2 - 8 | Pg: 145 Ln: 21 - 24 |
| Pg: 109 Ln: 14 - 15 | Pg: 146 Ln: 22 - 24 |
| Pg: 109 Ln: 19 - Pg: 110 Ln: 9 | Pg: 147 Ln: 2 - Pg: 148 Ln: 18 |
| Pg: 111 Ln: 25 - Pg: 112 Ln: 3 | Pg: 148 Ln: 22 - Pg: 149 Ln: 11 |
| Pg: 112 Ln: 22 - 24 | Pg: 151 Ln: 16 - Pg: 152 Ln: 1 |
| Pg: 113 Ln: 1 - 8 | Pg: 152 Ln: 4 - Pg: 154 Ln: 4 |
| Pg: 113 Ln: 11 - 17 | Pg: 154 Ln: 7 - 25 |
| Pg: 113 Ln: 19 - 22 | Pg: 155 Ln: 18 - Pg: 156 Ln: 24 |
| Pg: 113 Ln: 24 | Pg: 158 Ln: 16 - Pg: 160 Ln: 9 |
| Pg: 115 Ln: 2 - 13 | Pg: 161 Ln: 2 - 17 |
| Pg: 116 Ln: 5 - 13 | Pg: 162 Ln: 2 - 5 |
| Pg: 116 Ln: 16 - 17 | Pg: 162 Ln: 16 - 22 |
| Pg: 117 Ln: 12 - 22 | Pg: 163 Ln: 10 - 14 |
| Pg: 117 Ln: 24 - Pg: 118 Ln: 14 | Pg: 163 Ln: 17 - Pg: 164 Ln: 16 |
| Pg: 118 Ln: 19 - 21 | Pg: 165 Ln: 13 - Pg: 167 Ln: 5 |
| Pg: 118 Ln: 24 - Pg: 120 Ln: 3 | Pg: 167 Ln: 8 - 13 |
| Pg: 122 Ln: 19 - Pg: 123 Ln: 5 | Pg: 167 Ln: 15 - 19 |
| Pg: 123 Ln: 9 - 21 | Pg: 167 Ln: 22 - Pg: 169 Ln: 2 |
| Pg: 124 Ln: 2 - 3 | Pg: 169 Ln: 4 - Pg: 171 Ln: 6 |
| Pg: 124 Ln: 5 - 6 | Pg: 171 Ln: 9 - 11 |
| Pg: 124 Ln: 8 - 10 | Pg: 171 Ln: 14 - 15 |
| Pg: 124 Ln: 12 - 18 | Pg: 173 Ln: 23 - Pg: 174 Ln: 10 |
| Pg: 124 Ln: 21 - Pg: 125 Ln: 5 | |

| | |
|---|---|
| Pg: 5 Ln: 10 - 13 | Pg: 41 Ln: 6 - 10 |
| Pg: 6 Ln: 24 - Pg: 7 Ln: 15 | Pg: 41 Ln: 12 - 13 |
| Pg: 8 Ln: 6 - Pg: 9 Ln: 2 | Pg: 42 Ln: 18 - 21 |
| Pg: 9 Ln: 15 - 24 | Pg: 43 Ln: 1 - 7 |
| Pg: 10 Ln: 2 - 12 | Pg: 43 Ln: 24 - Pg: 44 Ln: 9 |
| Pg: 10 Ln: 15 - 22 | Pg: 44 Ln: 13 - Pg: 45 Ln: 18 |
| Pg: 12 Ln: 11 - Pg: 17 Ln: 2 | Pg: 46 Ln: 1 - 9 |
| Pg: 17 Ln: 8 - Pg: 19 Ln: 5 | Pg: 47 Ln: 2 - 4 |
| Pg: 19 Ln: 15 - 16 | Pg: 47 Ln: 12 - Pg: 48 Ln: 11 |
| Pg: 19 Ln: 22 - Pg: 20 Ln: 11 | Pg: 48 Ln: 16 - 19 |
| Pg: 20 Ln: 18 - Pg: 21 Ln: 3 | Pg: 48 Ln: 21 - Pg: 49 Ln: 7 |
| Pg: 28 Ln: 20 - Pg: 29 Ln: 14 | Pg: 49 Ln: 9 |
| Pg: 30 Ln: 3 - 18 | Pg: 50 Ln: 20 - Pg: 51 Ln: 7 |
| Pg: 31 Ln: 2 - 19 | Pg: 51 Ln: 9 - Pg: 52 Ln: 9 |
| Pg: 31 Ln: 24 - Pg: 32 Ln: 4 | Pg: 52 Ln: 12 - 18 |
| Pg: 32 Ln: 9 - Pg: 33 Ln: 2 | Pg: 52 Ln: 20 - Pg: 53 Ln: 18 |
| Pg: 33 Ln: 5 - 7 | Pg: 54 Ln: 2 - 3 |
| Pg: 33 Ln: 25 - Pg: 34 Ln: 9 | Pg: 54 Ln: 14 - Pg: 55 Ln: 1 |
| Pg: 36 Ln: 25 - Pg: 37 Ln: 14 | Pg: 55 Ln: 15 - Pg: 58 Ln: 13 |
| Pg: 37 Ln: 18 - 20 | Pg: 58 Ln: 20 - 22 |
| Pg: 37 Ln: 23 - Pg: 38 Ln: 6 | Pg: 58 Ln: 24 - Pg: 59 Ln: 6 |
| Pg: 38 Ln: 9 - 17 | Pg: 59 Ln: 15 - 17 |
| Pg: 38 Ln: 19 - 23 | Pg: 60 Ln: 2 - Pg: 63 Ln: 19 |
| Pg: 39 Ln: 1 - 11 | Pg: 64 Ln: 5 - 10 |
| Pg: 39 Ln: 14 - Pg: 40 Ln: 13 | Pg: 64 Ln: 13 |
| Pg: 40 Ln: 23 - Pg: 41 Ln: 2 | |

| | |
|---|---|
| Pg: 77 Ln: 6 - 9 | Pg: 149 Ln: 7 - 9 |
| Pg: 77 Ln: 13 - Pg: 78 Ln: 14 | Pg: 149 Ln: 12 - 18 |
| Pg: 79 Ln: 2 - 9 | Pg: 149 Ln: 20 - Pg: 150 Ln: 5 |
| Pg: 80 Ln: 16 - Pg: 81 Ln: 24 | Pg: 151 Ln: 17 - 22 |
| Pg: 91 Ln: 24 - Pg: 92 Ln: 5 | Pg: 151 Ln: 25 - Pg: 152 Ln: 5 |
| Pg: 92 Ln: 8 - 12 | Pg: 152 Ln: 16 - 19 |
| Pg: 92 Ln: 13 - 15 | Pg: 152 Ln: 23 - Pg: 153 Ln: 18 |
| Pg: 92 Ln: 18 | Pg: 154 Ln: 6 - Pg: 155 Ln: 1 |
| Pg: 114 Ln: 21 - Pg: 115 Ln: 17 | Pg: 155 Ln: 6 |
| Pg: 115 Ln: 22 - Pg: 116 Ln: 12 | Pg: 155 Ln: 16 - 22 |
| Pg: 116 Ln: 16 - 21 | Pg: 155 Ln: 25 - Pg: 157 Ln: 13 |
| Pg: 118 Ln: 5 - 7 | Pg: 157 Ln: 17 - 22 |
| Pg: 119 Ln: 25 - Pg: 120 Ln: 5 | Pg: 158 Ln: 1 - 12 |
| Pg: 120 Ln: 17 - Pg: 121 Ln: 11 | Pg: 158 Ln: 15 - 20 |
| Pg: 122 Ln: 6 - 8 | Pg: 158 Ln: 24 - Pg: 159 Ln: 3 |
| Pg: 122 Ln: 11 | Pg: 159 Ln: 6 - 10 |
| Pg: 123 Ln: 4 - 16 | Pg: 159 Ln: 13 - 18 |
| Pg: 124 Ln: 4 - 5 | Pg: 159 Ln: 19 - Pg: 160 Ln: 3 |
| Pg: 124 Ln: 8 - 15 | Pg: 167 Ln: 2 - 12 |
| Pg: 130 Ln: 13 - 24 | Pg: 167 Ln: 19 - 22 |
| Pg: 131 Ln: 6 - 10 | Pg: 167 Ln: 25 - Pg: 168 Ln: 11 |
| Pg: 132 Ln: 14 - Pg: 133 Ln: 25 | Pg: 168 Ln: 14 - 18 |
| Pg: 134 Ln: 2 - 8 | Pg: 169 Ln: 2 - 5 |
| Pg: 134 Ln: 13 - 19 | Pg: 170 Ln: 12 |
| Pg: 134 Ln: 24 - Pg: 135 Ln: 17 | Pg: 170 Ln: 23 - 24 |
| Pg: 136 Ln: 21 - 24 | Pg: 171 Ln: 23 - 25 |
| Pg: 137 Ln: 2 - Pg: 138 Ln: 9 | Pg: 172 Ln: 5 - 24 |
| Pg: 138 Ln: 12 - 21 | Pg: 173 Ln: 3 - 11 |
| Pg: 138 Ln: 24 - Pg: 139 Ln: 3 | Pg: 175 Ln: 21 - 23 |
| Pg: 139 Ln: 17 - Pg: 140 Ln: 15 | Pg: 176 Ln: 2 - 6 |
| Pg: 140 Ln: 18 - Pg: 141 Ln: 6 | Pg: 177 Ln: 14 - 18 |
| Pg: 141 Ln: 9 - 20 | Pg: 177 Ln: 22 - Pg: 178 Ln: 14 |
| Pg: 141 Ln: 23 - Pg: 142 Ln: 1 | Pg: 178 Ln: 11 - 14 |
| Pg: 142 Ln: 12 - 24 | Pg: 179 Ln: 10 - 16 |
| Pg: 145 Ln: 9 - Pg: 146 Ln: 19 | Pg: 179 Ln: 22 - Pg: 180 Ln: 1 |
| Pg: 146 Ln: 24 - Pg: 147 Ln: 20 | Pg: 180 Ln: 6 - 17 |
| Pg: 148 Ln: 9 - 20 | Pg: 180 Ln: 22 |
| Pg: 148 Ln: 24 - Pg: 149 Ln: 6 | Pg: 197 Ln: 21 - Pg: 198 Ln: 23 |

| | |
|---|---|
| Pg: 204 Ln: 5 - 19 | Pg: 236 Ln: 18 - Pg: 237 Ln: 10 |
| Pg: 204 Ln: 24 - 25 | Pg: 237 Ln: 14 - 20 |
| Pg: 205 Ln: 10 - 11 | Pg: 237 Ln: 23 - 24 |
| Pg: 205 Ln: 13 - Pg: 206 Ln: 1 | Pg: 238 Ln: 1 - 13 |
| Pg: 206 Ln: 4 - 8 | Pg: 238 Ln: 15 - 16 |
| Pg: 206 Ln: 11 - 17 | Pg: 239 Ln: 1 - Pg: 240 Ln: 14 |
| Pg: 206 Ln: 20 - Pg: 207 Ln: 7 | Pg: 240 Ln: 17 - Pg: 242 Ln: 4 |
| Pg: 207 Ln: 10 - 20 | Pg: 242 Ln: 8 - 16 |
| Pg: 208 Ln: 10 - Pg: 210 Ln: 18 | Pg: 242 Ln: 20 - Pg: 243 Ln: 4 |
| Pg: 210 Ln: 24 - Pg: 211 Ln: 1 | Pg: 243 Ln: 10 - Pg: 244 Ln: 5 |
| Pg: 211 Ln: 5 - 9 | Pg: 244 Ln: 10 - 15 |
| Pg: 212 Ln: 4 - 12 | Pg: 244 Ln: 18 |
| Pg: 212 Ln: 16 - 23 | Pg: 247 Ln: 3 - 4 |
| Pg: 213 Ln: 16 | Pg: 247 Ln: 7 - 12 |
| Pg: 213 Ln: 19 - Pg: 214 Ln: 19 | Pg: 249 Ln: 2 - 11 |
| Pg: 215 Ln: 8 - Pg: 216 Ln: 4 | Pg: 249 Ln: 14 |
| Pg: 216 Ln: 11 - Pg: 217 Ln: 19 | Pg: 249 Ln: 22 - Pg: 250 Ln: 3 |
| Pg: 218 Ln: 2 - 5 | Pg: 250 Ln: 5 - 11 |
| Pg: 219 Ln: 23 - Pg: 220 Ln: 20 | Pg: 250 Ln: 13 - Pg: 252 Ln: 1 |
| Pg: 221 Ln: 17 - 18 | Pg: 252 Ln: 4 - 10 |
| Pg: 222 Ln: 10 - 18 | Pg: 252 Ln: 12 - Pg: 253 Ln: 25 |
| Pg: 222 Ln: 21 - 25 | Pg: 254 Ln: 5 - 13 |
| Pg: 223 Ln: 5 - 11 | Pg: 254 Ln: 16 - 17 |
| Pg: 223 Ln: 16 - Pg: 226 Ln: 2 | Pg: 254 Ln: 24 - Pg: 256 Ln: 6 |
| Pg: 226 Ln: 5 - 14 | Pg: 256 Ln: 18 - Pg: 257 Ln: 3 |
| Pg: 226 Ln: 20 - Pg: 227 Ln: 1 | Pg: 257 Ln: 8 - 12 |
| Pg: 229 Ln: 4 - 18 | Pg: 257 Ln: 18 - Pg: 258 Ln: 2 |
| Pg: 229 Ln: 24 - Pg: 230 Ln: 3 | Pg: 258 Ln: 7 - 18 |
| Pg: 230 Ln: 6 - 20 | Pg: 258 Ln: 22 - Pg: 259 Ln: 15 |
| Pg: 230 Ln: 24 - Pg: 231 Ln: 13 | Pg: 259 Ln: 18 - 19 |
| Pg: 231 Ln: 16 - Pg: 232 Ln: 12 | Pg: 260 Ln: 9 - 21 |
| Pg: 232 Ln: 16 - Pg: 233 Ln: 2 | Pg: 261 Ln: 9 - 17 |
| Pg: 233 Ln: 7 - 17 | Pg: 261 Ln: 21 - Pg: 262 Ln: 17 |
| Pg: 233 Ln: 21 - Pg: 234 Ln: 3 | Pg: 262 Ln: 22 - Pg: 263 Ln: 2 |
| Pg: 234 Ln: 7 - 9 | Pg: 263 Ln: 5 - 13 |
| Pg: 234 Ln: 12 - 15 | Pg: 263 Ln: 17 - Pg: 264 Ln: 3 |
| Pg: 235 Ln: 3 - 4 | Pg: 264 Ln: 9 - 25 |
| Pg: 235 Ln: 6 - 23 | Pg: 265 Ln: 5 - 12 |

| | |
|---|---|
| Pg: 265 Ln: 19 - Pg: 266 Ln: 9 | Pg: 301 Ln: 1 - 5 |
| Pg: 266 Ln: 11 - 23 | Pg: 301 Ln: 20 - Pg: 302 Ln: 5 |
| Pg: 267 Ln: 9 - 17 | Pg: 302 Ln: 8 - Pg: 303 Ln: 12 |
| Pg: 268 Ln: 5 - 14 | Pg: 303 Ln: 17 - Pg: 304 Ln: 4 |
| Pg: 268 Ln: 19 - Pg: 269 Ln: 7 | Pg: 304 Ln: 6 - 18 |
| Pg: 269 Ln: 14 | Pg: 304 Ln: 21 - Pg: 305 Ln: 10 |
| Pg: 269 Ln: 20 - 23 | Pg: 305 Ln: 16 - Pg: 306 Ln: 18 |
| Pg: 270 Ln: 3 - 8 | Pg: 306 Ln: 22 - Pg: 307 Ln: 22 |
| Pg: 270 Ln: 25 - Pg: 271 Ln: 3 | Pg: 307 Ln: 25 - Pg: 308 Ln: 5 |
| Pg: 271 Ln: 12 - 13 | Pg: 308 Ln: 7 - 20 |
| Pg: 273 Ln: 9 - 13 | Pg: 308 Ln: 25 - Pg: 309 Ln: 18 |
| Pg: 273 Ln: 23 - Pg: 274 Ln: 8 | Pg: 309 Ln: 20 - Pg: 310 Ln: 7 |
| Pg: 274 Ln: 11 - Pg: 275 Ln: 7 | Pg: 310 Ln: 12 - Pg: 312 Ln: 6 |
| Pg: 275 Ln: 15 - Pg: 277 Ln: 1 | Pg: 312 Ln: 9 - 25 |
| Pg: 277 Ln: 9 - 10 | Pg: 313 Ln: 3 - 25 |
| Pg: 277 Ln: 13 - 17 | Pg: 314 Ln: 2 - 8 |
| Pg: 277 Ln: 19 - 21 | Pg: 314 Ln: 10 - 11 |
| Pg: 279 Ln: 8 - 11 | Pg: 314 Ln: 24 - Pg: 315 Ln: 3 |
| Pg: 279 Ln: 14 - Pg: 280 Ln: 1 | Pg: 315 Ln: 14 - 19 |
| Pg: 280 Ln: 4 - 7 | Pg: 315 Ln: 22 - Pg: 316 Ln: 5 |
| Pg: 280 Ln: 13 - 24 | Pg: 316 Ln: 8 - 24 |
| Pg: 281 Ln: 24 - Pg: 282 Ln: 2 | Pg: 317 Ln: 2 - 21 |
| Pg: 282 Ln: 6 | Pg: 317 Ln: 24 - Pg: 318 Ln: 7 |
| Pg: 282 Ln: 17 - 18 | Pg: 318 Ln: 15 |
| Pg: 282 Ln: 21 - 24 | Pg: 319 Ln: 24 - Pg: 320 Ln: 1 |
| Pg: 283 Ln: 6 - 10 | Pg: 320 Ln: 8 - 11 |
| Pg: 283 Ln: 14 - 16 | Pg: 320 Ln: 16 - 24 |
| Pg: 284 Ln: 10 - 23 | Pg: 321 Ln: 5 - 9 |
| Pg: 290 Ln: 13 - Pg: 291 Ln: 8 | Pg: 321 Ln: 14 - 15 |
| Pg: 291 Ln: 12 - 16 | Pg: 323 Ln: 22 - Pg: 324 Ln: 15 |
| Pg: 291 Ln: 20 - Pg: 292 Ln: 3 | Pg: 324 Ln: 20 - Pg: 326 Ln: 4 |
| Pg: 292 Ln: 20 - 25 | Pg: 326 Ln: 7 - 19 |
| Pg: 293 Ln: 7 - 12 | Pg: 328 Ln: 11 - Pg: 330 Ln: 15 |
| Pg: 295 Ln: 13 - 16 | Pg: 330 Ln: 18 - 19 |
| Pg: 295 Ln: 23 - Pg: 296 Ln: 5 | Pg: 331 Ln: 14 - 19 |
| Pg: 298 Ln: 6 - 7 | Pg: 331 Ln: 24 - Pg: 332 Ln: 5 |
| Pg: 298 Ln: 15 - 18 | Pg: 337 Ln: 5 - 7 |
| Pg: 300 Ln: 14 - 17 | Pg: 337 Ln: 25 - Pg: 338 Ln: 1 |

| | |
|---|---|
| Pg: 338 Ln: 7 - 9 | Pg: 359 Ln: 22 - Pg: 360 Ln: 19 |
| Pg: 338 Ln: 18 - Pg: 340 Ln: 8 | Pg: 361 Ln: 2 - 21 |
| Pg: 340 Ln: 17 - Pg: 341 Ln: 8 | Pg: 362 Ln: 20 - 23 |
| Pg: 341 Ln: 11 - Pg: 342 Ln: 15 | Pg: 363 Ln: 2 - Pg: 364 Ln: 19 |
| Pg: 342 Ln: 19 - 23 | Pg: 364 Ln: 25 - Pg: 366 Ln: 5 |
| Pg: 343 Ln: 19 - Pg: 344 Ln: 10 | Pg: 366 Ln: 8 - 24 |
| Pg: 348 Ln: 18 - Pg: 349 Ln: 3 | Pg: 367 Ln: 3 |
| Pg: 349 Ln: 8 - 25 | Pg: 367 Ln: 7 - Pg: 368 Ln: 16 |
| Pg: 350 Ln: 2 - 7 | Pg: 368 Ln: 20 - Pg: 369 Ln: 1 |
| Pg: 350 Ln: 9 - Pg: 351 Ln: 2 | Pg: 369 Ln: 4 - 10 |
| Pg: 351 Ln: 5 - 25 | Pg: 370 Ln: 22 - Pg: 371 Ln: 4 |
| Pg: 352 Ln: 2 - Pg: 353 Ln: 20 | Pg: 371 Ln: 7 - Pg: 372 Ln: 8 |
| Pg: 353 Ln: 23 - Pg: 354 Ln: 1 | Pg: 373 Ln: 21 - 25 |
| Pg: 354 Ln: 12 - Pg: 356 Ln: 4 | Pg: 374 Ln: 4 - 18 |
| Pg: 356 Ln: 6 - 18 | Pg: 374 Ln: 22 - Pg: 375 Ln: 12 |
| Pg: 358 Ln: 7 - 25 | Pg: 375 Ln: 16 - Pg: 379 Ln: 11 |
| Pg: 359 Ln: 2 - 19 | Pg: 379 Ln: 13 - 19 |

| | |
|---|---|
| Pg: 9 Ln: 7 - 12 | Pg: 71 Ln: 10 - 15 |
| Pg: 9 Ln: 16 - 21 | Pg: 71 Ln: 22 - Pg: 73 Ln: 7 |
| Pg: 10 Ln: 17 - Pg: 11 Ln: 16 | Pg: 77 Ln: 15 - 18 |
| Pg: 12 Ln: 18 - Pg: 13 Ln: 12 | Pg: 77 Ln: 21 - Pg: 78 Ln: 9 |
| Pg: 13 Ln: 16 - Pg: 14 Ln: 18 | Pg: 78 Ln: 12 - Pg: 79 Ln: 10 |
| Pg: 17 Ln: 25 - Pg: 19 Ln: 15 | Pg: 79 Ln: 13 - Pg: 80 Ln: 9 |
| Pg: 19 Ln: 23 - Pg: 20 Ln: 4 | Pg: 81 Ln: 2 - Pg: 82 Ln: 14 |
| Pg: 20 Ln: 6 - 12 | Pg: 82 Ln: 24 - Pg: 83 Ln: 6 |
| Pg: 21 Ln: 6 - Pg: 22 Ln: 1 | Pg: 83 Ln: 12 - Pg: 87 Ln: 9 |
| Pg: 22 Ln: 11 - Pg: 27 Ln: 17 | Pg: 87 Ln: 15 - 23 |
| Pg: 27 Ln: 19 - 23 | Pg: 88 Ln: 4 - 7 |
| Pg: 27 Ln: 25 - Pg: 28 Ln: 5 | Pg: 88 Ln: 23 - Pg: 89 Ln: 8 |
| Pg: 29 Ln: 11 - Pg: 31 Ln: 20 | Pg: 89 Ln: 12 - Pg: 98 Ln: 21 |
| Pg: 31 Ln: 23 - Pg: 33 Ln: 4 | Pg: 98 Ln: 24 - Pg: 99 Ln: 4 |
| Pg: 33 Ln: 6 - Pg: 34 Ln: 18 | Pg: 99 Ln: 7 - 20 |
| Pg: 34 Ln: 21 - Pg: 35 Ln: 14 | Pg: 99 Ln: 23 - 24 |
| Pg: 35 Ln: 24 - Pg: 37 Ln: 3 | Pg: 104 Ln: 1 - Pg: 105 Ln: 25 |
| Pg: 37 Ln: 13 - Pg: 39 Ln: 3 | Pg: 106 Ln: 3 - Pg: 107 Ln: 2 |
| Pg: 40 Ln: 20 - Pg: 43 Ln: 1 | Pg: 107 Ln: 5 - 6 |
| Pg: 43 Ln: 3 - 25 | Pg: 107 Ln: 19 - 21 |
| Pg: 48 Ln: 9 - 17 | Pg: 107 Ln: 24 - Pg: 108 Ln: 5 |
| Pg: 49 Ln: 14 - Pg: 50 Ln: 5 | Pg: 108 Ln: 10 - Pg: 111 Ln: 1 |
| Pg: 50 Ln: 15 - 16 | Pg: 112 Ln: 16 - Pg: 113 Ln: 3 |
| Pg: 50 Ln: 19 - Pg: 51 Ln: 5 | Pg: 113 Ln: 14 - Pg: 114 Ln: 15 |
| Pg: 51 Ln: 8 - 21 | Pg: 114 Ln: 17 - 25 |
| Pg: 51 Ln: 25 - Pg: 52 Ln: 10 | Pg: 115 Ln: 3 - 12 |
| Pg: 52 Ln: 12 - 18 | Pg: 115 Ln: 17 - Pg: 116 Ln: 1 |
| Pg: 52 Ln: 21 - Pg: 53 Ln: 4 | Pg: 117 Ln: 9 - 10 |
| Pg: 54 Ln: 9 - 23 | Pg: 117 Ln: 17 - Pg: 118 Ln: 9 |
| Pg: 55 Ln: 1 - 23 | Pg: 119 Ln: 3 - Pg: 121 Ln: 16 |
| Pg: 61 Ln: 12 - 25 | Pg: 122 Ln: 8 - Pg: 123 Ln: 13 |
| Pg: 62 Ln: 3 - Pg: 65 Ln: 14 | Pg: 128 Ln: 11 - Pg: 130 Ln: 2 |
| Pg: 65 Ln: 17 - Pg: 67 Ln: 2 | Pg: 133 Ln: 5 - 10 |
| Pg: 67 Ln: 5 - 12 | Pg: 133 Ln: 13 - 20 |
| Pg: 67 Ln: 14 - 25 | Pg: 133 Ln: 23 - Pg: 134 Ln: 12 |
| Pg: 68 Ln: 12 - 15 | Pg: 134 Ln: 15 - Pg: 135 Ln: 1 |
| Pg: 68 Ln: 17 - Pg: 69 Ln: 3 | Pg: 135 Ln: 11 - Pg: 136 Ln: 12 |
| Pg: 69 Ln: 16 - Pg: 70 Ln: 22 | Pg: 136 Ln: 20 - Pg: 137 Ln: 4 |
| Pg: 70 Ln: 25 - Pg: 71 Ln: 2 | Pg: 137 Ln: 14 - Pg: 138 Ln: 22 |

| | |
|---|---|
| Pg: 139 Ln: 10 - Pg: 142 Ln: 16 | Pg: 224 Ln: 7 - Pg: 225 Ln: 5 |
| Pg: 142 Ln: 19 - Pg: 144 Ln: 9 | Pg: 228 Ln: 9 - Pg: 230 Ln: 6 |
| Pg: 144 Ln: 20 - 23 | Pg: 230 Ln: 9 - Pg: 232 Ln: 15 |
| Pg: 145 Ln: 1 - 25 | Pg: 232 Ln: 24 - Pg: 235 Ln: 21 |
| Pg: 147 Ln: 2 - Pg: 149 Ln: 11 | Pg: 236 Ln: 18 - 21 |
| Pg: 149 Ln: 19 - Pg: 151 Ln: 8 | Pg: 236 Ln: 25 - Pg: 237 Ln: 2 |
| Pg: 151 Ln: 12 - 19 | Pg: 237 Ln: 16 - Pg: 238 Ln: 4 |
| Pg: 153 Ln: 11 - Pg: 157 Ln: 4 | Pg: 238 Ln: 17 - 21 |
| Pg: 157 Ln: 7 - Pg: 158 Ln: 25 | Pg: 238 Ln: 23 - Pg: 239 Ln: 9 |
| Pg: 159 Ln: 3 - Pg: 170 Ln: 20 | Pg: 239 Ln: 13 - Pg: 241 Ln: 7 |
| Pg: 170 Ln: 23 - Pg: 171 Ln: 12 | Pg: 242 Ln: 3 - 23 |
| Pg: 171 Ln: 21 - Pg: 175 Ln: 9 | Pg: 242 Ln: 25 - Pg: 243 Ln: 9 |
| Pg: 175 Ln: 21 - Pg: 176 Ln: 3 | Pg: 243 Ln: 17 - Pg: 244 Ln: 19 |
| Pg: 176 Ln: 7 - 10 | Pg: 244 Ln: 22 - Pg: 245 Ln: 1 |
| Pg: 176 Ln: 25 - Pg: 177 Ln: 13 | Pg: 245 Ln: 4 - 7 |
| Pg: 177 Ln: 16 - 19 | Pg: 245 Ln: 11 - 12 |
| Pg: 179 Ln: 7 - 18 | Pg: 245 Ln: 15 - 17 |
| Pg: 179 Ln: 25 - Pg: 180 Ln: 21 | Pg: 245 Ln: 20 - 21 |
| Pg: 181 Ln: 17 - Pg: 182 Ln: 10 | Pg: 246 Ln: 10 - 11 |
| Pg: 182 Ln: 13 - 20 | Pg: 246 Ln: 16 - Pg: 247 Ln: 8 |
| Pg: 182 Ln: 23 - Pg: 185 Ln: 6 | Pg: 248 Ln: 4 - Pg: 249 Ln: 4 |
| Pg: 185 Ln: 9 - Pg: 187 Ln: 25 | Pg: 249 Ln: 18 - Pg: 250 Ln: 3 |
| Pg: 188 Ln: 2 - Pg: 189 Ln: 12 | Pg: 250 Ln: 13 - Pg: 251 Ln: 24 |
| Pg: 190 Ln: 6 - Pg: 191 Ln: 22 | Pg: 253 Ln: 11 - 19 |
| Pg: 191 Ln: 25 - Pg: 195 Ln: 14 | Pg: 253 Ln: 22 - Pg: 255 Ln: 22 |
| Pg: 197 Ln: 2 - 16 | Pg: 256 Ln: 6 - 20 |
| Pg: 197 Ln: 20 - Pg: 200 Ln: 24 | Pg: 256 Ln: 25 - Pg: 257 Ln: 13 |
| Pg: 201 Ln: 2 - 4 | Pg: 257 Ln: 15 - Pg: 262 Ln: 11 |
| Pg: 201 Ln: 17 - Pg: 204 Ln: 4 | Pg: 262 Ln: 13 - Pg: 263 Ln: 2 |
| Pg: 204 Ln: 22 - Pg: 205 Ln: 13 | Pg: 264 Ln: 9 - Pg: 265 Ln: 3 |
| Pg: 205 Ln: 17 - Pg: 209 Ln: 5 | Pg: 265 Ln: 11 - 25 |
| Pg: 209 Ln: 23 - Pg: 210 Ln: 9 | Pg: 266 Ln: 2 - 13 |
| Pg: 211 Ln: 9 - Pg: 212 Ln: 5 | Pg: 266 Ln: 24 - Pg: 267 Ln: 9 |
| Pg: 212 Ln: 9 - Pg: 215 Ln: 10 | Pg: 267 Ln: 12 - 15 |
| Pg: 217 Ln: 2 - Pg: 218 Ln: 14 | Pg: 301 Ln: 7 - Pg: 304 Ln: 7 |
| Pg: 218 Ln: 17 - Pg: 222 Ln: 1 | Pg: 305 Ln: 8 - Pg: 307 Ln: 4 |
| Pg: 222 Ln: 16 - Pg: 224 Ln: 4 | |

| | |
|---|---|
| Pg: 4 Ln: 3 - 6 | Pg: 68 Ln: 17 |
| Pg: 5 Ln: 1 - Pg: 8 Ln: 1 | Pg: 68 Ln: 25 - Pg: 72 Ln: 14 |
| Pg: 8 Ln: 10 - 11 | Pg: 72 Ln: 20 - Pg: 75 Ln: 3 |
| Pg: 12 Ln: 19 - Pg: 14 Ln: 17 | Pg: 78 Ln: 22 - Pg: 79 Ln: 10 |
| Pg: 14 Ln: 25 - Pg: 15 Ln: 8 | Pg: 80 Ln: 19 - Pg: 81 Ln: 12 |
| Pg: 16 Ln: 9 - Pg: 17 Ln: 10 | Pg: 82 Ln: 5 - Pg: 83 Ln: 20 |
| Pg: 21 Ln: 14 - 15 | Pg: 84 Ln: 4 - 24 |
| Pg: 21 Ln: 20 - Pg: 25 Ln: 9 | Pg: 85 Ln: 8 - 22 |
| Pg: 25 Ln: 20 - Pg: 26 Ln: 14 | Pg: 86 Ln: 16 - Pg: 88 Ln: 20 |
| Pg: 26 Ln: 24 - Pg: 27 Ln: 16 | Pg: 92 Ln: 14 - Pg: 93 Ln: 14 |
| Pg: 28 Ln: 4 - 16 | Pg: 93 Ln: 23 - 24 |
| Pg: 28 Ln: 22 - Pg: 29 Ln: 3 | Pg: 94 Ln: 1 - 5 |
| Pg: 29 Ln: 13 - 23 | Pg: 113 Ln: 7 - 25 |
| Pg: 34 Ln: 5 - 6 | Pg: 114 Ln: 6 - 23 |
| Pg: 39 Ln: 10 - Pg: 42 Ln: 12 | Pg: 115 Ln: 23 - Pg: 116 Ln: 24 |
| Pg: 42 Ln: 22 - Pg: 46 Ln: 22 | Pg: 118 Ln: 6 - Pg: 119 Ln: 8 |
| Pg: 47 Ln: 16 - 21 | Pg: 125 Ln: 23 - Pg: 127 Ln: 6 |
| Pg: 48 Ln: 11 - Pg: 50 Ln: 8 | Pg: 128 Ln: 15 - Pg: 129 Ln: 12 |
| Pg: 50 Ln: 11 - 16 | Pg: 131 Ln: 9 - Pg: 133 Ln: 13 |
| Pg: 52 Ln: 19 - Pg: 55 Ln: 1 | Pg: 133 Ln: 18 - 23 |
| Pg: 55 Ln: 23 - Pg: 56 Ln: 9 | Pg: 133 Ln: 25 - Pg: 134 Ln: 6 |
| Pg: 56 Ln: 22 - Pg: 57 Ln: 8 | Pg: 134 Ln: 12 - 14 |
| Pg: 61 Ln: 16 - Pg: 68 Ln: 9 | Pg: 142 Ln: 7 - 10 |

| | |
|---|---|
| Pg: 9 Ln: 25 - Pg: 10 Ln: 3 | Pg: 53 Ln: 2 - 9 |
| Pg: 10 Ln: 10 - Pg: 14 Ln: 10 | Pg: 53 Ln: 12 - Pg: 54 Ln: 15 |
| Pg: 14 Ln: 16 - Pg: 15 Ln: 8 | Pg: 55 Ln: 25 - Pg: 56 Ln: 25 |
| Pg: 16 Ln: 1 - Pg: 17 Ln: 20 | Pg: 57 Ln: 2 - 13 |
| Pg: 18 Ln: 2 - 3 | Pg: 58 Ln: 3 - 10 |
| Pg: 18 Ln: 6 - 10 | Pg: 59 Ln: 5 - 21 |
| Pg: 18 Ln: 12 - 14 | Pg: 60 Ln: 6 - 17 |
| Pg: 18 Ln: 16 - Pg: 19 Ln: 9 | Pg: 62 Ln: 2 - Pg: 63 Ln: 3 |
| Pg: 19 Ln: 17 - 18 | Pg: 63 Ln: 15 - Pg: 64 Ln: 3 |
| Pg: 19 Ln: 20 - Pg: 21 Ln: 7 | Pg: 64 Ln: 11 - Pg: 66 Ln: 13 |
| Pg: 21 Ln: 9 - 12 | Pg: 66 Ln: 21 - 22 |
| Pg: 21 Ln: 14 - 25 | Pg: 66 Ln: 25 - Pg: 67 Ln: 23 |
| Pg: 22 Ln: 2 - 17 | Pg: 67 Ln: 25 - Pg: 68 Ln: 6 |
| Pg: 22 Ln: 19 - 20 | Pg: 69 Ln: 3 - Pg: 70 Ln: 4 |
| Pg: 22 Ln: 22 - Pg: 23 Ln: 4 | Pg: 72 Ln: 6 - 14 |
| Pg: 23 Ln: 6 - 8 | Pg: 103 Ln: 9 - Pg: 104 Ln: 23 |
| Pg: 23 Ln: 10 - Pg: 24 Ln: 5 | Pg: 105 Ln: 9 - Pg: 106 Ln: 7 |
| Pg: 24 Ln: 18 - 25 | Pg: 108 Ln: 3 - Pg: 109 Ln: 8 |
| Pg: 26 Ln: 3 - 8 | Pg: 110 Ln: 15 - Pg: 112 Ln: 1 |
| Pg: 27 Ln: 2 - Pg: 29 Ln: 7 | Pg: 118 Ln: 3 - 9 |
| Pg: 30 Ln: 12 - Pg: 31 Ln: 9 | Pg: 118 Ln: 11 - 15 |
| Pg: 37 Ln: 5 - Pg: 38 Ln: 17 | Pg: 119 Ln: 16 - Pg: 122 Ln: 2 |
| Pg: 38 Ln: 19 - Pg: 39 Ln: 10 | Pg: 122 Ln: 4 |
| Pg: 39 Ln: 14 - 16 | Pg: 123 Ln: 14 - 17 |
| Pg: 39 Ln: 20 - Pg: 40 Ln: 2 | Pg: 123 Ln: 19 - 20 |
| Pg: 40 Ln: 6 - 9 | Pg: 123 Ln: 22 - Pg: 124 Ln: 11 |
| Pg: 40 Ln: 12 - Pg: 42 Ln: 8 | Pg: 124 Ln: 13 - 14 |
| Pg: 43 Ln: 11 - Pg: 44 Ln: 6 | Pg: 124 Ln: 20 - 23 |
| Pg: 44 Ln: 9 - 13 | Pg: 125 Ln: 6 - 15 |
| Pg: 44 Ln: 16 - 23 | Pg: 125 Ln: 17 - Pg: 126 Ln: 24 |
| Pg: 45 Ln: 10 - Pg: 46 Ln: 14 | Pg: 128 Ln: 4 - 14 |
| Pg: 46 Ln: 17 - 19 | Pg: 128 Ln: 23 - Pg: 129 Ln: 9 |
| Pg: 46 Ln: 25 - Pg: 47 Ln: 14 | Pg: 130 Ln: 7 - Pg: 131 Ln: 7 |
| Pg: 47 Ln: 16 - Pg: 49 Ln: 9 | Pg: 131 Ln: 10 - 22 |
| Pg: 49 Ln: 16 - 20 | Pg: 133 Ln: 24 - Pg: 134 Ln: 15 |
| Pg: 50 Ln: 6 - 7 | Pg: 134 Ln: 23 - Pg: 136 Ln: 7 |
| Pg: 50 Ln: 9 - 13 | Pg: 137 Ln: 2 - 15 |
| Pg: 52 Ln: 19 - 24 | Pg: 138 Ln: 19 - Pg: 139 Ln: 1 |

| | |
|---|---|
| Pg: 139 Ln: 3 - 8 | Pg: 149 Ln: 3 - 9 |
| Pg: 141 Ln: 4 - 22 | Pg: 149 Ln: 11 - 12 |
| Pg: 145 Ln: 11 - 17 | Pg: 150 Ln: 1 - 2 |
| Pg: 145 Ln: 20 - 22 | Pg: 150 Ln: 5 - 9 |
| Pg: 146 Ln: 11 - 12 | Pg: 150 Ln: 11 |
| Pg: 146 Ln: 21 - Pg: 147 Ln: 1 | Pg: 162 Ln: 5 - 19 |
| Pg: 148 Ln: 24 - 25 | |

| | |
|---|---|
| Pg: 8 Ln: 11 - 20 | Pg: 59 Ln: 24 - Pg: 61 Ln: 10 |
| Pg: 9 Ln: 7 - Pg: 10 Ln: 8 | Pg: 61 Ln: 12 - 18 |
| Pg: 11 Ln: 15 - Pg: 12 Ln: 9 | Pg: 61 Ln: 20 - Pg: 62 Ln: 19 |
| Pg: 12 Ln: 19 - Pg: 13 Ln: 4 | Pg: 62 Ln: 22 - 23 |
| Pg: 13 Ln: 12 | Pg: 63 Ln: 7 - 14 |
| Pg: 13 Ln: 14 - Pg: 15 Ln: 9 | Pg: 64 Ln: 5 - 23 |
| Pg: 15 Ln: 11 - Pg: 16 Ln: 1 | Pg: 65 Ln: 18 - 22 |
| Pg: 19 Ln: 8 - 15 | Pg: 66 Ln: 14 - Pg: 68 Ln: 16 |
| Pg: 20 Ln: 7 - 25 | Pg: 68 Ln: 19 - 22 |
| Pg: 21 Ln: 19 - Pg: 23 Ln: 2 | Pg: 69 Ln: 25 - Pg: 70 Ln: 2 |
| Pg: 23 Ln: 16 - Pg: 24 Ln: 3 | Pg: 70 Ln: 5 - 10 |
| Pg: 24 Ln: 10 - 13 | Pg: 70 Ln: 12 - Pg: 71 Ln: 9 |
| Pg: 24 Ln: 18 - 22 | Pg: 71 Ln: 13 - Pg: 72 Ln: 21 |
| Pg: 24 Ln: 25 - Pg: 25 Ln: 13 | Pg: 72 Ln: 24 - Pg: 73 Ln: 5 |
| Pg: 29 Ln: 1 - 15 | Pg: 74 Ln: 9 - 15 |
| Pg: 30 Ln: 6 - 22 | Pg: 74 Ln: 17 - Pg: 75 Ln: 7 |
| Pg: 31 Ln: 13 - 14 | Pg: 75 Ln: 25 - Pg: 77 Ln: 18 |
| Pg: 31 Ln: 16 - Pg: 32 Ln: 1 | Pg: 80 Ln: 25 - Pg: 81 Ln: 16 |
| Pg: 32 Ln: 8 - 18 | Pg: 81 Ln: 18 - Pg: 82 Ln: 7 |
| Pg: 34 Ln: 17 - Pg: 35 Ln: 8 | Pg: 82 Ln: 8 - 10 |
| Pg: 40 Ln: 12 - Pg: 41 Ln: 12 | Pg: 82 Ln: 12 - 14 |
| Pg: 42 Ln: 2 - Pg: 43 Ln: 4 | Pg: 83 Ln: 8 - 9 |
| Pg: 43 Ln: 8 - 11 | Pg: 83 Ln: 11 - Pg: 84 Ln: 3 |
| Pg: 43 Ln: 13 - 19 | Pg: 87 Ln: 9 - Pg: 88 Ln: 15 |
| Pg: 43 Ln: 25 - Pg: 44 Ln: 2 | Pg: 89 Ln: 3 - 5 |
| Pg: 44 Ln: 6 - 11 | Pg: 89 Ln: 8 - Pg: 90 Ln: 7 |
| Pg: 44 Ln: 13 - 25 | Pg: 90 Ln: 13 - 19 |
| Pg: 45 Ln: 4 - 10 | Pg: 92 Ln: 22 - Pg: 93 Ln: 3 |
| Pg: 45 Ln: 12 - Pg: 46 Ln: 16 | Pg: 93 Ln: 19 - 20 |
| Pg: 47 Ln: 3 - 5 | Pg: 93 Ln: 22 - 25 |
| Pg: 47 Ln: 7 - 18 | Pg: 94 Ln: 2 - 6 |
| Pg: 47 Ln: 20 - 21 | Pg: 94 Ln: 8 - 21 |
| Pg: 52 Ln: 17 - Pg: 53 Ln: 3 | Pg: 94 Ln: 23 - Pg: 95 Ln: 3 |
| Pg: 53 Ln: 23 - Pg: 54 Ln: 1 | Pg: 95 Ln: 7 - 8 |
| Pg: 54 Ln: 6 - 23 | Pg: 95 Ln: 10 - 13 |
| Pg: 55 Ln: 5 - 16 | Pg: 95 Ln: 21 - 22 |
| Pg: 55 Ln: 20 - Pg: 56 Ln: 2 | Pg: 95 Ln: 21 - Pg: 96 Ln: 2 |
| Pg: 56 Ln: 4 - 9 | Pg: 96 Ln: 17 - 19 |

| | |
|---|---|
| Pg: 96 Ln: 23 | Pg: 138 Ln: 21 - 25 |
| Pg: 97 Ln: 2 - Pg: 98 Ln: 25 | Pg: 140 Ln: 7 - 20 |
| Pg: 100 Ln: 2 - Pg: 101 Ln: 19 | Pg: 143 Ln: 2 - Pg: 145 Ln: 4 |
| Pg: 101 Ln: 21 - 24 | Pg: 145 Ln: 6 - 9 |
| Pg: 102 Ln: 13 - 16 | Pg: 145 Ln: 11 - Pg: 146 Ln: 1 |
| Pg: 103 Ln: 6 - 25 | Pg: 146 Ln: 6 - 23 |
| Pg: 104 Ln: 10 - Pg: 105 Ln: 9 | Pg: 146 Ln: 25 - Pg: 147 Ln: 2 |
| Pg: 105 Ln: 18 - Pg: 109 Ln: 9 | Pg: 147 Ln: 18 - Pg: 148 Ln: 6 |
| Pg: 110 Ln: 25 - Pg: 111 Ln: 2 | Pg: 148 Ln: 8 - 9 |
| Pg: 111 Ln: 4 - 15 | Pg: 149 Ln: 13 - Pg: 150 Ln: 14 |
| Pg: 111 Ln: 18 - Pg: 112 Ln: 8 | Pg: 151 Ln: 11 - 21 |
| Pg: 112 Ln: 10 - Pg: 113 Ln: 3 | Pg: 152 Ln: 18 - Pg: 153 Ln: 1 |
| Pg: 113 Ln: 7 - 20 | Pg: 153 Ln: 2 - 8 |
| Pg: 114 Ln: 18 - Pg: 116 Ln: 23 | Pg: 153 Ln: 9 - 14 |
| Pg: 117 Ln: 15 - Pg: 118 Ln: 2 | Pg: 153 Ln: 21 - Pg: 154 Ln: 14 |
| Pg: 118 Ln: 4 - 9 | Pg: 155 Ln: 19 - Pg: 156 Ln: 19 |
| Pg: 118 Ln: 13 - 18 | Pg: 157 Ln: 9 - 12 |
| Pg: 118 Ln: 21 - Pg: 119 Ln: 4 | Pg: 157 Ln: 14 - 15 |
| Pg: 119 Ln: 12 - 13 | Pg: 158 Ln: 7 - Pg: 159 Ln: 1 |
| Pg: 119 Ln: 17 - 18 | Pg: 159 Ln: 18 - Pg: 160 Ln: 14 |
| Pg: 121 Ln: 17 - Pg: 122 Ln: 9 | Pg: 161 Ln: 13 - 22 |
| Pg: 122 Ln: 14 - Pg: 123 Ln: 19 | Pg: 162 Ln: 14 - Pg: 163 Ln: 3 |
| Pg: 123 Ln: 25 - Pg: 124 Ln: 3 | Pg: 163 Ln: 19 - Pg: 164 Ln: 11 |
| Pg: 124 Ln: 6 - 7 | Pg: 164 Ln: 24 - Pg: 166 Ln: 6 |
| Pg: 124 Ln: 15 - Pg: 125 Ln: 14 | Pg: 166 Ln: 19 - 21 |
| Pg: 125 Ln: 18 - 19 | Pg: 167 Ln: 2 - Pg: 169 Ln: 8 |
| Pg: 125 Ln: 22 - Pg: 126 Ln: 8 | Pg: 169 Ln: 17 - 19 |
| Pg: 126 Ln: 14 - 17 | Pg: 169 Ln: 25 - Pg: 170 Ln: 24 |
| Pg: 126 Ln: 20 - Pg: 127 Ln: 1 | Pg: 171 Ln: 1 - 9 |
| Pg: 127 Ln: 24 - Pg: 128 Ln: 11 | Pg: 171 Ln: 12 - 13 |
| Pg: 128 Ln: 25 - Pg: 129 Ln: 25 | Pg: 172 Ln: 1 - Pg: 173 Ln: 16 |
| Pg: 130 Ln: 8 - Pg: 131 Ln: 2 | Pg: 173 Ln: 25 - Pg: 174 Ln: 4 |
| Pg: 131 Ln: 20 - 22 | Pg: 175 Ln: 23 - 25 |
| Pg: 133 Ln: 15 - Pg: 134 Ln: 16 | Pg: 176 Ln: 3 - 20 |
| Pg: 134 Ln: 18 - 24 | Pg: 177 Ln: 12 - Pg: 179 Ln: 15 |
| Pg: 135 Ln: 1 - 6 | Pg: 179 Ln: 22 - Pg: 180 Ln: 22 |
| Pg: 135 Ln: 10 - 11 | Pg: 181 Ln: 12 - 15 |
| Pg: 136 Ln: 11 - Pg: 137 Ln: 10 | Pg: 181 Ln: 20 - Pg: 182 Ln: 5 |

| | |
|---|---|
| Pg: 182 Ln: 10 - 20 | Pg: 190 Ln: 2 - 17 |
| Pg: 184 Ln: 10 - 19 | Pg: 190 Ln: 19 - Pg: 191 Ln: 3 |
| Pg: 185 Ln: 25 - Pg: 186 Ln: 18 | Pg: 195 Ln: 5 - 13 |
| Pg: 186 Ln: 23 - Pg: 187 Ln: 11 | Pg: 195 Ln: 24 - Pg: 196 Ln: 3 |
| Pg: 189 Ln: 7 - 9 | Pg: 200 Ln: 12 - Pg: 202 Ln: 8 |
| Pg: 189 Ln: 11 - 17 | |

| | |
|---|---|
| Pg: 6 Ln: 6 - Pg: 12 Ln: 15 | Pg: 95 Ln: 16 - Pg: 96 Ln: 25 |
| Pg: 19 Ln: 20 - Pg: 20 Ln: 23 | Pg: 107 Ln: 8 - 23 |
| Pg: 22 Ln: 14 - 23 | Pg: 108 Ln: 2 - 10 |
| Pg: 23 Ln: 9 - Pg: 24 Ln: 6 | Pg: 115 Ln: 4 - Pg: 116 Ln: 1 |
| Pg: 26 Ln: 13 - Pg: 27 Ln: 1 | Pg: 117 Ln: 2 - 15 |
| Pg: 30 Ln: 1 - Pg: 31 Ln: 19 | Pg: 120 Ln: 2 - 3 |
| Pg: 32 Ln: 1 - 15 | Pg: 120 Ln: 16 - 17 |
| Pg: 32 Ln: 18 - 22 | Pg: 123 Ln: 4 - Pg: 124 Ln: 11 |
| Pg: 33 Ln: 7 - Pg: 35 Ln: 3 | Pg: 125 Ln: 7 - Pg: 126 Ln: 13 |
| Pg: 46 Ln: 3 - 18 | Pg: 127 Ln: 9 - Pg: 128 Ln: 7 |
| Pg: 70 Ln: 18 - Pg: 71 Ln: 13 | Pg: 135 Ln: 16 - 22 |
| Pg: 72 Ln: 2 - 5 | Pg: 155 Ln: 14 - 16 |
| Pg: 75 Ln: 7 - 19 | Pg: 155 Ln: 22 - Pg: 156 Ln: 16 |
| Pg: 77 Ln: 17 - Pg: 78 Ln: 4 | Pg: 158 Ln: 10 - Pg: 159 Ln: 4 |
| Pg: 78 Ln: 11 - 20 | Pg: 159 Ln: 16 - 18 |
| Pg: 79 Ln: 4 - 11 | Pg: 159 Ln: 20 - Pg: 160 Ln: 22 |
| Pg: 81 Ln: 10 - 24 | Pg: 163 Ln: 15 - Pg: 170 Ln: 20 |
| Pg: 82 Ln: 5 - 16 | Pg: 171 Ln: 14 - Pg: 175 Ln: 17 |
| Pg: 88 Ln: 7 - 16 | Pg: 176 Ln: 19 - Pg: 177 Ln: 18 |
| Pg: 90 Ln: 6 - 25 | Pg: 178 Ln: 15 - Pg: 179 Ln: 4 |
| Pg: 91 Ln: 8 - Pg: 92 Ln: 12 | Pg: 180 Ln: 15 - 19 |
| Pg: 92 Ln: 13 - Pg: 93 Ln: 4 | Pg: 184 Ln: 3 - 12 |
| Pg: 94 Ln: 14 - Pg: 95 Ln: 2 | |

| |
|---|
| Pg: 4 Ln: 2 - 11 |
| Pg: 5 Ln: 20 - Pg: 6 Ln: 14 |
| Pg: 6 Ln: 18 - 21 |
| Pg: 7 Ln: 2 - Pg: 9 Ln: 21 |
| Pg: 11 Ln: 12 - 25 |
| Pg: 12 Ln: 4 - 20 |
| Pg: 12 Ln: 21 - Pg: 14 Ln: 15 |
| Pg: 14 Ln: 24 - Pg: 15 Ln: 3 |
| Pg: 15 Ln: 24 - Pg: 16 Ln: 17 |
| Pg: 16 Ln: 24 - Pg: 18 Ln: 8 |
| Pg: 18 Ln: 15 - Pg: 19 Ln: 5 |
| Pg: 19 Ln: 16 - 21 |
| Pg: 20 Ln: 12 - Pg: 21 Ln: 6 |
| Pg: 25 Ln: 15 - 22 |
| Pg: 26 Ln: 25 - Pg: 27 Ln: 16 |
| Pg: 28 Ln: 1 - Pg: 29 Ln: 21 |

| | |
|---|---|
| Pg: 8 Ln: 6 - Pg: 9 Ln: 16 | Pg: 83 Ln: 17 - Pg: 84 Ln: 16 |
| Pg: 10 Ln: 6 - Pg: 13 Ln: 21 | Pg: 85 Ln: 15 - Pg: 88 Ln: 25 |
| Pg: 18 Ln: 23 - Pg: 20 Ln: 23 | Pg: 90 Ln: 10 - 13 |
| Pg: 22 Ln: 21 - Pg: 23 Ln: 23 | Pg: 92 Ln: 7 - Pg: 94 Ln: 22 |
| Pg: 24 Ln: 15 - Pg: 25 Ln: 25 | Pg: 95 Ln: 2 - 5 |
| Pg: 27 Ln: 17 - 19 | Pg: 95 Ln: 14 - Pg: 98 Ln: 12 |
| Pg: 29 Ln: 13 - 20 | Pg: 98 Ln: 14 - Pg: 100 Ln: 19 |
| Pg: 31 Ln: 4 - Pg: 32 Ln: 2 | Pg: 100 Ln: 22 - Pg: 101 Ln: 3 |
| Pg: 33 Ln: 14 - Pg: 34 Ln: 20 | Pg: 103 Ln: 8 - Pg: 104 Ln: 21 |
| Pg: 35 Ln: 20 - Pg: 36 Ln: 2 | Pg: 104 Ln: 24 - Pg: 105 Ln: 9 |
| Pg: 36 Ln: 4 - 10 | Pg: 105 Ln: 13 - 16 |
| Pg: 45 Ln: 1 - 23 | Pg: 105 Ln: 24 - Pg: 106 Ln: 3 |
| Pg: 46 Ln: 4 - Pg: 47 Ln: 21 | Pg: 106 Ln: 6 - Pg: 107 Ln: 19 |
| Pg: 49 Ln: 4 - 21 | Pg: 107 Ln: 21 - Pg: 108 Ln: 8 |
| Pg: 50 Ln: 20 - Pg: 51 Ln: 12 | Pg: 109 Ln: 8 - 22 |
| Pg: 53 Ln: 14 - Pg: 55 Ln: 3 | Pg: 109 Ln: 25 - Pg: 110 Ln: 12 |
| Pg: 55 Ln: 6 - 8 | Pg: 110 Ln: 15 - Pg: 111 Ln: 13 |
| Pg: 56 Ln: 17 - Pg: 57 Ln: 14 | Pg: 111 Ln: 19 - Pg: 113 Ln: 15 |
| Pg: 58 Ln: 6 - Pg: 59 Ln: 1 | Pg: 113 Ln: 18 - Pg: 115 Ln: 11 |
| Pg: 60 Ln: 2 - 21 | Pg: 116 Ln: 6 - 15 |
| Pg: 63 Ln: 10 - Pg: 64 Ln: 8 | Pg: 116 Ln: 19 - Pg: 118 Ln: 8 |
| Pg: 66 Ln: 3 - 21 | Pg: 118 Ln: 10 - Pg: 119 Ln: 15 |
| Pg: 67 Ln: 18 - Pg: 68 Ln: 1 | Pg: 119 Ln: 25 - Pg: 120 Ln: 12 |
| Pg: 68 Ln: 3 - 7 | Pg: 148 Ln: 13 - Pg: 149 Ln: 22 |
| Pg: 68 Ln: 9 - Pg: 72 Ln: 1 | Pg: 167 Ln: 10 - 16 |
| Pg: 73 Ln: 5 - 11 | Pg: 173 Ln: 1 - 6 |
| Pg: 74 Ln: 7 - 21 | Pg: 173 Ln: 7 - 12 |
| Pg: 75 Ln: 16 - Pg: 76 Ln: 23 | Pg: 173 Ln: 16 - Pg: 179 Ln: 13 |
| Pg: 77 Ln: 11 - Pg: 79 Ln: 5 | Pg: 190 Ln: 24 - Pg: 191 Ln: 19 |
| Pg: 79 Ln: 14 - Pg: 80 Ln: 17 | Pg: 191 Ln: 21 - Pg: 192 Ln: 21 |
| Pg: 82 Ln: 18 - 19 | Pg: 195 Ln: 25 - Pg: 196 Ln: 3 |
| Pg: 82 Ln: 22 - 25 | Pg: 196 Ln: 5 - 12 |
| Pg: 83 Ln: 11 - 14 | Pg: 196 Ln: 13 - 20 |

| | |
|---|---|
| Pg: 7 Ln: 8 - 12 | Pg: 50 Ln: 9 - Pg: 51 Ln: 23 |
| Pg: 7 Ln: 19 - Pg: 8 Ln: 9 | Pg: 57 Ln: 3 - 7 |
| Pg: 9 Ln: 10 - 14 | Pg: 57 Ln: 16 - 24 |
| Pg: 9 Ln: 22 - 23 | Pg: 60 Ln: 10 - 13 |
| Pg: 10 Ln: 1 - 21 | Pg: 60 Ln: 16 - 17 |
| Pg: 10 Ln: 25 - Pg: 13 Ln: 17 | Pg: 60 Ln: 23 - 25 |
| Pg: 14 Ln: 4 - 18 | Pg: 61 Ln: 13 - 19 |
| Pg: 15 Ln: 17 - 21 | Pg: 62 Ln: 9 - 20 |
| Pg: 16 Ln: 5 - Pg: 17 Ln: 21 | Pg: 62 Ln: 23 - Pg: 63 Ln: 15 |
| Pg: 18 Ln: 12 - Pg: 19 Ln: 15 | Pg: 64 Ln: 19 - Pg: 65 Ln: 8 |
| Pg: 20 Ln: 7 - 9 | Pg: 65 Ln: 12 - Pg: 66 Ln: 11 |
| Pg: 20 Ln: 18 - Pg: 21 Ln: 4 | Pg: 67 Ln: 10 - 15 |
| Pg: 21 Ln: 7 - Pg: 22 Ln: 10 | Pg: 67 Ln: 18 - 25 |
| Pg: 22 Ln: 13 - 18 | Pg: 68 Ln: 16 - Pg: 69 Ln: 17 |
| Pg: 22 Ln: 21 - Pg: 23 Ln: 4 | Pg: 69 Ln: 20 - Pg: 70 Ln: 5 |
| Pg: 23 Ln: 7 - 10 | Pg: 72 Ln: 10 - 20 |
| Pg: 25 Ln: 18 - Pg: 27 Ln: 2 | Pg: 72 Ln: 24 - Pg: 73 Ln: 6 |
| Pg: 27 Ln: 5 - 11 | Pg: 73 Ln: 21 - Pg: 74 Ln: 19 |
| Pg: 27 Ln: 14 - 19 | Pg: 74 Ln: 23 - Pg: 76 Ln: 2 |
| Pg: 27 Ln: 22 - Pg: 28 Ln: 4 | Pg: 76 Ln: 5 - 12 |
| Pg: 28 Ln: 17 - 19 | Pg: 76 Ln: 19 |
| Pg: 28 Ln: 22 - Pg: 29 Ln: 3 | Pg: 80 Ln: 11 - 20 |
| Pg: 30 Ln: 3 - 5 | Pg: 81 Ln: 11 - 24 |
| Pg: 30 Ln: 14 - 15 | Pg: 83 Ln: 4 - 5 |
| Pg: 30 Ln: 17 - 23 | Pg: 83 Ln: 7 - 15 |
| Pg: 30 Ln: 25 - Pg: 31 Ln: 21 | Pg: 83 Ln: 17 - Pg: 85 Ln: 10 |
| Pg: 32 Ln: 7 - 18 | Pg: 85 Ln: 20 - Pg: 86 Ln: 7 |
| Pg: 33 Ln: 2 - 3 | Pg: 86 Ln: 10 - 22 |
| Pg: 33 Ln: 10 - Pg: 34 Ln: 5 | Pg: 86 Ln: 25 - Pg: 87 Ln: 4 |
| Pg: 34 Ln: 15 - 22 | Pg: 87 Ln: 10 - Pg: 88 Ln: 9 |
| Pg: 34 Ln: 24 - Pg: 35 Ln: 9 | Pg: 88 Ln: 10 - 15 |
| Pg: 35 Ln: 11 - 18 | Pg: 88 Ln: 18 - Pg: 89 Ln: 4 |
| Pg: 36 Ln: 6 - Pg: 37 Ln: 11 | Pg: 89 Ln: 7 - Pg: 90 Ln: 4 |
| Pg: 40 Ln: 14 - 24 | Pg: 90 Ln: 7 - 14 |
| Pg: 41 Ln: 22 - Pg: 42 Ln: 6 | Pg: 90 Ln: 17 - 21 |
| Pg: 42 Ln: 22 - 23 | Pg: 91 Ln: 2 - Pg: 92 Ln: 9 |
| Pg: 43 Ln: 1 - 18 | Pg: 92 Ln: 12 - Pg: 93 Ln: 5 |
| Pg: 43 Ln: 23 - Pg: 44 Ln: 7 | Pg: 93 Ln: 8 - 19 |

| | |
|---|---|
| Pg: 95 Ln: 22 - 25 | Pg: 155 Ln: 24 - Pg: 156 Ln: 25 |
| Pg: 96 Ln: 2 - 19 | Pg: 157 Ln: 22 - Pg: 158 Ln: 16 |
| Pg: 97 Ln: 2 - 15 | Pg: 161 Ln: 16 - Pg: 162 Ln: 5 |
| Pg: 97 Ln: 25 - Pg: 98 Ln: 2 | Pg: 162 Ln: 21 - Pg: 163 Ln: 2 |
| Pg: 98 Ln: 6 - Pg: 99 Ln: 17 | Pg: 164 Ln: 18 - Pg: 166 Ln: 18 |
| Pg: 99 Ln: 25 - Pg: 100 Ln: 10 | Pg: 167 Ln: 21 - Pg: 168 Ln: 6 |
| Pg: 102 Ln: 11 - 14 | Pg: 168 Ln: 14 - 21 |
| Pg: 102 Ln: 20 - 22 | Pg: 169 Ln: 23 - Pg: 170 Ln: 1 |
| Pg: 103 Ln: 8 - Pg: 105 Ln: 1 | Pg: 170 Ln: 3 - 8 |
| Pg: 105 Ln: 10 - Pg: 106 Ln: 22 | Pg: 170 Ln: 12 - Pg: 171 Ln: 22 |
| Pg: 109 Ln: 8 - 10 | Pg: 172 Ln: 5 - 7 |
| Pg: 109 Ln: 16 - 23 | Pg: 172 Ln: 10 - Pg: 173 Ln: 2 |
| Pg: 110 Ln: 9 - 11 | Pg: 176 Ln: 11 - Pg: 177 Ln: 22 |
| Pg: 110 Ln: 14 - 25 | Pg: 178 Ln: 8 - Pg: 179 Ln: 9 |
| Pg: 111 Ln: 12 - Pg: 112 Ln: 11 | Pg: 179 Ln: 12 - Pg: 180 Ln: 7 |
| Pg: 112 Ln: 21 - Pg: 113 Ln: 2 | Pg: 181 Ln: 19 - Pg: 182 Ln: 1 |
| Pg: 116 Ln: 16 - 24 | Pg: 182 Ln: 12 - 17 |
| Pg: 118 Ln: 13 - 15 | Pg: 183 Ln: 5 - 17 |
| Pg: 118 Ln: 19 - Pg: 119 Ln: 2 | Pg: 184 Ln: 5 - 10 |
| Pg: 119 Ln: 5 - 7 | Pg: 184 Ln: 19 - Pg: 185 Ln: 17 |
| Pg: 123 Ln: 7 - 18 | Pg: 185 Ln: 23 - Pg: 186 Ln: 25 |
| Pg: 123 Ln: 24 - Pg: 124 Ln: 8 | Pg: 187 Ln: 4 - 13 |
| Pg: 124 Ln: 15 - Pg: 125 Ln: 17 | Pg: 187 Ln: 15 - 19 |
| Pg: 126 Ln: 7 - 18 | Pg: 188 Ln: 4 - 13 |
| Pg: 126 Ln: 22 - Pg: 128 Ln: 20 | Pg: 188 Ln: 17 - Pg: 191 Ln: 21 |
| Pg: 129 Ln: 6 - 9 | Pg: 194 Ln: 17 - Pg: 195 Ln: 7 |
| Pg: 131 Ln: 4 - Pg: 132 Ln: 25 | Pg: 195 Ln: 12 - 21 |
| Pg: 134 Ln: 4 - Pg: 136 Ln: 1 | Pg: 196 Ln: 1 - 6 |
| Pg: 136 Ln: 9 - 16 | Pg: 196 Ln: 11 - 16 |
| Pg: 137 Ln: 9 - 16 | Pg: 196 Ln: 19 - 22 |
| Pg: 141 Ln: 9 - 20 | Pg: 197 Ln: 3 - 16 |
| Pg: 142 Ln: 4 - 18 | Pg: 197 Ln: 24 - Pg: 198 Ln: 21 |
| Pg: 142 Ln: 22 - Pg: 143 Ln: 21 | Pg: 198 Ln: 25 - Pg: 199 Ln: 6 |
| Pg: 144 Ln: 4 - 7 | Pg: 199 Ln: 15 - 23 |
| Pg: 144 Ln: 11 - 12 | Pg: 200 Ln: 14 - Pg: 201 Ln: 9 |
| Pg: 145 Ln: 17 - 20 | Pg: 202 Ln: 10 - Pg: 203 Ln: 24 |
| Pg: 147 Ln: 17 - Pg: 148 Ln: 19 | Pg: 204 Ln: 10 - Pg: 205 Ln: 3 |
| Pg: 150 Ln: 6 - Pg: 151 Ln: 15 | Pg: 205 Ln: 16 - Pg: 208 Ln: 19 |

| | |
|---|---|
| Pg: 209 Ln: 20 - Pg: 210 Ln: 8 | Pg: 232 Ln: 12 - Pg: 233 Ln: 4 |
| Pg: 212 Ln: 2 - Pg: 213 Ln: 4 | Pg: 233 Ln: 9 - Pg: 234 Ln: 9 |
| Pg: 213 Ln: 8 - Pg: 214 Ln: 19 | Pg: 234 Ln: 11 - Pg: 235 Ln: 2 |
| Pg: 215 Ln: 25 - Pg: 216 Ln: 16 | Pg: 235 Ln: 4 - 18 |
| Pg: 217 Ln: 2 - 16 | Pg: 236 Ln: 3 - 6 |
| Pg: 218 Ln: 13 - 20 | Pg: 236 Ln: 11 - Pg: 238 Ln: 12 |
| Pg: 219 Ln: 12 - 15 | Pg: 239 Ln: 25 - Pg: 242 Ln: 7 |
| Pg: 219 Ln: 22 - Pg: 220 Ln: 7 | Pg: 242 Ln: 17 - Pg: 244 Ln: 4 |
| Pg: 222 Ln: 20 - 22 | Pg: 244 Ln: 15 - 21 |
| Pg: 222 Ln: 25 - Pg: 223 Ln: 7 | Pg: 245 Ln: 12 - 19 |
| Pg: 224 Ln: 5 - 7 | Pg: 245 Ln: 25 - Pg: 246 Ln: 7 |
| Pg: 224 Ln: 24 - Pg: 226 Ln: 23 | Pg: 246 Ln: 11 - Pg: 247 Ln: 1 |
| Pg: 227 Ln: 5 - 22 | Pg: 247 Ln: 25 - Pg: 248 Ln: 9 |
| Pg: 228 Ln: 9 - 25 | Pg: 248 Ln: 11 - 14 |
| Pg: 230 Ln: 10 - Pg: 231 Ln: 1 | |

| | |
|---|---|
| Pg: 7 Ln: 1 - Pg: 9 Ln: 11 | Pg: 65 Ln: 14 - Pg: 69 Ln: 2 |
| Pg: 9 Ln: 16 - Pg: 11 Ln: 5 | Pg: 69 Ln: 4 - 21 |
| Pg: 11 Ln: 12 - Pg: 12 Ln: 11 | Pg: 70 Ln: 4 - Pg: 71 Ln: 3 |
| Pg: 13 Ln: 21 - Pg: 14 Ln: 15 | Pg: 71 Ln: 6 - Pg: 73 Ln: 2 |
| Pg: 14 Ln: 17 - 25 | Pg: 73 Ln: 4 - Pg: 74 Ln: 4 |
| Pg: 15 Ln: 1 - 9 | Pg: 74 Ln: 16 - Pg: 76 Ln: 10 |
| Pg: 15 Ln: 23 - Pg: 16 Ln: 16 | Pg: 76 Ln: 12 - Pg: 77 Ln: 2 |
| Pg: 22 Ln: 2 - 8 | Pg: 77 Ln: 10 - Pg: 80 Ln: 16 |
| Pg: 22 Ln: 23 - 24 | Pg: 80 Ln: 23 - Pg: 82 Ln: 3 |
| Pg: 23 Ln: 1 - 20 | Pg: 82 Ln: 6 - Pg: 83 Ln: 7 |
| Pg: 24 Ln: 6 - 12 | Pg: 83 Ln: 9 - Pg: 84 Ln: 15 |
| Pg: 24 Ln: 14 - 23 | Pg: 84 Ln: 17 - Pg: 85 Ln: 11 |
| Pg: 25 Ln: 6 - 16 | Pg: 85 Ln: 16 - 23 |
| Pg: 27 Ln: 21 - Pg: 28 Ln: 9 | Pg: 86 Ln: 1 - 9 |
| Pg: 28 Ln: 15 - 16 | Pg: 86 Ln: 17 - Pg: 87 Ln: 9 |
| Pg: 28 Ln: 18 - Pg: 29 Ln: 3 | Pg: 87 Ln: 21 - Pg: 91 Ln: 21 |
| Pg: 29 Ln: 5 - 17 | Pg: 91 Ln: 25 - Pg: 92 Ln: 1 |
| Pg: 29 Ln: 19 - Pg: 30 Ln: 3 | Pg: 92 Ln: 3 - 18 |
| Pg: 30 Ln: 5 - 8 | Pg: 92 Ln: 21 - Pg: 93 Ln: 5 |
| Pg: 33 Ln: 22 - Pg: 34 Ln: 18 | Pg: 93 Ln: 24 - Pg: 94 Ln: 20 |
| Pg: 35 Ln: 6 - Pg: 36 Ln: 20 | Pg: 94 Ln: 25 - Pg: 95 Ln: 5 |
| Pg: 44 Ln: 18 - Pg: 45 Ln: 10 | Pg: 99 Ln: 8 - Pg: 102 Ln: 2 |
| Pg: 46 Ln: 3 - Pg: 47 Ln: 21 | Pg: 102 Ln: 6 - Pg: 104 Ln: 3 |
| Pg: 48 Ln: 15 - 20 | Pg: 111 Ln: 3 - Pg: 112 Ln: 11 |
| Pg: 48 Ln: 21 - Pg: 49 Ln: 13 | Pg: 112 Ln: 14 - Pg: 114 Ln: 6 |
| Pg: 50 Ln: 24 - Pg: 51 Ln: 8 | Pg: 114 Ln: 8 - Pg: 115 Ln: 15 |
| Pg: 51 Ln: 11 - 16 | Pg: 115 Ln: 18 - Pg: 116 Ln: 21 |
| Pg: 51 Ln: 19 - Pg: 52 Ln: 4 | Pg: 116 Ln: 24 - Pg: 117 Ln: 7 |
| Pg: 52 Ln: 6 - 8 | Pg: 117 Ln: 10 - Pg: 118 Ln: 5 |
| Pg: 53 Ln: 1 - 4 | Pg: 119 Ln: 10 - 24 |
| Pg: 53 Ln: 7 - 17 | Pg: 120 Ln: 1 - 9 |
| Pg: 53 Ln: 21 - Pg: 54 Ln: 18 | Pg: 120 Ln: 22 - Pg: 121 Ln: 5 |
| Pg: 54 Ln: 22 - Pg: 55 Ln: 24 | Pg: 121 Ln: 12 - Pg: 122 Ln: 3 |
| Pg: 56 Ln: 6 - Pg: 57 Ln: 2 | Pg: 122 Ln: 6 - 13 |
| Pg: 59 Ln: 21 - Pg: 60 Ln: 24 | Pg: 123 Ln: 11 - Pg: 124 Ln: 10 |
| Pg: 61 Ln: 9 - Pg: 62 Ln: 25 | Pg: 126 Ln: 12 - Pg: 127 Ln: 13 |
| Pg: 63 Ln: 2 - 5 | Pg: 128 Ln: 25 - Pg: 130 Ln: 5 |
| Pg: 63 Ln: 7 - 22 | Pg: 130 Ln: 11 - 19 |

| | |
|---|---|
| Pg: 130 Ln: 21 - Pg: 131 Ln: 4 | Pg: 175 Ln: 5 - 18 |
| Pg: 131 Ln: 7 - 14 | Pg: 175 Ln: 23 - Pg: 176 Ln: 10 |
| Pg: 131 Ln: 19 - Pg: 132 Ln: 1 | Pg: 177 Ln: 12 - 16 |
| Pg: 132 Ln: 4 - Pg: 133 Ln: 2 | Pg: 177 Ln: 20 - Pg: 178 Ln: 15 |
| Pg: 133 Ln: 10 - Pg: 138 Ln: 2 | Pg: 178 Ln: 18 - Pg: 179 Ln: 6 |
| Pg: 138 Ln: 6 - 8 | Pg: 183 Ln: 11 - 23 |
| Pg: 138 Ln: 11 - 16 | Pg: 184 Ln: 9 - Pg: 186 Ln: 3 |
| Pg: 140 Ln: 3 - 17 | Pg: 186 Ln: 6 - 18 |
| Pg: 142 Ln: 15 - 18 | Pg: 187 Ln: 4 - 20 |
| Pg: 142 Ln: 25 - Pg: 145 Ln: 23 | Pg: 188 Ln: 21 - Pg: 189 Ln: 21 |
| Pg: 147 Ln: 12 - Pg: 148 Ln: 10 | Pg: 190 Ln: 2 - 16 |
| Pg: 148 Ln: 12 - 21 | Pg: 190 Ln: 19 - Pg: 191 Ln: 1 |
| Pg: 148 Ln: 24 - Pg: 149 Ln: 21 | Pg: 191 Ln: 4 - 18 |
| Pg: 152 Ln: 3 - 24 | Pg: 191 Ln: 21 - Pg: 192 Ln: 3 |
| Pg: 156 Ln: 3 - Pg: 159 Ln: 21 | Pg: 192 Ln: 6 - Pg: 193 Ln: 6 |
| Pg: 159 Ln: 24 - Pg: 161 Ln: 8 | Pg: 193 Ln: 9 - 14 |
| Pg: 161 Ln: 10 - 19 | Pg: 193 Ln: 17 - Pg: 196 Ln: 17 |
| Pg: 161 Ln: 21 - Pg: 163 Ln: 24 | Pg: 196 Ln: 20 - Pg: 197 Ln: 9 |
| Pg: 164 Ln: 1 - Pg: 165 Ln: 14 | Pg: 197 Ln: 11 - Pg: 198 Ln: 6 |
| Pg: 165 Ln: 16 - Pg: 166 Ln: 4 | Pg: 198 Ln: 9 - Pg: 199 Ln: 18 |
| Pg: 170 Ln: 7 - Pg: 173 Ln: 5 | Pg: 200 Ln: 16 - Pg: 201 Ln: 8 |
| Pg: 173 Ln: 18 - Pg: 174 Ln: 6 | Pg: 201 Ln: 11 - Pg: 202 Ln: 3 |
| Pg: 174 Ln: 9 - Pg: 175 Ln: 2 | Pg: 202 Ln: 6 |

| | |
|---|---|
| Pg: 11 Ln: 6 - 10 | Pg: 85 Ln: 13 - 21 |
| Pg: 13 Ln: 17 - Pg: 15 Ln: 1 | Pg: 85 Ln: 23 - Pg: 88 Ln: 20 |
| Pg: 16 Ln: 12 - Pg: 21 Ln: 7 | Pg: 88 Ln: 23 - 24 |
| Pg: 23 Ln: 6 - 7 | Pg: 89 Ln: 3 - Pg: 90 Ln: 8 |
| Pg: 23 Ln: 9 - 14 | Pg: 91 Ln: 14 - Pg: 92 Ln: 20 |
| Pg: 23 Ln: 22 - Pg: 26 Ln: 16 | Pg: 93 Ln: 14 - Pg: 94 Ln: 8 |
| Pg: 28 Ln: 9 - Pg: 30 Ln: 1 | Pg: 94 Ln: 10 - 16 |
| Pg: 30 Ln: 4 - 9 | Pg: 95 Ln: 22 - Pg: 97 Ln: 2 |
| Pg: 31 Ln: 2 - 19 | Pg: 97 Ln: 19 - Pg: 98 Ln: 3 |
| Pg: 32 Ln: 22 - Pg: 33 Ln: 21 | Pg: 106 Ln: 6 - Pg: 107 Ln: 8 |
| Pg: 35 Ln: 6 - Pg: 36 Ln: 7 | Pg: 109 Ln: 3 - 13 |
| Pg: 39 Ln: 14 - Pg: 40 Ln: 21 | Pg: 109 Ln: 15 - Pg: 110 Ln: 25 |
| Pg: 42 Ln: 4 - Pg: 44 Ln: 10 | Pg: 111 Ln: 2 - Pg: 112 Ln: 21 |
| Pg: 45 Ln: 19 - 21 | Pg: 115 Ln: 4 - 9 |
| Pg: 45 Ln: 23 - Pg: 48 Ln: 11 | Pg: 116 Ln: 5 - Pg: 117 Ln: 3 |
| Pg: 49 Ln: 5 - Pg: 51 Ln: 14 | Pg: 117 Ln: 11 - 17 |
| Pg: 51 Ln: 17 - Pg: 52 Ln: 10 | Pg: 117 Ln: 21 - Pg: 118 Ln: 17 |
| Pg: 52 Ln: 12 - Pg: 54 Ln: 16 | Pg: 118 Ln: 20 - Pg: 119 Ln: 15 |
| Pg: 55 Ln: 5 - 23 | Pg: 119 Ln: 18 - Pg: 120 Ln: 5 |
| Pg: 56 Ln: 1 - Pg: 57 Ln: 2 | Pg: 121 Ln: 13 - Pg: 123 Ln: 18 |
| Pg: 57 Ln: 21 - Pg: 59 Ln: 13 | Pg: 125 Ln: 20 - Pg: 126 Ln: 18 |
| Pg: 59 Ln: 15 - Pg: 60 Ln: 4 | Pg: 127 Ln: 1 - 15 |
| Pg: 60 Ln: 13 - 23 | Pg: 127 Ln: 18 - Pg: 128 Ln: 10 |
| Pg: 61 Ln: 16 - Pg: 64 Ln: 23 | Pg: 130 Ln: 7 - Pg: 131 Ln: 14 |
| Pg: 65 Ln: 1 - 9 | Pg: 131 Ln: 21 - 24 |
| Pg: 65 Ln: 24 - Pg: 67 Ln: 10 | Pg: 132 Ln: 1 - 11 |
| Pg: 69 Ln: 13 - Pg: 70 Ln: 23 | Pg: 132 Ln: 13 - Pg: 133 Ln: 19 |
| Pg: 71 Ln: 7 - 17 | Pg: 133 Ln: 22 - Pg: 135 Ln: 10 |
| Pg: 71 Ln: 19 - Pg: 74 Ln: 7 | Pg: 135 Ln: 13 - Pg: 137 Ln: 13 |
| Pg: 74 Ln: 16 - Pg: 76 Ln: 8 | Pg: 137 Ln: 16 - 21 |
| Pg: 76 Ln: 21 - Pg: 77 Ln: 17 | Pg: 138 Ln: 20 - Pg: 140 Ln: 4 |
| Pg: 77 Ln: 19 - Pg: 78 Ln: 13 | Pg: 140 Ln: 13 - Pg: 142 Ln: 10 |
| Pg: 78 Ln: 16 - 19 | Pg: 142 Ln: 13 - Pg: 144 Ln: 23 |
| Pg: 78 Ln: 25 - Pg: 79 Ln: 2 | Pg: 145 Ln: 1 - Pg: 146 Ln: 16 |
| Pg: 79 Ln: 5 - 12 | Pg: 148 Ln: 18 - Pg: 149 Ln: 9 |
| Pg: 79 Ln: 16 - Pg: 80 Ln: 4 | Pg: 149 Ln: 12 - 13 |
| Pg: 80 Ln: 14 - Pg: 83 Ln: 9 | Pg: 149 Ln: 24 - Pg: 150 Ln: 5 |
| Pg: 84 Ln: 16 - 19 | Pg: 150 Ln: 9 - Pg: 151 Ln: 24 |

| | |
|---|---|
| Pg: 152 Ln: 1 - 13 | Pg: 223 Ln: 18 - Pg: 224 Ln: 13 |
| Pg: 152 Ln: 16 - 23 | Pg: 226 Ln: 21 - Pg: 229 Ln: 24 |
| Pg: 155 Ln: 8 - Pg: 158 Ln: 24 | Pg: 230 Ln: 1 - 4 |
| Pg: 160 Ln: 2 - 23 | Pg: 230 Ln: 24 - Pg: 232 Ln: 24 |
| Pg: 161 Ln: 8 - Pg: 162 Ln: 13 | Pg: 233 Ln: 5 - 17 |
| Pg: 163 Ln: 19 - 23 | Pg: 234 Ln: 6 - Pg: 237 Ln: 8 |
| Pg: 164 Ln: 1 - 16 | Pg: 237 Ln: 11 - 13 |
| Pg: 164 Ln: 25 - Pg: 165 Ln: 22 | Pg: 237 Ln: 15 - 20 |
| Pg: 165 Ln: 25 - Pg: 166 Ln: 18 | Pg: 237 Ln: 23 - Pg: 239 Ln: 19 |
| Pg: 166 Ln: 21 - 23 | Pg: 242 Ln: 20 - Pg: 243 Ln: 13 |
| Pg: 168 Ln: 24 - Pg: 169 Ln: 17 | Pg: 243 Ln: 15 - Pg: 244 Ln: 2 |
| Pg: 169 Ln: 20 - Pg: 170 Ln: 4 | Pg: 244 Ln: 14 - 20 |
| Pg: 172 Ln: 1 - Pg: 173 Ln: 15 | Pg: 244 Ln: 24 - Pg: 251 Ln: 14 |
| Pg: 174 Ln: 4 - Pg: 177 Ln: 12 | Pg: 251 Ln: 16 - Pg: 252 Ln: 14 |
| Pg: 178 Ln: 11 - Pg: 180 Ln: 12 | Pg: 254 Ln: 5 - Pg: 257 Ln: 9 |
| Pg: 180 Ln: 15 - Pg: 181 Ln: 2 | Pg: 257 Ln: 11 - 24 |
| Pg: 181 Ln: 13 - Pg: 191 Ln: 8 | Pg: 258 Ln: 1 - 15 |
| Pg: 191 Ln: 11 - Pg: 192 Ln: 1 | Pg: 261 Ln: 23 - Pg: 263 Ln: 5 |
| Pg: 192 Ln: 4 - 5 | Pg: 263 Ln: 9 - 15 |
| Pg: 192 Ln: 8 - Pg: 197 Ln: 6 | Pg: 264 Ln: 6 - 8 |
| Pg: 197 Ln: 21 - Pg: 198 Ln: 25 | Pg: 264 Ln: 13 - Pg: 266 Ln: 20 |
| Pg: 199 Ln: 3 - 13 | Pg: 266 Ln: 23 - Pg: 267 Ln: 10 |
| Pg: 199 Ln: 16 - Pg: 202 Ln: 13 | Pg: 267 Ln: 13 - Pg: 269 Ln: 2 |
| Pg: 202 Ln: 15 - Pg: 203 Ln: 6 | Pg: 269 Ln: 5 |
| Pg: 203 Ln: 9 - 23 | Pg: 269 Ln: 17 - 23 |
| Pg: 204 Ln: 2 - 8 | Pg: 274 Ln: 15 - Pg: 275 Ln: 2 |
| Pg: 205 Ln: 16 - Pg: 210 Ln: 11 | Pg: 284 Ln: 19 - Pg: 285 Ln: 2 |
| Pg: 210 Ln: 14 - Pg: 212 Ln: 2 | Pg: 285 Ln: 5 - Pg: 286 Ln: 13 |
| Pg: 214 Ln: 18 - Pg: 215 Ln: 14 | Pg: 286 Ln: 15 - 24 |
| Pg: 218 Ln: 7 - Pg: 220 Ln: 11 | Pg: 287 Ln: 2 - 22 |
| Pg: 221 Ln: 5 - Pg: 223 Ln: 2 | Pg: 287 Ln: 25 - Pg: 291 Ln: 16 |

# Appendix C

# Filed Under Seal

**<u>Certificate of Service</u>**

I hereby certify that on December 6, 2017, I caused Plaintiff Federal Trade Commission's Pre-trial Memorandum to be filed with the United States District Court for the Eastern District of Pennsylvania using the ECF system. I certify that I also caused this filing to be served on all counsel of record via electronic mail.

*/s/ Patricia M. McDermott*
Patricia M. McDermott