**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>ABBVIE INC. et al.,<br><br>        Defendants. | CIVIL ACTION<br><br>Case No. 14-cv-5151 |

**DEFENDANTS' RESPONSE TO FTC'S BENCH BRIEF REGARDING THE HYPOTHETICAL MONOPOLIST TEST**

There has been extensive briefing on the Hypothetical Monopolist Test (HMT) in this case, in summary judgment motions and pretrial memoranda. The case law is well known to the Court. Nonetheless, FTC has now filed another brief on the issue, quoting a snippet of an exchange that 10 days ago took place with the Court on the HMT and using FTC's different interpretation of the relevant law as a basis to brief the HMT anew. The following facts regarding the relevant law are made all the more clear by FTC's submission:

(1) The Third Circuit has never endorsed the use of the HMT to define a relevant product market in a non-merger case.

(2) Addressing product market definition in a non-merger pharmaceutical context, the Third Circuit in *Mylan* has specifically set forth the appropriate test, and it is not the HMT.

(3) In an amicus brief in support of en banc rehearing in *Mylan*, FTC itself criticized *Mylan* as "contrary" to "defin[ing] the relevant market using the hypothetical monopolist test." Brief for Amicus Curiae FTC at 9, *Mylan Pharm., Inc. v. Warner Chilcott plc*, 838 F.3d 421 (3d Cir. 2016) (No. 15-2236), 2016 WL 6137296. In other words, FTC agrees that *Mylan* does not permit relevant product market definition based on the HMT.

(4) The sole Third Circuit case on which FTC relies, *Atlantic Exposition Services, Inc. v. SMG*, 262 F. App'x 449 (3d Cir. 2008), is not a pharmaceutical case, is not a relevant product market case, is not published, and did not hold that the HMT is the appropriate test even in its very different context. Instead, after setting forth its result and reasoning based on the same standard enunciated in *Mylan*, the case

1

stated that the appropriate test was whether "roughly equivalent alternatives" exist.

(5) After presumably scouring the earth, FTC has found only three non-merger decisions from district courts in the Third Circuit that mention the HMT.

- The first, a Magistrate Judge Report and Recommendation in *Radio Music License Commission, Inc. v. SESAC Inc.*, 2013 WL 12114098 (E.D. Pa. Dec. 23, 2013), did just that—it mentioned the HMT. It did so in the context of summarizing one side's argument. *Id.* at *9-10; *see id.* at *10 (stating that the expert's "application of this test is given reduced weight, as he was unable to identify a competitive level of fees"). It did not assess the merits of the test and did not actually adopt the HMT in its legal analysis. The legal test that the Magistrate Judge applied was that "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it"—just like the Third Circuit later said to do in *Mylan*. *Id.* at *14; *see id.* at *15-16.

- The second case, *Babyage.com v. Toys "R" Us, Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008), has been briefed by the parties before, both on summary judgment and in the pretrial memoranda. The case arose on a motion to dismiss, and did not hold that the HMT is appropriate to prove a relevant product market. The court ruled merely that the attacks on the plaintiff's alleged market definition were "evidentiary details . . . not required at the motion-to-dismiss stage." *Id.* at 581 n.6. That decision likewise has no application here.

- Finally, in a footnote, FTC cites the unpublished case of *Transweb, LLC v. 3M Innovative Properties Co.*, 2012 WL 10634568 (D.N.J. July 13, 2012), because that court denied a motion to strike an expert report that relied on "practical indicia with SSNIP analysis," noting that the practical indica in that case were "particularly compelling." *Id.* at *6. Denial of a motion to strike in this circumstance is a far cry from endorsing the HMT, as evidenced by FTC's relegating the case to a footnote. In any event, the Third Circuit later decided otherwise, holding that an expert's "theoretical views on cross-elasticity" that lacked any supporting "quantitative analyses" could not support a plaintiff's burden to define the relevant product market. *Mylan*, 838 F.3d at 437.

2

## I. As FTC has previously conceded, *Mylan* is fundamentally inconsistent with the Hypothetical Monopolist Test

FTC is wrong that the HMT, or Dr. Shapiro's application of it, is "consistent" with the Third Circuit's controlling decision in *Mylan*. In *Mylan*, a generic manufacturer alleged that Warner Chilcott engaged in so-called "product hopping" by developing alternative dosing strengths and then altogether withdrawing the prior dosing strength from the market. As stated in Defendants' opening, the Court need look only to FTC's prior statements to understand that *Mylan* is inconsistent with use of the HMT. In its amicus brief supporting *en banc* rehearing by the Third Circuit, FTC criticized *Mylan* as "contrary" to "defin[ing] the relevant market using the hypothetical monopolist test." Brief for Amicus Curiae FTC at 9, *Mylan*, 838 F.3d 421 (No. 15-2236), 2016 WL 6137296. The court of appeals declined to rehear the case.

Turning from FTC's own recognition that *Mylan* is fundamentally inconsistent with the HMT to the substance of what *Mylan* decided, the *Mylan* framework cannot be reconciled with use of the HMT. In assessing the relevant product market in *Mylan*, the court "consider[ed] the extent to which Defendants' product is interchangeable with alternative products in the field" and assessed the evidence of "cross-elasticity of demand," which is "the responsiveness of the demand for one product . . . to changes in the price of a different product." 838 F.3d at 436-37. But the HMT eschews cross-elasticity and reasonable-interchangeability-of-use analyses, and instead looks only at whether an AB-rated generic eventually stabilizes at a price substantially below the brand price and takes significant volume from the brand based on auto-substitution laws (as it always does).

Dr. Shapiro's HMT analysis here is likewise inconsistent with *Mylan.* As just noted, *Mylan* requires econometric analysis, not just the simplistic observation that generic products stabilize at a price significantly below the brand price and take significant volume from the brand

product based on auto-substitution laws. Dr. Shapiro admitted at his deposition that he did no "quantitative or econometric analysis to estimate the cross-price elasticity of demand between AndroGel one percent and Perrigo's AB-rated product" and no "empirical analyses of actual patient treatment patterns to assess the degree of substitutability between various testosterone replacement therapies." Shapiro Dep. at 84:19-85:6, 85:16-86:1. After Defendants pointed this out, FTC recharacterized Dr. Shapiro's analysis as "incorporat[ing] the evidence of 'cross-elasticity of demand.'" FTC Br. at 4. But FTC's after-the-fact characterization does not make it so. Dr. Shapiro admitted otherwise under oath at his deposition.

Nor is FTC correct that the "initial fact pattern in *Mylan* . . . would not satisfy the HMT." *Id.* FTC bases that argument on the assertion that "the generic entered—at least initially—at a higher (not lower) price than branded Doryx." *Id.* The portion of *Mylan* that FTC cites for that quotation does not appear in the market-definition section of the decision and it does not mean what FTC says it means. The situation in *Mylan* was that the brand company withdrew its 75 and 100 mg drug tablets from the market (and instead sold only its "scored" tablets that had grooves making them easier to split by the patient). Once the brand product was no longer available, Mylan decided to raise the price of its "generic" version of the 75 and 100 mg unscored drugs that were no longer available as brand products. *Mylan Pharm., Inc. v. Warner-Chilcott plc*, 2015 WL 1736957, at *4 (E.D. Pa. Apr. 16, 2015) ("Mylan was the exclusive seller of 75 and 100 mg tablets—branded or generic[.]"). This was not a situation in which there was at any time—even for a single day—an AB-rated generic drug that was priced higher than an equivalent brand drug. The *Mylan* opinion analyzed the market definition issue prior to and without ever discussing the issue of the price charged by Mylan for a drug at a time when there

4

was no AB-rated brand product for which it could be automatically substituted. The issue is therefore irrelevant.

## II. The Third Circuit has not adopted the Hypothetical Monopolist Test in non-merger cases

FTC asserts that "the Third Circuit Court of Appeals and district courts in this Circuit have expressly endorsed [the] use" of the HMT "in the context of assessing monopoly or market power in non-merger antitrust cases" and argues that such alleged "endorse[ment]" is relevant here. FTC Br. at 2.

That is incorrect. The issue here is the applicability of the HMT in a non-merger *pharmaceutical* case. As Dr. Cremieux will explain, the non-pharmaceutical context is irrelevant because the auto-substitution laws, which are unique to pharmaceutical sales, disrupt the normal rules of supply and demand on which the HMT is based. This is, of course, also recognized in *Mylan*, which finds a market definition not limited to the brand and its generic competitor—even though, as Dr. Shapiro has stated, the result under the HMT would be that the relevant product market is so limited. *See Mylan*, 838 F.3d at 428 (explaining that "the pharmaceutical market functions in a unique way"); *id.* at 426, 436 (rejecting argument that product market consisted only of defendants' brand-name drug, an oral antibiotic of the tetracycline class used to treat acne, and the generic counterpart of the defendants' drug, and concluding that "the market was much broader and consisted of all . . . oral tetracyclines prescribed to treat acne").

FTC's assertion is also wrong because none of FTC's cases post-dates *Mylan*, and the cases in any event do not say what FTC says they say. *See* pp. 1-2, *supra*. The parties have previously briefed these issues. *See, e.g.*, Dkt. 270 at 9 n.2 (Defendants' brief distinguishing cases).

FTC compounds its error by citing the unpublished, and therefore non-precedential, Third Circuit decision in *Atlantic Exposition Services, Inc. v. SMG*, 262 F. App'x 449 (3d Cir. 2008), a case about a venue for a trade show. The case involved the issue of the relevant geographic market—Atlantic City versus the Northeast or East Coast more generally—not the relevant product market, which all parties agreed was "convention center" venues. The court made passing mention of a hypothetical monopolist in a geographic region of interest only in the context of explaining why the market should be defined from the perspective of trade show producers as opposed to trade show contractors. The case's holding was that Atlantic City was not its own geographic market because "show producers have roughly equivalent alternatives," such as convention centers in Philadelphia and "elsewhere on the East Coast." *Id.* at 452. Dr. Shapiro's application of the HMT, of course, runs counter to this holding because it ignores the numerous "roughly equivalent alternatives" to AndroGel and the generic equivalents to AndroGel 1%.

Dated: February 16, 2018

Respectfully submitted,

/s/ *Stuart N. Senator*
Jeffrey I. Weinberger
Stuart N. Senator
Randall G. Sommer
Elaine Goldenberg
Adam R. Lawton
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue
Los Angeles, CA 90071
(213) 683-9100
jeffrey.weinberger@mto.com
stuart.senator@mto.com
randall.sommer@mto.com
elaine.goldenberg@mto.com
adam.lawton@mto.com

*Counsel for Defendants AbbVie Inc., Abbott Laboratories, and Unimed Pharmaceuticals, LLC*

/s/ *Melinda F. Levitt*
Melinda F. Levitt
Gregory E. Neppl
FOLEY & LARDNER LLP
3000 K Street NW, Suite 500
Washington, DC 20007

*Counsel for Defendant Besins Healthcare, Inc.*

Paul H. Saint-Antoine (ID #56224)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700
paul.saint-antoine@dbr.com

*Counsel for Defendants AbbVie Inc., Abbott Laboratories, Unimed Pharmaceuticals, LLC, and Besins Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on February 16, 2018, the foregoing document was served on counsel for all parties via email.

/s/ *Stuart N. Senator*